1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **STANLEIGH GLEAN MEGARGEE, an** ) | **CV F 06-0684 AWI LJO** |
| **incompetent, by Hazel and Art Lopez,** ) | |
| **his guardian ad litem; and** ) | **MEMORANDUM OPINION AND** |
| **KATIE TAYLOR, a minor, by Terry** ) | **ORDER DENYING IN PART AND** |
| **Huerta, her guardian ad litem,** ) | **GRANTING IN PARTY** |
| ) | **DEFENDANTS' MOTIONS TO** |
| **Plaintiffs,** ) | **DISMISS** |
| **v.** ) | |
| ) | (Doc. #10, #11, #13, #14, #21, & #22) |
| **BILL WITTMAN, CHAD RHYMAN,** ) | |
| **and BRANDON HALL, in their** ) | |
| **individual capacity as sheriffs of the** ) | |
| **County of Tulare, AND THE COUNTY** ) | |
| **OF TULARE, and DOES 1 through 100,** ) | |
| **inclusive,** ) | |
| ) | |
| **Defendants.** ) | |

        This action arises out of Defendants' shooting Plaintiffs.   The court has jurisdiction over
Plaintiffs' civil rights causes of action brought pursuant to 42 U.S.C.§ 1983 under 28 U.S.C. §
1331 and supplemental jurisdiction over Plaintiffs' state law causes of action.   Because the
events underlying this action occurred in Tulare County, which lies in this court's district and
division, venue is proper.

## PROCEDURAL BACKGROUND

        On June 2, 2006, Plaintiffs filed a complaint, alleging federal civil rights and state law
causes of action.   On June 9, 2006, Plaintiffs filed a first amended complaint ("complaint").
The first cause of action alleges excessive force in violation of the fourth amendment against all
Defendants except Defendant County of Tulare ("County").   The second cause of action alleges

1   entity liability and official liability against all Defendants except Defendant Bill Wittman

2   ("Wittman").    The third cause of action alleges negligent hiring, training supervision, and

3   retention against Wittman and County.    The fourth cause of action alleges negligence against all

4   Defendants.    The fifth cause of action alleges battery against all Defendants.    The sixth cause of

5   action alleges failure to provide medical care against all Defendants.    The seventh cause of action

6   alleges spoliation of evidence against all Defendants.[1]

7           On August 1, 2006 and August 4, 2006, Defendants County, Wittman, Chad Rhyman

8   ("Rhyman"), and Brandon Hall ("Hall") filed motions to dismiss the first amended complaint.

9   Defendants contend the first and fifth causes of action should be dismissed because the use of

10  force was legally justified.    Defendants contend the second cause of action should be dismissed

11  as to County, Hall, and Rhyman because there are no facts upon which they can be liable.

12  County and Hall contend the third and fourth causes of action should be dismissed as to them

13  because they are not liable.    Hall and Rhyman contend the fourth cause of action should be

14  dismissed as to them because they owed no duty to Plaintiffs and their actions were not

15  negligent.    Defendants contend the sixth cause of action should be dismissed because

16  Defendants are not liable.    Defendants contend the seventh cause of action should be dismissed

17  because there is not tort for spoilage of evidence in California and/or Plaintiffs cannot recover for

18  this tort.    Defendants contend Taylor cannot recover for emotional distress damages.    Finally,

19  Defendants request that the court strike paragraphs from the complaint.

20          On September 1, 2006, Plaintiffs filed oppositions to County's motion, Wittman's

21  motion, and Rhyman's motion.    Plaintiffs did not file a formal opposition to Hall's motion.    On

22  September 11, 2006, Defendants filed reply briefs.

23  _____

24          [1] On July 31, 2006, Plaintiffs filed a second amended complaint.    Defendants' motions
    to dismiss address the June 9, 2006 first amended complaint.  In their oppositions to the motions

25  to dismiss, Plaintiffs state that the only difference between the first amended complaint and the
    second amended complaint is that the second amended complaint adds Dan Baker as a Defendant

26  in place of one of the Doe Defendants.   In an order accompanying this order, the court has
    stricken the second amended complaint because it was not filed in compliance with Rule 15(a) of

27  the Federal Rules of Civil Procedure.

28                                                2

**LEGAL STANDARD**

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Balistreri v. Pacifica Police Department, 901 F.2d 696, 699 (9th Cir. 1990).  A Rule 12(b)(6) dismissal can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984).  In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

A Rule 12(b)(6) motion to dismiss for failure to state a claim is disfavored, see Hall v. City of Santa Barbara, 833 F.2d 1270, 1274 (9th Cir.1986), and may be granted only in extraordinary circumstances, see Gilligan v. Jamco Develop. Corp., 108 F.3d 246, 249 (9th Cir. 1997).  Essentially, a motion to dismiss for failure to state a claim tests plaintiff's compliance with the liberal requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure.  See 5A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1356.  Rule 8(a)(2) only requires parties seeking relief in federal court by way of complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).   As the Supreme Court has noted, when evaluating a complaint for failure to state a claim, the question is not whether the facts stated in the complaint, if proven, would entitle the plaintiff to any relief.   Instead, the question is whether there is any set of "facts that could be proved consistent with the allegations of the complaint" that would entitle plaintiff to some relief.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002);  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Diaz v. Gates, 380 F.3d 480, 482 (9th Cir. 2004).

**ALLEGED FACTS**

The complaint alleges that on June 6, 2005, Plaintiff Stanleigh Glean Megargee ("Megargee") was driving a stolen truck in Visalia, California.   There were three passengers in the vehicle:  Plaintiff Katie Taylor ("Taylor"), Dennis Carter, and Brent Wallis.   Megargee was 17 years old at the time, and Taylor was 15 years old.

The complaint alleges that Plaintiffs and the other passengers had been attempting a residential burglary when they were interrupted by Defendants, members of the Tulare County Sheriff's Department.

The complaint alleges that a chase then ensued, with Plaintiffs in the stolen vehicle and at least two Tulare County Sheriff's cars.   The complaint alleges that the chase lasted approximately 15 minutes.

The complaint alleges that the chase ultimately led to a cul-de-sac at or near the intersection of Prospect Avenue and Selina Street in Visalia, California.   The complaint alleges that Defendants' cars and the residential buildings located on the cul-de-sac effectively blocked Plaintiffs' vehicle from any potential escape.

The complaint alleges Megargee put the vehicle in "park" and waited in the truck.   The complaint alleges Defendants' two cars rammed into Plaintiffs' vehicles from either side, securing the stolen vehicle between the two Sheriff's cars.    The complaint alleges a garage behind Plaintiffs' vehicle prevented Megargee from driving the vehicle in reverse to escape.

The complaint alleges that at no time did Megargee or Taylor try to run away, nor did they physically or verbally threaten Defendants.

The complaint alleges that one of the passengers in Plaintiffs' vehicle immediately jumped out of the vehicle and surrendered to Defendants.   The complaint alleges that within seconds, before any other passenger or Plaintiffs had an opportunity to surrender, Defendants opened fire on the cab of the truck.    The complaint alleges Defendants fired shots at Plaintiffs and the remaining passengers.

4

The complaint alleges Defendants' first shot Megargee in the chest, causing Megargee to fall unconscious and slump forward in the driver's seat against the steering wheel.   The complaint alleges Defendants fired the shots at close range because Megargee had gunpowerder burns on his chest.   The complaint alleges Megargee made no attempt to escape once the vehicle was trapped in the cul-de-sac.

The complaint alleges that after falling unconscious, at a time when Megargee posed no threat to anyone, Defendants again shot Megargee, this time in the head.   The complaint alleges that this shot was also fired at extremely close range, as there were gunpowder burn marks on Megargee's face.

The complaint alleges that Defendants shot Taylor at least three times, and Taylor sustained severe injuries to her upper left leg.

The complaint alleges that Defendants did not check Megargee's vital signs and tossed him out of the truck onto the concrete street.   The complaint alleges that Defendants only checked Megargee's vital signs several minutes later, and found that he had survived the close-range execution-style shooting.

The complaint alleges that Defendants did not find any weapons in the truck or on any of the individuals, including Megargee and Taylor.

The complaint alleges that Defendants' cars were equipped with audio and visual recording equipment.   The complaint alleges this equipment was in operation at the time of the incident.   The complaint alleges that all recordings of the incident were unlawfully destroyed by members of the Tulare County Sheriff's Department.

The complaint alleges that as a result of Megargee's injuries, doctors had to perform a full partial lobotomy, resulting in the removal of approximately 25% of Megargee's brain.   The complaint alleges that as a result of his injuries, Megargee's cognitive and reasoning skills have been destroyed.   The complaint alleges that Megargee cannot control even involuntary bodily functions, and Megargee's motor skills have been permanently and vastly impaired.

The complaint alleges that as a result of the injuries sustained by Taylor, surgeons were forced to remove a portion of her femur in order to save her leg.   The complaint alleges Taylor also suffered extreme emotional distress when Megargee was shot in the head.  The complaint alleges that portions of Megargee's brain landed in Taylor's lap.

The complaint alleges that Megargee's and Taylor's injures are the result of the use of excessive force by Defendants.   The complaint alleges that Plaintiffs were unarmed and neither presented a threat to the public or members of the Tulare County Sheriff's Department.   The complaint alleges Defendants immediately resorted to the use of deadly force when less severe methods of controlling the situation were readily apparent.

The complaint alleges that at the time of the incident, Defendant County had customs, practices, and polices including, but not limited to: (a) allowing Sheriff's Deputies to cover up excessive use of force by false detaining, arresting, and encouraging the wrongful prosecution of the victims of excessive force, through charges of resisting arrest, and related offenses; (b) allowing an ongoing pattern of deliberate indifference on the part of deputies to the rights and privileges of the people of the County of Tulare to be free from excessive force, unreasonable seizures, and other violations of individuals' civil rights; (c) allowing deputies to use excessive force and intimidation tactics against people in order to make those people more submissive in their interactions with law enforcement; and (d) failing to provide criteria for the use of deadly force and failing to take into account special circumstances when individuals are trapped in a vehicle with no means of escape and rendered unconscious.

## DISCUSSION

### A. First Cause of Action – Fourth Amendment Violation

The first cause of action alleges excessive force in violation of the Fourth Amendment against all Defendants except County.   Defendants contend that the first cause of action should be dismissed because the use of force was legally justified.

The Fourth Amendment guarantees the right "to be secure in their persons . . . against

6

1    unreasonable ... seizures."   U.S. Const. amend. IV.   Claims alleging that law enforcement

2    officials used excessive force during an arrest, investigatory stop, or other seizures should be

3    analyzed under the Fourth Amendment's "objective reasonableness" standard.   Graham v.

4    Connor, 490 U.S. 386, 395, (1989); Drummund v. City of Anaheim, 343 F.3d 1052, 1056 (9th

5    Cir. 2003); Billington v. Smith, 292 F.3d 1177, 1184 (9th Cir. 2002); Robinson v. Solano County,

6    278 F.3d 1007, 1009 (9th Cir. 2002).   Under the Fourth Amendment, officers may only use such

7    force as is "objectively reasonable" under the circumstances.   Graham v. Connor, 490 U.S. 386,

8    397 (1989).   To determine whether the force used was reasonable, courts balance "the nature and

9    quality of the intrusion on the individual's Fourth Amendment interests against the

10   countervailing governmental interests at stake."   Id. at 396 (citations omitted); Billington, 292

11   F.3d at 1184.

12       In evaluating the nature and quality of the intrusion, the court must consider "the type and

13   amount of force inflicted" on the plaintiff   Jackson v. City of Bremerton, 268 F.3d 646, 651-52

14   (9th Cir. 2001); Chew v. Gates, 27 F.3d 1432, 1440 (9th Cir.1994).   Next, the court must balance

15   the plaintiff's alleged intrusions against the governmental interests at stake.   Jackson v. City of

16   Bremerton, 268 F.3d 646, 652 (9th Cir. 2001).   Because objective reasonableness is a fact

17   specific inquiry, courts must "pay careful attention to the facts and circumstances of each

18   particular case, including the severity of the crime at issue, whether the suspect poses an

19   immediate threat to the safety of the officers or others, and whether he is actively resisting arrest

20   or attempting to evade arrest by flight."   Graham, 490 U.S. at 397; Drummond, 343 F.3d at

21   1058; Robinson, 278 F.3d at 1013.   The determination of reasonableness must "be judged from

22   the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

23   hindsight," and must "embody allowance for the fact that police officers are often forced to make

24   split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about

25   the amount of force that is necessary in a particular situation."   Graham, 490 U.S. at 396-97;

26   Drummond, 343 F.3d at 1058; Robinson, 278 F.3d at 1009.

27

28                                                    7

### *1.   Rhyman and Hall*

All Defendants contend Plaintiff's fourth amendment cause of action must be dismissed because the use of force was reasonable.   Defendants primarily focus on Plaintiffs' actions prior to entering the cul-de-sac.   Plaintiffs contend that, taking the complaint's allegations as true, the complaint state a claim for unreasonable force.

The complaint alleges that once the truck came to a stop in the cul-de-sac, neither Megargee or Taylor tried to run away nor did they physically or verbally threaten Defendants. The court recognizes that the determination of reasonableness must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, and must allow for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.   Graham, 490 U.S. at 396-97; Drummond, 343 F.3d at 1058.   However, based on the complaint's allegations, at the time Plaintiffs were shot, they were sitting in a truck that had been blocked in, Plaintiffs were not trying to run away, and Plaintiffs posed no physical threat to Defendants.    The most important single element in a reasonableness inquire is "whether the suspect poses an immediate threat to the safety of the officers or others." Smith v. City of Hemet, 394 F.3d 689, 702 (9th Cir.2005).   Because the complaint contains no allegations that Plaintiffs posed an immediate threat to Defendants or others, the court cannot find as a matter of law that Defendants' use of force was reasonable based on the complaint's allegations.   Thus, Rhyman's and Hall's motions to dismiss the Fourth Amendment cause of action must be denied.

### *2.   Wittman*

Because there are no allegations in the complaint that Wittman was present at the scene at the time of the shooting, Plaintiffs' first cause of action against Wittman requires Plaintiffs to plead additional facts.

Wittman's liability is premised on Wittman's job as Tulare County Sheriff.  Generally,

there is no respondeat superior liability under 42 U.S.C. § 1983.   Jones v. Williams, 297 F.3d
930, 934 (9th Cir.2002).   To prove a supervisor's liability, the plaintiff must show (1) the
supervisor's personal involvement in the constitutional deprivation, or (2) a sufficient causal
connection between the supervisor's wrongful conduct and the constitutional violation.   Jeffers
v. Gomez, 267 F.3d 895, 915 (9th Cir.2001).   Supervisors can be held liable if they play an
affirmative part in the alleged deprivation of constitutional rights by setting in motion a series of
acts by others which the supervisor knew or reasonably should have known would cause others
to inflict the constitutional injury.   Graves v. City of Coeur D'Alene, 339 F.3d 828, 848 (9th Cir.
2003) (*citations omitted*) (quoting Rise v. Oregon, 59 F.3d 1556, 1563 (9th Cir.1995)); Larez v.
City of LA, 946 F.2d 630, 646 (9th Cir.1991)).   "Supervisory liability is imposed against a
supervisory official in his individual capacity for his own culpable action or inaction in the
training, supervision, or control of his subordinates, for his acquiescence in the constitutional
deprivations of which the complaint is made, or for conduct that showed a reckless or callous
indifference to the rights of others."   Menotti v. City of Seattle,  409 F.3d 1113, 1149 (9th Cir.
2005) (quoting Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir.1991)).

The complaint does not allege that Wittman was present and personally involved in the
shooting.   Rather, the complaint alleges that Wittman failed to properly supervise and train
Rhyman and Hall in the proper use of force when interacting with the public.   The complaint
alleges that Wittman was responsible for such training.   The complaint alleges Wittman knew
there were customs, practices, and policies in the Tulare County Sheriff's Department that were
causing the unlawful and unreasonable use of force by deputies, but Wittman failed and refused
to take appropriate actions.   These allegations sufficiently allege that Wittman's inaction in the
training, supervision, or control of his subordinates contributed to Hall and Rhyman's alleged
improper shooting of Plaintiffs.   As such, the first cause of action alleges a Fourth Amendment
violation by Wittman based on his failure to adequately train, supervise, and control Hall and
Rhyman.   Accordingly, the first cause of action cannot be dismissed as to Wittman.

**B.  Second Cause of Action – Municipality Liability**

The second cause of action alleges entity liability and official liability against all Defendants except Wittman.   Defendants contend the second cause of action should be dismissed as to County, Hall, and Rhyman because there are no facts upon which they can be liable.

*1.  Rhyman and Hall*

Defendants Rhyman and Hall contend the second cause of action must be dismissed as to them because there is no evidence they were supervisors.  As discussed above, a "supervisor may be liable under § 1983 only if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  Jeffers, 267 F.3d at 915.   The complaint alleges that Rhyman and Hall are employed by the County of Tulare.   The complaint implies that Rhyman and Hall were two of the officers in the cul-de-sac who shot at Plaintiffs.   There are no allegations in the complaint stating or implying that Rhyman and Hall were supervisors and/or supervised any of the other officers at the scene.   While the complaint states a claim against Rhyman and Hall for a violation of Plaintiffs' Fourth Amendment rights, as alleged in the first cause of action, the complaint fails to state a claim against Rhyman and Hall in the supervisory capacity.   The second cause of action alleges a separate theory of liability for the alleged constitutional violations based on supervisory liability.   Because the complaint does not allege Rhyman and Hall were supervisors, the second cause of action is subject to dismissal as to Rhyman and Hall.

When dismissing a complaint, the Ninth Circuit has stated that "leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir.2001) (internal quotation marks omitted); Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. (9th Cir. 1996).  Because it is possible that a supervisory cause of action under 42 U.S.C. § 1983 could be alleged against

10

1    Rhyman and Hall if additional allegations concerning their status as supervisors are added to the

2    complaint, the second cause of action against Rhyman and Hall is dismissed with leave to amend.

3    *2.  County*

4          County also moves to dismiss the second cause of action.   Local governments can be

5    "persons" subject to liability under 42 U.S.C. § 1983.   Monnell v. Dep't of Social Servs., 436

6    U.S. 658, 690 (1978).  However, a local government unit may not be held responsible for the acts

7    of its employees under a respondent superior theory of liability.   Monell, 436 U.S. at 691; Fuller

8    v. City of Oakland, 47 F.3d 1522, 1534 (9th Cir. 1995).   Rather, to state a claim for municipal

9    liability, a plaintiff must allege that he suffered a constitutional deprivation that was the product

10   of a policy or custom of the local government unit.   See City of Canton, Ohio, v. Harris, 489 U.S.

11   378, 385 (1989).   Thus, prevail on their claims against County, Plaintiffs must show: (1) that an

12   officer violated his constitutional rights, and (2) the County's policy caused the violation.   See

13   Monell, 436 U.S. at 690-92.   A Section 1983 plaintiff may establish local government liability

14   based on official policy or custom only by (1) alleging and showing that a city or county

15   employee committed the alleged constitutional violation under a formal governmental policy or

16   longstanding practice or custom that is the customary operating procedure of the local

17   government entity; (2) establishing that the individual who committed the constitutional tort was

18   an official with final policy-making authority and that the challenged action itself was an act of

19   official governmental policy which was the result of a deliberate choice made among various

20   alternatives; or (3) proving that an official with final policy-making authority either delegated

21   policy-making authority to a subordinate or ratified a subordinate's unconstitutional decision or

22   action and the basis for it.   Monnell, 691; Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir.

23   1992).

24          The complaint alleges that at the time of the shooting, County had customs, practices, and

25   polices of allowing deputies to cover up excessive use of force, allowing an ongoing pattern of

26   deliberate indifference, allowing deputies to use excessive force, and failing to provide criteria

27

28                                                    11

for the use of deadly force.   The complaint alleges that the shooting of Plaintiff was the direct and proximate result of these customs, practices, and polices.   "In this circuit, a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." Galbraith v. County of Santa Clara, 307 F.3d 1119, 1127 (9th Cir. 2002); Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 624 (9th Cir. 1988); Shah v. County of Los Angeles, 797 F.2d 743, 747 (9th Cir. 1986).   Because the complaint alleges County's improper policies, practices, and customs and alleges that the shooting was a result of these policies, practices, and customs, the complaint states a claim for municipality liability against County.   Thus, the second cause of action states a claim against County, and is not subject to dismissal.

County also alleges that because the officers in the cul-de-sac did not violate Plaintiffs' Fourth Amendment rights, County cannot be liable.   A city or county cannot be liable for damages based on the actions of one of its employees unless the employee inflicted constitutional harm. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Scott v. Henrich, 39 F.3d 912, 916 (9th Cir. 1994); Forrester v. City of San Diego, 25 F.3d 804, 808 (9th Cir. 1994).   For the reasons discussed above, the complaint states a claim for a violation of Plaintiffs' Fourth Amendment rights by Rhyman and Hall.   Thus, the second cause of action cannot be dismissed as to County on the ground that Plaintiffs have not alleged an underlying constitutional violation.

**C.  Fourth Cause of Action – Negligence by Rhyman and Hall**

The fourth cause of action alleges negligence against all Defendants.   As to Hall and Rhyman, the complaint alleges that Megargee's and Taylor's injuries were a result of the use of excessive force by Hall and Rhyman.    Hall and Rhyman contend that the fourth cause of action should be dismissed as to them because they owed no duty to Plaintiffs and their actions were not negligent.

In California, the elements of a negligence cause of action are the existence of a legal

12

duty of care, breach of that duty, and the breach as the proximate cause of the resulting injury. Ladd v. County of San Mateo, 12 Cal.4th 913, 917-18  (1996); Mendoza v. City of Los Angeles, 66 Cal.App.4th 1333, 1339 (1998).

Rhyman and Hall contend that they owed Plaintiffs no legal duty of care, and thus Plaintiffs cannot establish any claim of negligence based on Defendants' actions in shooting Plaintiffs.   Duty is the expression of a court's conclusion that a particular plaintiff is entitled to protection.   Rowland v. Christian, 69 Cal.2d 108, 112 (1968); Mendoza v. City of Los Angeles, 66 Cal.App.4th 1333, 1339 (1998).  Factors which are to be considered in deciding whether a particular defendant owed a tort duty to a given plaintiff include (1) the foreseeablility of harm to the injured party; (2) the degree of certainty that the injured party suffered harm; (3) the closeness of the connection between the defendant's conduct and the injury suffered; (4) the moral blame attached to the defendant's conduct; (5) the policy of preventing future harm; (6) the extent of the burden to the defendant; and (7) the consequences to the community of imposing a duty to exercise care, with resulting potential liability.  Rowland, 69 Cal.2d at 70; Munoz v. City of Union City, 120 Cal.App.4th 1077, 1094 (2004).  Where a public entity is involved, the court considers the following additional factors:  the availability, cost, and prevalence of insurance for the risk involved; the extent of the agency's powers; the role imposed on it by law; and the limitations imposed on it by budget.  Thompson v. County of Alameda, 27 Cal.3d 741, 750 (1980); Munoz, 120 Cal.App.4th at 1095; Adams v. City of Fremont, 68 Cal. App.4th 243, 267-68 (1998).   California courts have recognized a duty on the part of police officers to use reasonable care when deciding to use and employ deadly force.   Munoz,120 Cal.App.4th 1077, 1101 (2004); see also Davis v. City of Sacramento, 24 Cal.App.4th 393, 404-06 (1994) (upholding jury verdict of no negligence in police shooting of man during investigation of domestic disturbance; issue in dispute was whether officer used reasonable care, with no discussion of duty).   Thus, Rhyman and Hall owed Plaintiffs a duty to use reasonable care when they employed force in the cul-de-sac.

13

Rhyman and Hall also contend that the complaint fails to state a claim for negligence. The court has already determined that based on the complaint's allegations, Defendants' use of force was unreasonable under the Fourth Amendment.   California courts apply this same standard in evaluating a tort claim based on an officer's allegedly negligent use of deadly force. See Munoz,120 Cal.App.4th 1077, 1102-06; David v. City of Fremont, 2006 WL 2168329, 21 (N.D.Cal.,2006).   Thus, the complaint's allegations state a cause of action for negligence against Rhyman and Hall.

Finally, Rhyman and Hall contend that they are immune from liability for any possible negligence.   A public employee is liable in tort to the same extent as a private person, "except as otherwise provided by statute." Cal. Gov. Code § 820(a).   In determining if a state cause of action states a claim against a public employee, it is necessary to have in mind the special immunities and defenses set forth in the statute.

Rhyman and Hall mention California Government Code § 820.2 as a potential source of immunity.   California Government Code § 820.2 provides that: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov. Code § 820.2.    This statute does not confer immunity on officers for discretionary acts involving the unreasonable use of force.   Estate of Torres v. Terhune, 2002 WL 32107949, 13(E.D.Cal. 2002); Price v. County of San Diego, 990 F.Supp. 1230, 1244 (S.D.Cal.1998); Scruggs v. Haynes, 252 Cal.App.2d 256, 266 (1967).  The compliant contains allegations showing that Rhyman's and Hall's use of force was not reasonable.   For the same reasons that the court has determined that the complaint states a claim for excessive force under the Fourth Amendment, Defendants are not entitled to immunity under Section 820.2.

Rhyman and Hall also cite to California Government Code§ 845.8(b) as a potential source of immunity.   Section 845.8(b) provides that neither a public entity nor a public employee is liable for:

14

1   . . . .
    (b) Any injury caused by:
2   (1) An escaping or escaped prisoner;
    (2) An escaping or escaped arrested person; or
3   (3) A person resisting arrest.

4   Cal.Gov.Code § 845.8.   In their motions, neither Rhyman nor Hall explain why they believe they

5   are entitled to Section 845.8(b) immunity.   Presumably, Rhyman and Hall's theory is that they

6   cannot be liable for Plaintiffs because their injuries were caused by their own conduct in resisting

7   arrest.   Defendants claim that they had probable cause to arrest Plaintiffs based on the attempted

8   burglary and Plaintiffs' attempted to escape.   While the complaint's allegations seem to concede

9   that Plaintiffs' resisted arrest by driving away in the stolen vehicle, the complaint alleges that at

10  the time Plaintiffs were shot, neither Megargee or Taylor were trying to run away nor did they

11  physically or verbally threaten Defendants.   Taking the complaint's allegations as true and

12  making all inferences in favor of the complaint, Megargee and Taylor were not resisting arrest at

13  the time they were shot.   When evaluating a complaint for failure to state a claim the question is

14  whether there is any set of "facts that could be proved consistent with the allegations of the

15  complaint" that would entitle plaintiff to some relief.   Swierkiewicz, 534 U.S. at 514;  Diaz, 380

16  F.3d at 482.   There are facts consistent with the complaint's allegations that could show

17  Megargee and Taylor were not resisting arrest at the time they were shot.   Thus, Defendants are

18  not entitled to immunity under Section 845.8(b) at this time.

19          Accordingly, Rhyman's and Taylor's motion to dismiss the negligence cause of action

20  must be denied.   Taking the allegations in the complaint as true, Rhyman and Taylor owed

21  Plaintiffs' a duty to use reasonable force, Rhyman and Taylor breached this duty by not using

22  reasonable force, and Rhyman and Taylor are not entitled to any immunities.

23  **D.  Third & Fourth Causes of Action - Negligent Supervision By Wittman and County**

24          The third cause of action alleges negligent hiring, training, supervision, and retention

25  against Wittman and County.    The fourth cause of action alleges negligence against all

26  Defendants. As to Wittman and County, the fourth cause of action alleges that County had a

27

28                                              15

policy and custom of allowing deputies to cover up excessive use of force, allowing an ongoing

pattern of deliberate indifference, allowing deputies to use excessive force, and failing to provide

criteria for the use of deadly force.   County and Wittman contend the third cause of action and

fourth cause of action should be dismissed as to them because they are not liable.

Public entities are not liable for their own negligent conduct or omission to the same

extent as a private person or entity.  Eastburn v. Regional Fire Protection Authority, 31 Cal.4th

1175, 1180 (2003).   Public entities cannot be held liable in tort for negligence except where

there is a specific statute declaring them to be liable or creating a specific duty of care.   Eastburn

v. Reg'l Fire Prot. Auth., 31 Cal.4th 1175 (2003); Munoz, 120 Cal.App. 4th at 1112.   California

Government Code § 815(a) provides:

> A public entity is not liable for an injury, whether such injury arises out of an act or
> omission of the public entity or a public employee or any other person.

Cal. Gov't. Code § 815.

The California Court of Appeal in Munoz v. City of Union City,120 Cal.App.4th 1077

(2004), found no statutory basis for a public entity's liability that is premised on an officer's use

of excessive force.  Id. at 1113.    Similarly, this court and several other United States District

Courts have found no state statutory basis for a claim that a municipality is directly liable for the

negligent hiring, supervision, or training of its police officers, and such a cause of action must be

dismissed.  See, e.g., Sanders v. City of Fresno, 2006 WL 1883394, *9 (E.D.Cal. 2006); Sorgen

v. City and County of San Francisco, 2006 WL 2583683, *10 (N.D.Cal.2006); Reinhardt v. Santa

Clara County, 2006 WL 662741, *6 (N.D.Cal. 2006). Plaintiffs have also identified no such

statute in their complaint or opposition briefs.  Therefore, County's and Wittman's motion to

dismiss Plaintiffs' claims for negligence must be granted.

The court does recognize that a "public entity is liable for injury proximately caused by

an act or omission of an employee of the public entity within the scope of his employment if the

act or omission would, apart from this section, have given rise to a cause of action against that

16

1  employee or his personal representative." Cal. Gov't Code § 815.2(a).   Section 815 .2 "makes a

2  public entity vicariously liable for its employee's negligent acts or omissions within the scope of

3  employment." Eastburn, 31 Cal.4th at 1180; Hoff v. Vacaville Unified Sch. Dist., 19 Cal.4th 925,

4  932.   However, "liability of the employer only attaches if and when it is adjudged that the

5  employee was negligent," and, although "public entities always act through individuals, that does

6  not convert a claim for direct negligence into one based on vicarious liability." Munoz, 120

7  Cal.App.4th at 1113-114; Sanders, 2006 WL 1883394 at *9.   The court has reviewed the

8  complaint.   The third cause of action alleges negligence based on Defendants' customs,

9  practices, and policies.   The fourth cause of action also alleges that policies and customs caused

10  the shooting.   Nowhere in the complaint do Plaintiffs allege that either County or Wittman are

11  liable on a vicarious liability theory.   Rather, the complaint alleges County's and Wittman's own

12  actions and inactions constituted negligence.   Such a theory is simply not available absent a

13  statute.   Thus, the third cause of action and fourth cause of action are subject to dismissal as to

14  County and Wittman.[2]

15       Absent unusual circumstances, dismissal without leave to amend is improper unless it is

16  clear that the complaint could not be saved by amendment.   Chang, 80 F.3d at 1296.   Because it

17  might possible a statute does exist imposing a duty on County and/or Wittman and it is possible

18  there is authority showing County and/or Wittman can be vicariously liable for the actions of the

19  Deputies on the scene, the court will dismiss the negligence causes of action against County and

20  Wittman with leave to amend.   Although the court allows Plaintiffs to amend the negligence

21  causes of action, Plaintiffs are advised that any amended complaint that includes negligence

22  causes of action against County and Wittman must be based upon a well-founded belief that a

23

24       [2] The parties have not discussed whether a claim for negligence in training, supervision,
and discipline that is made against a Sheriff is in fact a claim for direct liability against the public

25  entity.  Because Wittman is sued in his capacity as Sheriff, the court finds that for the purposes of
immunity on the negligence claims, negligence claims against Wittman are in fact claims against

26  County. Sanders v. City of Fresno , 2006 WL 1883394, *11 (E.D.Cal. 2006); see also  Munoz,
120 Cal.App.4th at 1112-13 (not distinguishing between Police Chief and City when requiring

27  plaintiffs to identify a specific statute imposing a duty pursuant to Eastburn).

28                                        17

1   cognizable or arguable legal theory exists that would support such a theory.  <u>See</u> Fed. R. Civ. P.

2   11; <u>Les Shockley Racing Inc. v. National Hot Rod Ass'n</u>, 884 F. 2d 504, 510 (9th Cir. 1989).

3   **E.  Fifth Cause of Action – Battery**

4        The fifth cause of action alleges battery against all Defendants.    Defendants contend

5   the complaint fails to state a claim for battery.

6        The elements of a civil battery are: (1) The defendant intentionally did an act which

7   resulted in a harmful or offensive contact with the plaintiff's person; (2) The plaintiff did not

8   consent to the contact; and (3) The harmful or offensive contact caused injury, damage, loss or

9   harm to the plaintiff.  .   <u>Piedra v. Dugan</u>, 123 Cal.App.4th 1483, 1495 (2004); <u>Fluharty v.</u>

10  <u>Fluharty</u>, 59 Cal.App.4th 484, 497 (1997).

11  ***1.  Individual Defendants***

12        California Penal Code § 835a states that a peace officer who has reasonable cause to

13  believe person to be arrested has committed a public offense may use reasonable force to effect

14  the arrest, to prevent escape or to overcome resistance.   In order to prevail on a claim of battery

15  against a police officer, the plaintiff bears the burden of proving the officer used unreasonable

16  force.  <u>Munoz v. City of Union City</u>, 120 Cal.App.4th 1077, 1102 (2004); <u>Susag v. City of Lake</u>

17  <u>Forest</u>, 94 Cal.App.4th 1401, 1415 (2002); <u>Edson v. City of Anaheim</u>, 63 Cal.App.4th 1269,

18  1272 (1998).   The question is whether the officers' actions were objectively reasonable based on

19  the facts and circumstances confronting them.   <u>Munoz</u>, 120 Cal.App.4th at 1103.   In calculating

20  if the force was excessive, the trier of fact must recognize that police officers are often forced to

21  make split-second judgments, in tense circumstances, concerning the amount of force needed.

22  <u>Edson</u>, 63 Cal.App.4th at 1273.   A state battery claim is the state counterpart to a federal civil

23  rights claims of excessive force; in both, the plaintiff must prove the unreasonableness of the

24  officer's conduct.   <u>Munoz</u>, 120 Cal.App .4th at 1102 n. 6.

25        As discussed above, the complaint alleges that once the truck came to a stop in the cul-

26  de-sac, Megargee or Taylor did not try to escape nor did they pose a threat to Defendants.

27

28                                                  18

Taking the allegations in the complaint as true, at the time the shots were fired, the officers did not face any apparent danger and the circumstances did not justify the amount of force employed. For the same reasons as the Fourth Amendment causes of action cannot be dismissed at this stage, the fifth cause of action is also not subject to dismissal.

### *2.  County*

County asks that the fifth cause of action be dismissed for the additional reason that there is no statute imposing liability on County.  As discussed above, public entities cannot be held liable in tort except where there is a specific statute declaring them to be liable or creating a specific duty of care.  Cal. Gov't Code § 815(a).  No party has cited a statutory basis for a municipality being liable if its officers commit a battery.  In addition, no party has cited any authority that a municipality is vicariously liable for such actions.  See Cal. Gov't Code § 815.2(a); Eastburn, 31 Cal.4th at 1180.  Therefore, County's motion to dismiss Plaintiffs' fifth cause of action for battery.  While it is unclear what statute Plaintiffs will cite, dismissal of this cause of action as to Defendant County will be with leave to amend.

**G.  Sixth Cause of Action – Failure to Obtain Medical Care**

The sixth cause of action alleges failure to provide medical care against all Defendants. Defendants contend the sixth cause of action should be dismissed because Defendants are not liable.   Unfortunately, no party has briefed a legal definition of this cause of action.   Defendants do not define the elements of this cause of action nor argue how the complaint fails to allege all elements.   It appears this cause of action is based on Plaintiffs' contention that Defendants did not obtain medical care of Megargee in a timely fashion, and this delay constituted negligence on the part of Defendants.  Defendants position appears to be that they owed Plaintiffs no duty, and assuming they did owe a duty, Defendants are immune.

As discussed above, the basic elements of a negligence cause of action are the existence of a legal duty of care, breach of that duty, and the breach as the proximate cause of the resulting injury.  Ladd, 12 Cal.4th at 917-18.

1 | ***1. Rhyman and Hall***

2       The general rule is that a person who has not created a peril is not liable in tort for failing

3 to take affirmative actions to protect a person, such as summoning medical care, unless they have

4 some relationship that gives rise to a duty to act.  Paz v. State of California, 22 Cal.4th 550, 558

5 (Cal. 2000);  Williams v. State of California, 34 Cal.3d 18, 23  (1983).  However, one has a duty

6 aid another if there is a duty to exercise due care.  Id.  Tort law has long recognized that when an

7 actor creates a risk of harm, he or she has a duty of care.  See Duty To Third Persons Based On

8 Undertaking To Another, REST 3D TORTS-PH § 44 (2004).   Under California law, police officers

9 owe a duty to members of the public when the police created or increased the peril to members of

10 the public by the police's affirmative acts.  McCorkle v. City of Los Angeles, 70 Cal.2d 252

11 (1969); M.B. v. City of San Diego, 233 Cal.App.3d 699, 705 (1991),

12       Based on this authority, Megargee may have a negligence cause of action against

13 Defendants Rhyman and Hall for their alleged failure to timely summon medical care.  As the

14 officers who shot Plaintiffs, Defendants Rhyman and Hall were responsible for putting Megargee

15 in peril, creating a duty to Megargee.   While evidence may later show that Rhyman and Hall did

16 not breach any duty to Megargee and/or Megargee did not suffer any damages caused by Rhyman

17 and Hall's actions concerning medical care, Rhyman and Hall owed Plaintiffs a duty.  The

18 complaint alleges that Defendants assumed Megargee was dead and did not summon medical

19 care for him until well after the shooting.   Based on the allegations in the complaint, Plaintiffs

20 have stated a cause of action against Rhyman and Hall for their failure to summon medical care.

21       In their motion, the only authority Rhyman and Hall cite for the proposition that the sixth

22 cause of action must be dismissed is California Health and Safety Code § 1799.107.   Section

23 1799.107 reads in pertinent part:

24          (a) The Legislature finds and declares that a threat to the public health and safety
           exists whenever there is a need for emergency services and that public entities and
25          emergency rescue personnel should be encouraged to provide emergency services.
           To that end, a qualified immunity from liability shall be provided for public
26          entities and emergency rescue personnel providing emergency services.
           (b) . . . . neither a public entity nor emergency rescue personnel shall be liable for

27

28                                              20

any injury caused by an action taken by the emergency rescue personnel acting within the scope of their employment to provide emergency services, unless the action taken was performed in bad faith or in a grossly negligent manner.

(c) For purposes of this section, it shall be presumed that the action taken when providing emergency services was performed in good faith and without gross negligence. This presumption shall be one affecting the burden of proof.

(d) For purposes of this section, "emergency rescue personnel" means any person who is an officer, employee, or member of a fire department or fire protection or firefighting agency of the federal government, the State of California, a city, county . . . other public or municipal corporation or political subdivision of this state. . . .

(e) For purposes of this section, "emergency services" includes, but is not limited to, first aid and medical services, rescue procedures and transportation, or other related activities necessary to insure the health or safety of a person in imminent peril.

Cal.Health & Safety Code § 1799.107.   Defendants Rhyman and Hall claim that they fall within this immunity.   Defendants Rhyman and Hall contend that at best they delayed providing medical treatment, not that they failed to provide medical treatment.   By its express terms, Section 1799.107 only apples to persons who are employees of a fire department or fire protection or firefighting agency.   See Cal.Health & Safety Code § 1799.107(d).   As such, this immunity provision is not available to Rhyman and Hall.   Accordingly, based on the arguments in their motions, Defendants Rhyman and Hall are not entitled to have the sixth cause of action dismissed as to them.

### 2.  Wittman

Unlike Defendants Rhyman and Hall, there are no allegations in the complaint that Defendant Wittman personally participated in the shooting.   Plaintiffs cite no authority for the proposition that Defendant Wittman had a duty to Plaintiffs even though he is not the one who put Plaintiffs in peril by shooting them.   Based on the allegations in the complaint and briefs submitted by the parties, Defendant Wittman must be dismissed from the sixth cause of action. Because it may be possible to state a cause of action against Defendant Wittman, this dismissal will be with leave to amend.

### 3.  County

Defendant County contends that it cannot be sued under state law for the tort of failing to

provide medical care because no statute requires such a duty.   As previously discussed, public entities cannot be held liable in tort for negligence except where there is a specific statute declaring them to be liable or creating a specific duty of care. Cal. Gov. Code § 815(a);  Munoz, 120 Cal.App. 4th at 1112.   No party has cited a statutory basis for a claim that a municipality can be directly liable if its deputies fail to timely summon proper medical aid.  In addition, no party has cited any authority that a municipality must be vicariously liable for its employees' failure to timely summon medical care.  See Cal. Gov't Code § 815.2(a); Eastburn, 31 Cal.4th at 1180. Therefore, County's motion to dismiss Plaintiffs' claims for negligence must be granted.  While it is unlikely that Plaintiffs will be able to cite such a statute, dismissal of this cause of action as to Defendant County will be with leave to amend.

**H.  Seventh Cause of Action – Spoliation of Evidence**

The seventh cause of action alleges spoliation of evidence against all Defendants. Defendants contend the seventh cause of action should be dismissed because there is no tort for spoilage of evidence in California.

In Cedars-Sinai Medical Center v. Superior Court, 18 Cal.4th 1(1998), the California Supreme Court held that there is no tort remedy for intentional spoliation of evidence by a party to an action.   Id. at 17-18.   The California Supreme Court's holding concerned intentional spoliation of evidence when the spoliation victim knew or should have known of the spoliation before the trial or other decision on the merits in the underlying action.  Id. at 17-18.  In Temple Community Hospital v. Superior Court, 20 Cal.4th 464 (1999), the California Supreme Court extended the holding of Cedars Sinai to intentional third party spoliation of evidence.   Id. at 466, 478.   The California Supreme Court noted in Cedars-Sinai that discovery sanctions are available as a remedy for intentional spoliation of evidence by a party.  Cedars-Sinai, 18 Cal.4th at 12.   In Temple Community Hospital, the Supreme Court "recognize[d] that the salient distinction between first party and third party spoliation of evidence is the disparity in sanctions available within the confines of the underlying litigation."  Temple Community Hospital, 20 Cal.4th at

476.   However, the California Supreme Court reasoned that:

> [T]he victim of third party spoliation may deflect the impact of the spoliation on his or her case by demonstrating why the spoliated evidence is missing. (See Evid.Code § 412.) It also may be possible to establish a connection between the spoliator and a party to the litigation sufficient to invoke the sanctions applicable to spoliation by a party. (Code Civ. Proc. § 2025, subds. (j)(3), (o).)

Temple Community Hospital, 20 Cal.4th at 477.

The California Supreme Court in Cedars Sinai appeared to leave open a possible cause of action for the intentional spoliation of evidence if the spoliation victim did not know and should not have known of the spoliation before the trial or other decision on the merits in the underlying action.   Plaintiffs contend that they fall within this exception.   Plaintiffs argue that they did not know and had no reason to know that the videos would be destroyed prior to their destruction. Contrary to Plaintiffs' assumption, Plaintiffs failure to know about the spoliation before it occurred is not the only requirement for the possible exception set forth in Cedars-Sinai. Plaintiffs must also allege that they did not know about the spoliation prior to a decision on the merits in the underlying action.   In this case, there is no underlying action that concluded before Plaintiffs knew about the spoliation.   It appears, this action is the only action impacted by the spoliation, and this action has not yet concluded.

The Ninth Circuit has confirmed that a decision on the merits of an underlying litigation must have occurred for a party to have a spoliation cause of action.   Evidence destroyed prior to any litigation does not fall within this exception.   In Saridakis v. United Airlines, 166 F.3d 1272, (9th Cir.1999), the defendant hired Saridakis as an airframe maintenance mechanic, a position classified as safety-sensitive.   During his time working with defendant, Saridakis sustained non-work related injuries and had one drug test returned positive for drug use.   Id. at 1274 -75.   As a result of injuries, Saridakis began to suffer from acute bursitis, knee complications, recurrent rectal fissures and insomnia.   Id.   For several years thereafter, Saridakis took the drug Marinol, and his drug tests came back negative or were ruled negative based on Saridakis' prescribed use of Marinol.   Id. at 1275.   After several years, Saridakis's drug test came back positive, but this

1   time defendant's medical review officer refused to reverse the positive result because he found

2   the use of Marinol for insomnia and pain unauthorized.  Id.   Saridakis was then discharged.  Id.

3          Saridakis sued, and among other claims, Saridakis alleged the tort of intentional

4   spoliation of evidence because defendant had destroyed the "lone urine sample."

5   Saridakis, 166 F.3d at 1278 n.7.  Citing to Cedars-Sinai, the Ninth Circuit found that "there is no

6   tort remedy for the intentional spoliation of evidence, in cases in which, as here, the spoliation

7   victim knows of the alleged spoliation before a decision on the merits of the underlying action."

8   Id. (internal quotes an cites omitted).    The Ninth Circuit concluded that because Saridakis knew

9   of the spoliated evidence prior to any ruling on the merits of the action, he had no tort remedy

10  under California law.  Id.

11         Plaintiffs contend in their opposition that they did not know and had no duty to know that

12  the audio and video tapes would be tampered with or destroyed.   Plaintiffs believed that these

13  tapes would be preserved for a potential criminal action.    However, the complaint does not

14  allege anything about Plaintiffs' knowledge or lack of knowledge of the spoliation.   Regardless

15  no ruling on the merits of an underlying action has been alleged in the complaint or opposition.

16  Plaintiffs' position is that the tapes would have assisted them in this action.  The  spoliation at

17  issue occurred prior to a judgment in this action.  Because Plaintiffs knew of the spoliation prior

18  to any ruling on this action's merits, Plaintiffs' spoliation cause of action does not fit within

19  Cedars-Sinai's possible exception.   Thus, this cause of action must be dismissed because there is

20  no cause of action available for the alleged spoliation of evidence.

21         The court is mindful that "[i]f a complaint is dismissed for failure to state a claim, leave

22  to amend should be granted unless the court determines that the allegation of other facts

23  consistent with the challenged pleading could not possibly cure the deficiency."  Schreiber

24  Distributing Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1401 (9th Cir. 1986).   Here, it

25  is unclear what additional facts Plaintiffs could allege to create a cause of action for spoliation of

26  evidence.   Plaintiffs do not take the position that they did not know about the spoilation prior to

27

28                                             24

1 another action's conclusion.   As such, there are no facts Plaintiffs could allege to save this cause

2 of action from dismissal.   Accordingly, this cause of action will be dismissed without leave to

3 amend.

4 **I. Emotion Distress by Taylor**

5      Defendants contend Taylor cannot recover for emotional distress damages.[3]   The

6 negligent causing of emotional distress is not an independent tort, and this tort is subsumed

7 within negligence.  Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 984-85 (1993);

8 Burgess v. Superior Court,  2 Cal.4th 1064, 1071-72 (1992);  Spates v. Dameron Hosp. Assn.,

9 114 Cal.App.4th 208, 213 (2003).   To establish negligent infliction of emotional distress the

10 plaintiff must prove the traditional elements of negligence: duty, breach of duty, causation and

11 damages.  Burgess,  2 Cal.4th at 1071-72;  Friedman v. Merck & Co., 107 Cal.App.4th 454, 463

12 (2003).

13      Whether a plaintiff can establish that the defendant owed a duty is a question of law.

14 Burgess, 2 Cal.4th at 1072.   The duty element of a negligent infliction of emotional distress

15 claim has evolved into different theories – one based on a direct victim theory and one based on

16 bystander liability.  The direct victim theory of negligent infliction of emotional distress is based

17 upon the breach of a duty owed to the plaintiff which results in emotional distress.  Wooden v.

18 Raveling, 61 Cal.App.4th 1035, 1038 (1998).  The direct victim theory requires a duty owed

19 directly to the plaintiff "that is assumed by the defendant or imposed on the defendant as a matter

20 of law, or that arises out of a relationship between the two." Marlene F. v. Affiliated Psychiatric

21 Medical Clinic, Inc., 48 Cal.3d 583, 590 (1989); Spates, 114 Cal.App.4th at 213.

22      The "bystander" theory addresses the question of duty in circumstances in which a

23 plaintiff seeks to recover damages as a percipient witness to the injury of another . . . [B]ystander

24

25     [3]  The operative complaint, the first amended complaint filed on June 9, 2006, does not

26 contain a cause of action for infliction of emotional distress.   However, it appears Taylor may be

requesting emotional distress damages arising from Defendants' negligence.   For the reasons

27 discussed above, the only remaining negligence claims are against Rhyman and Hall.

28                                      25

1   liability is premised upon a defendant's violation of a duty not to negligently cause emotional

2   distress to people who observe conduct which causes harm to another." <u>Burgess v. Superior</u>

3   <u>Court of Los Angeles County</u>, 2 Cal.4th 1064, 1072 (1992) (internal cites and quotes omitted).

4   To recover damages for emotional distress, absent physical injury, in a "bystander case" the

5   plaintiff must be:   (1) Closely related to the injury victim; (2) Present at the scene of the

6   injury-producing event at the time it occurs and is then aware that it is causing injury to the

7   victim; and (3) Suffer emotional distress as a result, beyond that which would occur in a

8   disinterested witness.   <u>Martin By and Through Martin v. United States</u>, 984 F.2d 1033, 1037 (9th

9   Cir. 1992); <u>Thing v. La Chusa</u>, 48 Cal.3d 644, 647 (1989).

10        Defendants contend that Taylor cannot succeed on a direct theory of liability because the

11   shooting was not directed at her and she cannot succeed on the bystander theory because she and

12   Megargee were not closely related.   In her opposition, Taylor contends that based on the

13   complaint's allegations she has alleged negligent infliction of emotional distress based on a direct

14   theory of liability.   In order to state a claim for negligent infliction of emotional distress, the risk

15   of severe emotional distress must be reasonably foreseeable.   <u>Molien v. Kaiser Found. Hosp.</u>, 27

16   Cal.3d 916, 923 (1980).   Consequently, the plaintiff must plead sufficient allegations of fact

17   which would reasonably elicit a serious emotional response.   <u>Accounts Adjustment Bureau v.</u>

18   <u>Cooperman</u>, 158 Cal.App.3d 844, 847-48 (1984).

19        The complaint alleges that when the truck stopped in the cul-de-sac, neither Megargee or

20   Taylor tried to escape or threaten Defendants.   The complaint alleges that before any other

21   passengers in the stolen vehicle had an opportunity to surrender, Defendants opened fire on the

22   cab of the truck.   The complaint alleges Defendants fired shoots at Plaintiffs.   The complaint

23   alleges Defendants first shot Megargee in the chest and then the head.   The complaint alleges

24   Defendants then shot Taylor at least three times.   Nothing in these allegations suggests that

25   Defendants' conduct was directed only at Megargee and not Taylor.   The complaint alleges

26   Defendants opened fire on the truck, in which both Megargee and Taylor were sitting.   Based on

27

28                         26

the complaint's allegations, it was reasonably foreseeable that Taylor would suffer severe emotional distress by having officers shoot at a truck in which she was sitting when neither she nor anyone else in the truck were trying to escape or posing a threat to the officers.   The court finds that facts consistent with the allegations of the complaint could be proved that would entitle Taylor to damages for negligent infliction of emotional distress.  See Swierkiewicz, 534 U.S. at 514; Diaz, 380 F.3d at 482.   Accordingly, Defendants' motion to dismiss Taylor's request for damages for negligent infliction of emotional distress must be denied.

**J.  State Law Causes of Action – Compliance with California's Tort Claims Act**

County contends that Plaintiffs' third, fourth, and sixth causes of action must be dismissed because Plaintiffs did not comply with the California Tort Claims Act.   Defendants argue these causes of action were not reflected in Plaintiffs' claim form.   Plaintiffs contend that their claim form need not have been identical to the complaint in this action, and their claim form put Defendants on notice concerning Plaintiffs' negligence causes of action and failure to render medical care cause of action.   Because Plaintiffs' negligence causes of action and failure to render medical care cause of action are subject to dismissal for Plaintiffs' failure to cite a statute imposing a duty on County, it is unnecessary to determine if Plaintiff adequately presented their claims to County as required by California Government Code § 910.

**K.  Motions to Strike**

Defendants request that the court strike several phrases from the complaint.   Defendants ask the court to strike the repeated use of the phrase "close-range execution-style shooting" when referring to Defendants' shooting of Megargee.   Defendants also ask the court to strike allegations that County allows it deputies to "particularly use excessive force intimidation tactics against people who refused to kowtow to the sheriff's authority, in order to make those people more submissive in their interactions with law enforcement personnel."   Defendants claim these phrases are prejudicial and do not further any factual determination necessary for Plaintiffs to prevail.

1       Rule 12(f) of the Federal Rules of Civil Procedure allows the court to strike from "any

2  pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous

3  matter."   The purpose of a Rule 12(f) motion is to avoid the costs that arise from litigating

4  spurious issues by dispensing with those issues prior to trial.   Sidney-Vinstein v. A.H. Robins

5  Co., 697 F.2d 880, 885 (9th Cir.1983).   Immaterial matter is defined as matter that "has no

6  essential or important relationship to the claim for relief or the defenses being pleaded." Fantasy,

7  Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir 1993) (quoting 5 Charles A. Wright & Arthur R.

8  Miller, Federal Practice and Procedure § 1382, at 706-07 (1990)), *rev'd on other grounds*, 510

9  U.S. 517 (1994).   Impertinent matter is defined as "statements that do not pertain, and are not

10  necessary, to the issues in question." Fantasy, Inc. 984 F.2d at 1527.   Granting a motion to strike

11  may be proper if it will make the trial less complicated or if allegations being challenged are so

12  unrelated to plaintiff's claims as to be unworthy of any consideration as a defense and that their

13  presence in the pleading will be prejudicial to the moving party. Id.

14       Defendants ask the court to strike references in the complaint to "close-range execution-

15  style shooting" and Defendants allowing officers to "use excessive force intimidation tactics

16  against people who refused to kowtow to the sheriff's authority."   Defendants primary objection

17  to these phrases is that they are inflammatory.   "[T]he function of a Rule 12(f) motion to strike is

18  to avoid the expenditure of time and money that must arise from litigating spurious issues by

19  dispensing with those issues prior to trial. . . ." Sidney-Vinson v. A.H. Robins Co., 697 F.2d 880,

20  885 (9th Cir.1983).   Rule 12(f) motions to strike are generally not granted unless it is clear that

21  the matter sought to be stricken could have no possible bearing on the subject matter of the

22  litigation. White v. Hansen, 2005 WL 1806367,  *14 (N.D. Cal. 2005); Rosales v. Citibank, 133

23  F.Supp.2d 1177, 1179 (N.D.Cal. 2001).   Here, the court finds that these phrases do have a

24  bearing on this action.   The phrases describe the alleged method of shooting and alleged policy

25  of the County.   Whether Megargee was shot execution style is relevant to Plaintiffs' excessive

26  force causes of action.   Whether County has a policy of allowing officers to use excessive force

27

28                             28

1  as an intimidation tactic against people who do not comply with authority is relevant to

2  Plaintiffs' excessive force causes of action against Wittman and County.   Thus, the court does

3  not find these phrases must be struck as irrelevant to this action.

4        The court does recognize that these phrases use "colorful" language to describe facts and

5  theories that could have been described in a more benign fashion.   However, actual prejudice is

6  necessary for the court to strike phrases from the complaint.  See Augustus v. Board of Public

7  Instruction of Escambia County, Florida, 306 F.2d 862, 868 (5th Cir.1962) ("[W]hen there is no

8  showing of prejudicial harm to the moving party, the courts generally are not willing to

9  determine disputed and substantial questions of law upon a motion to strike."); 2-12 MOORE'S

10  FEDERAL PRACTICE-CIVIL § 12.37 ("To prevail on this motion to strike, the movant must clearly

11  show that the challenged matter has no bearing on the subject matter of the litigation and that its

12  inclusion will prejudice the defendants.").   Here, the court does not find the phrases so

13  prejudicial that they must be struck.  Given the purpose of the complaint under the Federal Rules

14  of Civil Procedure and the fact the complaint is not evidence and is normally not viewed by the

15  trier of fact, Plaintiffs' colorful terms of art in the complaint when they describe Defendants'

16  alleged improper conduct will provide little if any impact on this action.    Any doubt concerning

17  the import of the allegations to be stricken weighs in favor of denying the motion to strike.

18  White v. Hansen,  2005 WL 1806367, *14 (N.D.Cal. 2005); In re 2TheMart.com, Inc. Sec. Litig.,

19  114 F.Supp.2d 955, 965 (C.D.Cal. 2000).   Accordingly, Defendants' motions to strike will be

20  denied.

21  **L.  Sanctions**

22        Plaintiffs request that the court impose sanctions on Defendants pursuant to Rule 11 of

23  the Federal Rules of Civil Procedure.   Plaintiffs claim Defendants' motions are frivolous.

24  Plaintiffs believe they were filed simply as a delay tactic and for harassment.   Defendants

25  contend sanctions should not be imposed because Plaintiffs did not comply with Rule 11's

26  requirements.

27

28

Under Rule 11 of the Federal Rules of Civil Procedure, an award of sanctions is required if a frivolous paper is filed.  <u>Price v. State of Hawaii</u>, 939 F.2d 702, 709 (9th Cir.1991). "Frivolous filings are those that are both baseless and made without a reasonable and competent inquiry." <u>Buster v. Greisen</u>, 104 F.3d 1186, 1190 (9th Cir.1997). Rule 11 provides in pertinent part as follows:

> (b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,-
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
> *10 (c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

Rule 11 imposes a duty on attorneys to certify that (1) they have read the pleadings or motions they file and (2) the pleading or motion is grounded in fact, has a colorable basis in law, and is not filed for an improper purpose.  <u>Mike Nelson Co., Inc. v. Hathaway</u>, 2005 WL 2179310, *11 (E.D.Cal. 2005) (citing <u>Smith v. Ricks</u>, 31 F.3d 1478, 1488 (9th Cir.1994)).

"Rule 11(c)(1)(A) provides strict procedural requirements for parties to follow when they move for sanctions under Rule 11 ." <u>Radcliffe v. Rainbow Const. Co.</u>, 254 F.3d 772, 788 (9th Cir.2001). Rule 11(c)(1)(A) provides that:

> A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

1  The purpose of Rule 11(c)(1)(A)'s safe harbor is to give the offending party the opportunity to

2  withdraw the offending pleading and thereby escape sanctions. Barber v. Miller, 146 F.3d 707,

3  710 (9th Cir.1998).  The procedural requirements of Rule 11(c)(1)(A)'s safe harbor are mandatory.

4  Radcliffe, 254 F.3d at 789; Barder, 146 F.3d at 710-11 . Additionally, a request for Rule 11

5  sanctions must be made "separately form other motions or requests and [must] describe the

6  specific conduct alleged to violate [Rule 11(b) ]." Fed. R. Civ. Pro. 11(c)(1)(A); Divane v. Krull

7  Elec. Co., 200 F.3d 1020, 1025 (7th Cir.1999).   A party's failure to comply with the mandatory

8  procedural requirements makes Rule 11 sanctions inappropriate.  Mike Nelson Co., 2005 WL

9  2179310, *11

10         Plaintiffs' Rule 11 motion for sanction is filed as part of Plaintiffs' oppositions to

11  Defendants' motions.   There is no indication that Plaintiffs complied with the mandatory notice

12  and 21-day waiting period.   It is an abuse of discretion to impose sanctions when the mandatory

13  procedures of Rule 11(c)(1)(A) have not been followed. Because Plaintiffs failed to follow the

14  requirements of Rule 11(c)(1)(A), their request for sanctions under Rule 11 must be denied.

15         However, Plaintiffs' failure to comply with Rule 11 does not absolve Defendants for

16  improper filings.   Regardless of Rule 11, the court maintains the power to sanction parties for

17  filings that waste the time of the court and require opposing parties to expend unnecessary

18  resources.   The court maintains the inherent power to levy sanctions, including attorneys' fees

19  when a party has acted in "bad faith, vexatiously, wantonly, or for oppressive reasons." Roadway

20  Express, Inc. v. Piper, 447 U.S. 752, 766 (1980); Rink v. Gomez, 239 F.3d 989, 991 (9th Cir.

21  2001).   While the court's inherent power extends to all litigation abuses, the litigant must have

22  "engaged in bad faith or willful disobedience of a court's order." Chambers v. NASCO, Inc.,

23  501 U.S. 32, 46-47 (1991); Fink, 239 F.3d at 992.

24         In addition, 28 U.S.C. § 1927 allows for sanctions.   Section 1927 provides:

25         Any attorney or other person admitted to conduct cases in any court of the United
           States or any Territory thereof who so multiplies the proceedings in any case
26         unreasonably and vexatiously may be required by the court to satisfy personally
           the excess costs, expenses, and attorneys' fees reasonably incurred because of such

27

28                                              31

1   conduct.

2   Sanctions are appropriate under Section 1927 "when there is no obvious violation of the Federal

3   Rules, but where, within the rules, the proceeding is conducted in bad faith for the purpose of

4   delay or increasing costs." Pickern v. Pier 1 Imps. (U.S.), Inc., 339 F.Supp.2d 1081, 1091

5   (E.D.Cal.2004) (citing In re Yagman, 796 F.2d 1165, 1187 (9th Cir.1986), *as amended by* 803

6   F.2d 1085 (9th Cir.1986)).   Sanctions under Section 1927 are appropriate when: (1) the attorney

7   multiplied the proceedings; (2) the attorney's conduct was unreasonable and vexatious; and (3)

8   the conduct resulted in an increase in the cost of the proceedings. B.K.B. v. Maui Police Dep't,

9   276 F.3d 1091, 1107 (9th Cir.2002).   An award of sanctions under Section 1927 requires a

10   finding of recklessness or bad faith.  Ingle v. Circuit City, 408 F.3d 592, 596 (9th Cir. 2005);

11   B.K.B., 276 F.3d at 1107.

12          Defendants have three attorneys, plus the apparent oversight of County Counsel,

13   defending this action.   Defendants' law firm is not new to civil rights actions.   This court is at a

14   loss to explain how experianced attorneys would have believed it prudent to file a motion to

15   dismiss, at which time the court may **only** look at the complaint's allegations, that alleged the

16   complaint failed to state a claim for excessive force.   The court is aware of no authority and

17   Defendants have cited none that would allow this court to find no excessive force cause of action

18   when at the time of the shooting Plaintiffs allege they were posing no threat and were not trying

19   to escape.

20          However, dispite the wisdom of portions of Defendants' motion, sanctions are not

21   warranted in this case.   Several of Defendants' contentions not only had merit, but have resulted

22   in the dismissal of several cuases of action, one without leave to amend.   Based on this court's

23   reading of the law, Defendants are correct that Plaintiffs cannot maintain a cause of action for

24   spoilation of evidence.   While it appears based on the complaint allegations, Defendant Rhyman

25   and Hall are not entitled to immunity on the state law causes of action, County is correct that the

26   state law causes of action are not available against it unless Plaintiffs cite a statute providing for

27

28                                              32

such liability.   Finally, Defendants' motion has clarified the civil rights causes of action.  The narrowing of Plaintiffs' causes of action resulting from Defendants' motions should assist the parties in discovery and the court in further orders.   Thus, the court cannot find Defendants' motions were was improper and in bad faith.   Accordingly, Plaintiffs' motions for sanctions are denied.

## ORDER

Based on the above memorandum opinion, the court ORDERS as follows:

1.     County's, Wittman's, Rhyman's, and Hall's motions to dismiss are GRANTED in part and DENIED in part, as follows:

      a.     Wittman's, Rhyman's, and Hall's motions to dismiss the first cause of action are DENIED;

      b.     County's motion to dismiss the second cause of action is DENIED;

      c.     Rhyman's and Hall's motions to dismiss the second cause of action are GRANTED;

      d.     The second cause of action is DISMISSED WITH LEAVE TO AMEND as to Rhyman and Hall;

      e.     Rhyman's and Hall's motions to dismiss the fourth cause of action for negligence are DENIED;

      f.     County and Wittman's motion to dismiss the third cause of action and fourth cause of action for negligence is GRANTED;

      g.     The third cause of action and fourth cause of action are DISMISSED WITH LEAVE TO AMEND as to County and Wittman;

      h.     Rhyman's, Hall's, and Wittman's motions to dismiss the fifth cause of action for battery are DENIED;

      i.     County's motion to dismiss the fifth cause of action for battery is GRANTED;

  j. The fifth cause of action is DISMISSED WITH LEAVE TO AMEND as to County;

  k. Rhyman's and Hall's motion to dismiss the sixth cause of action for failure to obtain medical care is DENIED;

  l. County's and Wittman's motion to dismiss the sixth cause of action for failure to obtain medical care is GRANTED;

  m. The sixth cause of action is DISMISSED WITH LEAVE TO AMEND as to County and Wittman;

  n. County's, Wittman's, Rhyman's, and Hall's motions to dismiss the seventh cause of action for spoliation of evidence are GRANTED;

  o. The seventh cause of action is DISMISSED WITHOUT LEAVE TO AMEND;

  p. Wittman's, Rhyman's, and Hall's motions to dismiss Taylor's request for damages based on negligent infliction of emotional distress are DENIED;

2. County's, Wittman's, Rhyman's, and Hall's motions to strike are DENIED;

3. Plaintiffs' motions for sanctions are DENIED; and

4. Plaintiffs MAY file a second amended complaint within twenty days of this order's date of service.  If Plaintiffs fail to file a second amended complaint, this action will proceed on those causes of action found in the June 9, 2006 first amended complaint not dismissed by this order.

IT IS SO ORDERED.

**Dated:** **October 13, 2006**     _____/s/ Anthony W. Ishii_____
0m8i78           UNITED STATES DISTRICT JUDGE