1    Kathleen Bales-Lange, # 094765                    (SPACE BELOW FOR FILING STAMP ONLY)
     County Counsel for the County of Tulare
2    Teresa M. Saucedo, #093121
     Deputy County Counsel
3    2900 W. Burrel, County Civic Center
     Visalia, California 93291
4    Telephone:    (559) 733-6263
     Facsimile:    (559) 737-4319
5
     Justus C. Spillner, # 067638
6    Cassandra E. Hooks, # 277741
     McCormick, Barstow, Sheppard,
7    Wayte & Carruth LLP
     P.O. Box 28912
8    5 River Park Place East
     Fresno, CA  93720-1501
9    Telephone:    (559) 433-1300
     Facsimile:    (559) 433-2300
10
     Attorneys for Defendants
11   COUNTY OF TULARE, BILL WITTMAN, CHAD
     RHYMAN and DAN BAKER
12

13                   UNITED STATES DISTRICT COURT

14        EASTERN DISTRICT OF CALIFORNIA (FRESNO DIVISION)

15

16   **STANLEIGH GEAN MEGARGEE an**          Case No.  1:06-CV-00684-LJO-GSA
     **incompetent, by Hazel and Art Lopez,**
17   **his guardian ad litem; and KATIE**    **MEMORANDUM OF POINTS AND**
     **TAYLOR, a minor, by Terry Huerta,**   **AUTHORITIES IN SUPPORT OF**
18   **her guardian ad litem,**              **DEFENDANTS' MOTION FOR**
                                             **SUMMARY JUDGMENT OR, IN THE**
19                   Plaintiffs,             **ALTERNATIVE, SUMMARY**
                                             **ADJUDICATION, PURSUANT TO RULE**
20           v.                              **56**

21   **BILL WITTMAN, CHAD RHYMAN**           Date:       March 21, 2008
     **and DAN BAKER, in their individual**  Time:       8:30 a.m.
22   **capacity as sheriffs of the COUNTY OF**  Courtroom:  4
     **TULARE, and the COUNTY OF**           Judge:      Lawrence J. O'Neill
23   **TULARE, and DOES 1 through 100**
     **inclusive,**
24
                     Defendants.
25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3   I.   STATEMENT OF UNDISPUTED MATERIAL FACTS ................................................1

4   II.   LEGAL AUTHORITY FOR MOTION ....................................................................2

    III.   LEGAL ARGUMENT FOR PLAINTIFFS' FEDERAL LAW CLAIMS .........................4

5        A.   PLAINTIFFS' First Cause of Action Under 42 U.S.C. §1983 ...................4

6            1.   PLAINTIFFS' First Cause of Action Should Be Dismissed As to
                  RHYMAN and BAKER Since Their Use of Force Towards the
7                 PLAINTIFFS Was Reasonable And Legally Permitted.........................4

8            2.   Both BAKER and RHYMAN Are Entitled To Qualified Immunity
                  Since They Reasonably Believed That Their Actions Were
9                 Constitutionally Permitted ......................................................7

             3.   PLAINTIFFS' First Cause of Action Must Be Dismissed As to
10                WITTMAN, Since They Cannot Establish Any Causal Connection
                  Between WITTMAN's Actions and The Alleged Constitutional
11                Deprivation ........................................................................10

12       B.   PLAINTIFFS' Second Cause of Action For Entity/Official Liability.................12

13           1.   The Second Cause of Action for Entity/Official Liability Is
                  Redundant, As a Suit Against WITTMAN in His Official Capacity
                  is Actually a Suit Against the COUNTY OF TULARE.........................12

14           2.   PLAINTIFFS' Second Cause of Action Against COUNTY OF
                  TULARE Fails, As There is No Evidence that It Had Any Unlawful
15                Policy or Custom .................................................................12

16   IV.   LEGAL ARGUMENT FOR PLAINTIFFS' STATE LAW CLAIMS .........................15

17       A.   Under California State Law , DEFENDANTS Are Immune Against
                PLAINTIFFS' State Law Causes Of Action ........................................15

18       B.   PLAINTIFFS' Fourth Cause of Action For Negligence Against RHYMAN
                and BAKER ..........................................................................17

19       C.   PLAINTIFFS' Third and Fourth Causes of Action For Negligent
                Supervision Against WITTMAN and COUNTY OF TULARE ....................18

20       D.   PLAINTIFFS' Fifth Cause of Action For Vicarious Liability Against
                WITTMAN and COUNTY OF TULARE ...........................................19

21       E.   PLAINTIFFS' Sixth Cause of Action For Battery Against RHYMAN and
22              BAKER ...............................................................................20

23       F.   PLAINTIFFS' Seventh Cause of Action For Failure To Provide Medical
                Care Against All Defendants.......................................................21

24           1.   Since RHYMAN and BAKER Did Not Act In a Grossly Negligent
                  Manner, They Are Not Liable For Civil Damages Pursuant to
25                California Health And Safety Code §1799.106 ..................................21

26           2.   As RHYMAN and BAKER Are Immune From Civil Damages, The
                  COUNTY OF TULARE and WITTMAN Are Also Entitled to
27                Immunity Under California Health And Safety Code §1799.106............22

28

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA. 93720-1501

i

1

**TABLE OF CONTENTS**
**(continued)**

2

**Page**

3

    G.    All Causes of Action Against Defendant WITTMAN Should Be Dismissed As Redundant and Unnecessary ......................................................................24

4

        1.    As a Public Officer, WITTMAN Cannot Be Held Vicariously Liable for His Subordinates' Actions ................................................24

5

        2.    Since COUNTY OF TULARE is Already Joined As a Party to This Action, Asserting Entity Liability Against WITTMAN for State Causes of Action is Redundant and Improper .........................................25

6

    H.    PLAINTIFFS' Punitive Damages Claims Against DEFENDANTS Cannot Be Sustained .............................................................................................26

7

8

        1.    Under Both State and Federal Law, PLAINTIFFS Cannot Recover Punitive Damages Against a Municipality or Against Officers Acting in Their Official Capacity ..............................................................26

9

        2.    PLAINTIFFS Have Insufficient Evidence To Substantiate Any Punitive Damage Claim Against WITTMAN in His Individual Capacity ...............................................................................................27

10

11

        3.    PLAINTIFFS Have Insufficient Evidence to Substantiate Their Punitive Damages Claims Against RHYMAN and BAKER ..................27

12

V.    CONCLUSION .............................................................................................28

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adickes v. S.H. Kress & Co,*
    398 U.S. 144, 157 (1970) ...........................................................................................2

*Allen v. Sully-Miller Contracting Co.*
    (2002) 28 Cal.4th 222, 228-229 .............................................................................15

*Barner v. Leeds*
    (2000) 24 Cal.4th 676, 684 .....................................................................................16

*Bingham v. City of Manhattan Beach,*
    341 F.3d 939, 945 (9th Cir. 2003)............................................................................3

*Brosseau v. Haugen,*
    543 U.S. 194, 197-98 (2004) ................................................................................5, 8

*Burgess v. Superior Court*
    (1992) 2 Cal.4th 1064, 1077 ...................................................................................15

*Burrell v. McIlroy,*
    423 F.3d 1121, 1124 (9th Cir. 2005).................................................................9, 20

*C.N. v. Wolf,*
    410 F.Supp.2d 894 (C.D.Cal. 2005); 2005 U.S. Dist. LEXIS 40009, *19.............16

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 323 (1986) ..........................................................................................3

*City of Newport v. Fact Concerts, Inc.*
    453 U.S. 247, 271 (1981) ........................................................................................26

*Dang v. Cross,*
    422 F.3d 800, 806 (9th Cir. 2005)...........................................................................26

*David v. City of Fremont,*
    2006 U.S. Dist. LEXIS 57211, *53 (N.D. Ca. 2006)......................................14, 17

*Edson v. City of Anaheim*
    (1998) 63 Cal.App.4th 1269, 1274.) ...............................................................4, 20, 21

*Faulkner v. County of Kern,*
    2006 U.S. Dist. LEXIS 44151 (E.D. CA) ...............................................................12

*Fobbs v. City of Los Angeles*
    (1957) 154 Cal.App.2d 464, 467-469; CACI 1305.................................................20

*Fortyune v. American Multi-Cinema, Inc.,*
    364 F.3d 1075, 1080 (9th Cir. 2004)........................................................................2

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5 River Park Place East
Fresno, Ca. 93720-1501

iii

**TABLE OF AUTHORITIES**
(continued)

Page

*Foster v. City of Fresno,*
    392 F.Supp.2d 1140, 1159 (E.D. Cal. 2005) .................................................. 16, 17

*Galvin v. Hay,*
    374 F.3d 739, 745 (9th Cir. 2004).................................................................. 8

*Graham v. Connor,*
    490 U.S. 386, 388 (1989) ......................................................................... 4, 20

*Graves v. City of Coeur D'Alene,*
    339 F.3d 828, 848 (9th Cir. 2003)................................................................ 11

*Guillor v. County of Orange,*
    731 F.2d 1379, 1382 (9th Cir. 1984)........................................................... 16

*Hafer v. Melo,*
    502 U.S. 21, 25 (1991) ............................................................................... 12

*Harlow v. Fitzgerald,*
    457 U.S. 800, 819 (1982) ........................................................................... 7

*Herrera v. Las Vegas Metropolitan Police Department,*
    298 F.Supp.2d, 1043, 1049-1050 (Dist. Nv. 2004)..................................... 5

*Hunter v. Bryant,*
    502 U.S. 224, 227 (1991) ........................................................................... 8

*Jeffers v. Gomez,*
    267 F.3d 895, 909 (9th Cir. 2001).............................................................. 9, 11

*Johnson v. State of California*
    (1968) 69 Cal.2d 782, 793-794 ................................................................. 15, 20

*Jones v. Williams,*
    297 F.3d 930, 934 (9th Cir. 2001).............................................................. 11

*Jung v. FMC Corp.,*
    755 F.2d 708, 710 (9th Cir. 1985).............................................................. 2

*Kahn v. East Side Union High School Dist.,*
    31 Cal. 4th 990, 1020 (2003) .................................................................... 21

*Kyle v. Patterson,*
    196 F.3d 695, 697-698 (7th Cir. 1999) ...................................................... 28

*Ladd v. County of San Mateo,*
    12 Cal.4th 913, 917 (1996)........................................................................ 17, 18

*Larez v. City of Los Angeles,*
    946 F.2d 630, 646 (9th Cir. 1991)............................................................. 26

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5 River Park Place East
Fresno, CA. 93720-1501

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Lee v. Gregory,*
    363 F.3d 931, 934 (9th Cir. 2004)..................................................................7

4

*Martinez v. County of Los Angeles*
    (1996) 47 Cal.App.4th 334, 349-350 ................................................ 16, 23, 24

5

6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574, 587 (1986) ..........................................................................3

7

*Mendoza v. City of Los Angeles,*
    66 Ca.App.4th 1333, 1339 (1998)...............................................................17

8

9

*Menotti v. City of Seattle,*
    409 F.3d 1113, 1149 (9th Cir. 2005).......................................................11, 12

10

*Merritt v. County of Los Angeles*
    (9th Cir. 1989.) 875 F.2d 765, 770............................................................13

11

12

*Mitchell v. Forsyth,*
    472 U.S. 511, 526 (1985) .....................................................................8, 26

13

*Mora v. ChemTronics,*
    16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998) ...............................................3

14

15

*Munoz v. City of Union City,*
    120 Cal.App.4th 1077,1101 ............................................................ 17, 18, 23, 25

16

*Ne Casek v. City of Los Angeles*
    (1965) 233 Cal.App.2d 131, 138–140..........................................................20

17

18

*Perkins v. Howard,*
    232 Cal. App. 3d 708, 713 (1991)..............................................................21

19

*Phillips v. City of Fairfield,*
    406 F.Supp.2d 1101, 1118 (E.D. Cal. 2005) ...............................................20

20

21

*Reese v. Anderson,*
    926 F.2d 494, 500 (1991) ............................................................ 5, 6, 7, 10

22

*Rios v. City of Fresno,*
    2006 U.S. Dist. LEXIS 85642, 28-29 (D. Cal. 2006) ...................................4

23

24

*Sahagian v. Dickey,*
    827 F.2d 90, 100 (7th Cir. 1987) ...............................................................27

25

*Sanchez v. Vild,*
    891 F.2d 240, 242 (9th Cir. 1989)................................................................3

26

27

*Sanders v. City of Fresno,*
    2006 WL 1883394, *9 (E.D. Cal. 2006) ............................................ 19, 23, 25

28

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

v

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Saucier v. Katz,*
   533 U.S. 194, 205 (2001) .................................................................... 4, 8

4

*Scruggs v. Haynes*
   (1967) 252 Cal.App.2d 256, 263-268 ............................................... 16

5

6

*Smith v. Freland,*
   954 F.2d 343, 347 (1992) ........................................................ 5, 6, 7, 10

7

*Sorgen v. City and County of San Francisco,*
   2006 WL 2583683, *10 (N.D. Cal. 2006) ........................................ 19

8

9

*Susag v. City of Lake Forest*
   (2002) 94 Cal.App.4th 1401, 1415 ............................................... 20, 21

10

*Tailor v. Buff ,*
   172 Cal.App.3d 384, 388-389 (1985) ............................................... 16

11

12

*Tanner v. Heise,*
   879 F.2d 572, 582 (9th Cir. 1989).................................................... 13

13

*Tennessee v. Garner,*
   471 U.S. 1, 11-12 (1985)..................................................................... 5

14

15

*Weaver v. State of California*
   (1998) 63 Cal.App.4th 188, 202 ....................................................... 25

16

*Westlands Water District v. Amoco Chemical Company,*
   953 F.3d 1109, 1113 (9th Cir. 1992)................................................. 27

17

18

*Wright v. City of Los Angeles,*
   219 Cal.App.3d 318, 343-44 (1990) ................................................. 21

19

**Statutes**

20

California Civil Code §3294(a) ............................................................... 26

21

California Government Code §815................................... 15, 17, 18, 19, 25

22

California Government Code §815.2(a)..................................................... 19

23

California Government Code §818............................................................ 26

24

California Government Code §820.8............................................ 23, 24, 25

25

California Health And Safety Code §1799.106............................. 21, 22, 23

26

Federal Rules of  Civil Procedure, Rule 56(a)........................................... 3

27

Federal Rules of Civil Procedure, Rule 56(c)............................................. 2

28

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5 River Park Place East
Fresno, CA. 93720-1501

vi

NOTICE OF MOTION 1:06-CV-00684-AWI-LJO

1

**TABLE OF AUTHORITIES**
(continued)

2
**Page**

3    Goverment Code §815(b) .......................................................................................15

4    Government Code §24000 .....................................................................................25

5    Government Code §811.2 ......................................................................................25

6    Government Code §815.2(b) ...................................................................... 15, 17, 19

7    Government Code §820(b) .....................................................................................15

8    Government Code §820.2 ........................................................................... 15, 17, 19

9    Penal Code §196 ...................................................................................................16

10   Penal Code §834a .................................................................................................20

11   Penal Code §835a .................................................................................................16

12   Penal Code §836 ...................................................................................................20

13   **Other Authorities**

14   42 U.S.C. **§**1983 .......................................................... 4, 10, 11, 14, 15, 20, 26, 27

15   Cal. Const., art. XI [Local Government], §§1(b), 4(c) ...........................................25

16

17

18

19

20

21

22

23

24

25

26

27

28

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

NOTICE OF MOTION 1:06-CV-00684-AWI-LJO

COME NOW, Defendants COUNTY OF TULARE, BILL WITTMAN, CHAD RHYMAN and DAN BAKER (collectively "DEFENDANTS") and hereby submit the following Memorandum of Points and Authorities in Support of Motion for Summary Judgment and/or Summary Adjudication.

**I.**

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

In their Second Amended Complaint, Plaintiffs STANLEIGH GEAN MEGARGEE and KATIE TAYLOR (collectively "PLAINTIFFS") assert seven causes of action based on alleged events that occurred on June 6, 2005.  (UMF 1; Declaration of Cassandra E. Hooks ("Hooks Decl.") ¶ 10, Exhibit "I".)  On June 6, 2005, PLAINTIFFS committed a residential burglary, and attempted to flee utilizing a stolen truck.  (UMF 2.)  At the time, PLAINTIFFS were under the influence of marijuana and methamphetamine.  (UMF 3.)

RHYMAN and BAKER were notified that a burglary had occurred, and pursued PLAINTIFFS as they attempted to evade arrest.  (UMF 4.)  During the ensuing chase, PLAINTIFFS never indicated that they wanted to surrender to police officers.  (UMF 5.)  After passing through numerous residential streets, driving into oncoming traffic, and almost hitting a pedestrian, PLAINTIFFS eventually turned into a cul-de-sac on Prospect Avenue in Visalia, California.  (UMF 6.)  Once in the cul-de-sac, PLAINTIFFS turned into the driveway of one of the residences and made a u-turn.  (UMF 7.)

Officers RHYMAN and BAKER followed PLAINTIFFS into the cul-de-sac, and approached the driveway where PLAINTIFFS' vehicle was located.  (UMF 8.)  As RHYMAN neared the driveway, PLAINTIFFS lunged forward twice and impacted RHYMAN's vehicle in an attempt to go back to the beginning of the cul-de-sac.  (UMF 9, 10.)  Following this collision, RHYMAN exited his patrol vehicle, and stood next to it.  (UMF 11.)  PLAINTIFFS again moved their vehicle forward, striking RHYMAN's legs.  (UMF 12, 13, 14.)

With their handguns drawn, both BAKER and RHYMAN loudly ordered the PLAINTIFFS to stop the car.  (UMF 15.)  The driver of the vehicle, Plaintiff MEGARGEE, never put up his hands or indicated that he was surrendering.  (UMF 16.)  BAKER and RHYMAN both

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

1

NOTICE OF MOTION 1:06-CV-00684-AWI-LJO

1    feared for their lives, and began shooting at MEGARGEE in order to prevent him from again

2    harming the officers with his truck.  (UMF 17, 18, 19.)

3        Immediately following the shooting, prior to removing MEGARGEE from the truck, an

4    officer checked MEGARGEE's pulse.   (UMF 20.)   Seconds later, additional officers and

5    paramedics arrived at the scene and began treating the PLAINTIFFS.  (UMF 21.)

6        At the time of the above incident, WITTMAN was employed as the Sheriff of Tulare

7    County.  (UMF 22.)  However, he was not present at the scene during the alleged shooting of

8    PLAINTIFFS, nor was he present when medical care was rendered.  (UMF 23.)  WITTMAN has

9    also never been personally involved in the training or supervision of RHYMAN or BAKER.

10   (UMF 24.)

11       During the subject time period, the Tulare County Sheriff's Department General

12   Operations Manual established the polices and procedures applicable to the Tulare County

13   Sheriff's Department.  (UMF 25.)  The provisions contained in the General Operations Manual,

14   including those involving vehicular pursuits and use of force, are in conformity with both federal

15   and state law.  (UMF 26.)  BAKER and RHYMAN were both familiar with the provisions of this

16   manual prior to the shooting, and had conducted field training regarding the handling of police

17   pursuits (UMF 27-30.).  As a result of their training, RHYMAN and BAKER both understand

18   that deadly force is authorized to prevent death or serious bodily injury to themselves or another

19   person (UMF 31.)

20                                        II.

21                        **LEGAL AUTHORITY FOR MOTION**

22       Summary judgment is appropriate when it is demonstrated that there exists no genuine

23   issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

24   (Fed. R. Civ. Pro. 56(c); *Adickes v. S.H. Kress & Co*, 398 U.S. 144, 157 (1970); *Fortyune v.*

25   *American Multi-Cinema, Inc.*, 364 F.3d 1075, 1080 (9th Cir. 2004); *Jung v. FMC Corp.*, 755 F.2d

26   708, 710 (9th Cir. 1985).)  Where the non-moving party will bear the burden of proof at trial, a

27   //

28   //

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

                                     2
                        NOTICE OF MOTION 1:06-CV-00684-AWI-LJO

1   summary judgment motion may be made solely in reliance on the "pleadings, depositions,

2   answers to interrogatories, and admissions on file." (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323

3   (1986). Once a moving party has met this initial burden, "the non-moving party has the

4   subsequent burden of presenting *significant* probative evidence tending to support its claim that

5   material, triable issues of fact remain." (*Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989),

6   emphasis added.)

7        The moving parties burden can be established by either "*negating . . .* an essential element

8   of the opposing parties claim or defense" or by demonstrating that "the opposing party *does not*

9   *have enough evidence* of an essential element of its claim or defense to carry its ultimate burden

10  of persuasion at trial." (Schwarzer, et al., *California Practice Guide: Federal Civil Procedure*

11  *Before Trial* (The Rutter Group 2005) ¶ 14:128 (emphasis in original).) The opposing party

12  "must do more than simply show that there is some metaphysical doubt as to the material

13  facts…Where the record taken as a whole could not lead a rational trier of fact to find for the

14  nonmoving party, there is no 'genuine issue for trial.'" (*Matsushita Elec. Indus. Co. v. Zenith*

15  *Radio Corp.*, 475 U.S. 574, 587 (1986).)

16       Rule 56 also allows a court to grant summary adjudication on part of a claim or defense.

17  (*See* Fed. R. Civ. P. 56(a).) "The standards and procedures for granting partial summary

18  judgment, also known as summary adjudication, are the same as those for summary judgment.

19  Accordingly, the Court may grant summary adjudication upon a showing that there is no genuine

20  issue as to any material fact and the moving party is entitled to judgment as a matter of law."

21  (*Mora v. ChemTronics*, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).)

22       A moving party may submit a motion for summary judgment and/or adjudication asking a

23  court to decide as a matter of law that the actions of a police officer and his/her employer did not

24  violate the rights of a particular person. (*Bingham v. City of Manhattan Beach,* 341 F.3d 939, 945

25  (9th Cir. 2003) .)

26  //

27  //

28  //

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

3

NOTICE OF MOTION 1:06-CV-00684-AWI-LJO

# III.

## LEGAL ARGUMENT FOR PLAINTIFFS' FEDERAL LAW CLAIMS

**A.**      **PLAINTIFFS' FIRST CAUSE OF ACTION UNDER 42 U.S.C. §1983**

    1.      **PLAINTIFFS' First Cause of Action Should Be Dismissed As to RHYMAN and BAKER Since Their Use of Force Towards the PLAINTIFFS Was Reasonable And Legally Permitted.**

A citizen's claim that a law enforcement officer used excessive force to make an arrest is analyzed under the "objective reasonableness" test of the Fourth Amendment. (*Graham v. Connor*, 490 U.S. 386, 388 (1989).)  In short, the test is whether the officer's actions were 'objectively reasonable' in light of the facts and circumstances confronting the officer at the time of the arrest, irrespective of any underlying intent or subjective motivations. (*Id*. at 397.)  The relevant facts and circumstances include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." (*Id*. at 396.)  In this analysis, the plaintiff has a burden to establish that the use of force was unreasonable.  (*Edson v. City of Anaheim* (1998) 63 Cal.App.4th 1269, 1274.)

The United States Supreme Court has recognized that police officers are frequently required to make "split-second judgments" as to the amount of force that is necessary in a particular situation. (*Saucier v. Katz*, 533 U.S. 194, 205 (2001).)  Such decisions are often made in tense, uncertain, and rapidly escalating situations. (*Id*.) Therefore, "the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene rather than with the 20/20 vision of hindsight." (*Graham*, *Supra,* 490 U.S. at 396.)  The "question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." (*Rios v. City of Fresno*, 2006 U.S. Dist. LEXIS 85642, 28-29 (D. Cal. 2006).)

As to the use of deadly force, "[w]here the officer has probable cause to believe that a suspect poses a threat of serious physical harm, *either to the officer or to others*, it is not constitutionally unreasonable to prevent escape by using deadly force." (*Brosseau v. Haugen*, 543 U.S. 194, 197-98 (2004), emphasis added.)  "Therefore, in determining whether the

1  [PLAINTIFFS'] Fourth Amendment rights were violated, the Court must consider whether the

2  [d]efendant officers had probable cause to believe that the [PLAINTIFFS'] possessed a definite

3  threat of death or serious physical injury to themselves or others, and used reasonable force to

4  alleviate that threat." (*Herrera v. Las Vegas Metropolitan Police Department*, 298 F.Supp.2d,

5  1043, 1049-1050 (Dist. Nv. 2004).)

6      In the instant matter, the actions of RHYMAN and BAKER were objectively reasonable

7  considering the totality of the circumstances surrounding the PLAINTIFFS' arrest.    After

8  committing a residential burglary, PLAINTIFFS engaged RHYMAN and BAKER in a high speed

9  chase through residential streets.  (UMF 4, 6.)  During this high speed chase, PLAINTIFFS

10  indicated their willingness to put the safety of others at risk in order to evade police officers,

11  including driving into oncoming traffic and almost running down a pedestrian.   (UMF 6.)

12  PLAINTIFFS then ended up leading RHYMAN and BAKER into a residential cul-de-sac, and

13  used their stolen truck to ram RHYMAN's vehicle multiple times, and RHYMAN's person.

14  (UMF 6, 9, 13.)

15      In the case of a fleeing suspect, the Supreme Court has stated that

16          Where the officer has probable cause to believe that the suspect
           poses a threat of serious physical harm, either to the officers or
17          others, it is not constitutionally unreasonable to prevent escape
           using deadly force.  Thus, if the suspect threatens the officers with a
18          weapon…deadly force may be used if necessary to prevent escape,
           and if, where feasible, some warnings has been given.  (*Reese v.*
19          *Anderson*, 926 F.2d 494, 500 (1991) citing *Tennessee v. Garner*,
           471 U.S. 1, 11-12 (1985).)

20

21  Moreover, it is clear that "a car can be a deadly weapon." (*Smith v. Freland*, 954 F.2d 343, 347

22  (1992).)  *Smith* involved nearly identical facts to the instant case.  In *Smith*, the plaintiff ran a stop

23  sign, and was pursued by an officer.  Plaintiff then led the officer on a high speed chase, and

24  assaulted the officer by twice ramming his vehicle into the police cruiser.  (*Id*. at 344.)  Plaintiff

25  continued to evade arrest by pulling into a dead-end residential street, and then attempting to turn

26  his car in a residential lawn.  The officer placed his car as close to the plaintiff's vehicle as

27  possible, and then got out of his car.  As the officer approached, the plaintiff rammed into the

28  officer's car again and zoomed around the police car.  As plaintiff drove past the officer, the

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

5

NOTICE OF MOTION 1:06-CV-00684-AWI-LJO

1    officer shot at the plaintiff's vehicle and killed him.  (*Id.*)

2           The appellate court in *Freland* affirmed summary judgment in favor of the officer, despite

3    the fact that they determined the officer did not act in self-defense.  There were other officers

4    nearby that could have been harmed, as well as residents in nearby homes.  (*Id.* at 347.)  "In an

5    instant [the officer] had to decide whether to allow his suspect to escape.  He decided to stop him,

6    and no rational jury could say he acted unreasonably."  (*Id.*)

7           The facts of the instant case are arguably stronger than in *Freland*.  Here, PLAINTIFFS

8    committed a residential burglary, in addition to multiple assaults on a police officer.  (UMF 2, 9,

9    13.)  These assaults occurred both while RHYMAN was inside his police vehicle, and to his

10   person after he exited his vehicle.  (UMF 9, 13.)  Moreover, unlike in *Freland*, RHYMAN and

11   BAKER both justifiably feared for their own lives and those of each other.  (UMF 17-18.)  They

12   acted in self-defense when shooting their weapons at PLAINTIFFS, and gave PLAINTIFFS

13   warnings prior firing.  (UMF 15.)  There is no indication that any warnings were given by the

14   officer in *Freland*, nor did the court find that the officer acted in self-defense; however, the court

15   still found that the officer was justified in using deadly force.

16          As in *Freland*, the officers had already engaged in a high speed chase with PLAINTIFFS,

17   during the course of which they showed that they would do almost anything to avoid capture,

18   including putting pedestrians and the officers at risk.  (UMF 6.)  It is undisputed that as little as

19   fifteen seconds before the shooting occurred, PLAINTIFFS' vehicle was still moving while on

20   the residential driveway.  (UMF 12.)  Like the officer in *Freland*, both RHYMAN and BAKER

21   were already outside their vehicles, mere feet away from the PLAINTIFFS' truck.  (UMF 11.)

22   "Even unarmed, [PLAINTIFFS] were not harmless; a car can be a deadly weapon."  (*Freland*,

23   *supra*, 954 F.2d 343, 347.)  Moreover, in the instant case, RHYMAN and BAKER reasonably

24   believed that the PLAINTIFFS' vehicle was heading directly toward them, making the use of

25   deadly force necessary to protect themselves, and each other.  (UMF 14-18.)

26          As in the instant case, in *Reese*, *supra*, the plaintiffs had committed a robbery and led a

27   police officer on a high speed chase.  (926 F.2d at 495-96; UMF 2, 4.)  After the car came to a

28   stop, the officer exited his vehicle, drew his gun, and repeatedly ordered the plaintiffs to raise

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

6

NOTICE OF MOTION 1:06-CV-00684-AWI-LJO

1   their hands.  When the driver of the plaintiffs' vehicle failed to comply with the officer's requests,

2   and did not raise his hands, the officer feared for his life and the life of the other officer who had

3   joined the pursuit.  Thus, the officer shot the driver of the vehicle in the head and killed him.  (*Id.*

4   at 496.)  The court concluded that the officer's shooting was reasonable and not excessive based

5   on the high speed chase, robbery, and the plaintiffs' defiance of the officer's orders.  (*Id.* at 500-

6   01.)  In determining that summary judgment was appropriate, the court gave no weight to the fact

7   that plaintiffs were actually unarmed and could not have been retrieving a weapon.  (*Id.* at 501.)

8        In the instant case, PLAINTIFFS also led officers on a high speed chase after committing

9   a burglary.  (UMF 2, 4.)  Once PLAINTIFFS were in the cul-de-sac, RHYMAN and BAKER

10   repeatedly ordered them to raise their hands; however, it is undisputed that the driver of the

11   vehicle, MEGARGEE, failed to do so.  (UMF 15-16.)  At this point, PLAINTIFFS could have

12   been retrieving a weapon, or planning to use the truck that they were in as a weapon.  "Under

13   these circumstances, a reasonable officer could well fear for his safety and that of others nearby."

14   (*Reese*, *supra*, 926 F.3d at 501.)  RHYMAN and BAKER's fears were even more well-founded

15   considering that PLAINTIFFS had already almost hit a pedestrian, rammed RHYMAN's vehicle

16   twice, and then used their car in order to injure RHYMAN's person.  (UMF 6, 9, 13.)  When

17   PLAINTIFFS did not comply with the officers' orders, they reasonably feared that PLAINTIFFS

18   would attempt to flee once again, and in the process, injure BAKER and RHYMAN.  (UMF 16-

19   18.)  Thus, as in *Reese* and *Freland*, RHYMAN and BAKER's use of force was not excessive

20   under the Fourth Amendment.

21        2.     **Both BAKER and RHYMAN Are Entitled To Qualified Immunity Since They Reasonably Believed That Their Actions Were Constitutionally Permitted.**

22

23        "Qualified immunity protects 'all but the plainly incompetent or those who knowingly

24   violate the law.'"  (*Lee v. Gregory*, 363 F.3d 931, 934 (9th Cir. 2004).)  The purpose of qualified

25   immunity is to permit police officers to undertake their responsibilities without fear that they will

26   be held liable in damages for actions that appear reasonable at the time.  (*Harlow v. Fitzgerald*,

27   457 U.S. 800, 819 (1982).)

28        The entitlement is an immunity from suit rather than a mere defense to liability.  (*Saucier*

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

7

NOTICE OF MOTION 1:06-CV-00684-AWI-LJO

1    *v. Katz*, 533 U.S. 194, 200-01 (2001); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).)  In light of

2    this principle, the United States Supreme Court has emphasized the importance of resolving

3    immunity questions "at the earliest possible stage in litigation." (*Hunter v. Bryant*, 502 U.S. 224,

4    227 (1991).)  Accordingly, a defendant's right to qualified immunity should be decided by the

5    court "long before trial" and is properly considered at the summary judgment stage. (*Id* at 228.)

6           In order to determine whether qualified immunity applies, initially it must be determined

7    whether plaintiff has established a constitutional violation. (*Galvin v. Hay*, 374 F.3d 739, 745

8    (9th Cir. 2004).)  If the answer is yes, then a secondary question is asked to determine whether the

9    action by defendant "violated 'clearly established statutory or constitutional rights of which a

10   reasonable person would have known.'" (*Id*. at 745.)

11          "The determination whether a constitutional right is clearly established is a question of

12   law." (*Lawrence v. United States*, 340 F.3d 952, 956 (9th Cir. 2003).)  Notwithstanding the

13   absence of a constitutional violation in this case, the United States Supreme Court has held that,

> The concern of the [qualified immunity] inquiry is to acknowledge
> that reasonable mistakes can be made as to the legal constraints on
> particular police conduct. It is sometimes difficult for an officer to
> determine how the relevant legal doctrine, here excessive force, will
> apply to the factual situation the officer confronts.  An officer might
> correctly perceive all of the relevant facts but have a mistaken
> understanding as to whether a particular amount of force is legal in
> those circumstances. If the officer's mistake as to what the law
> requires is reasonable, however, the officer is entitled to the
> immunity defense. (*Saucier v. Katz*, 533 U.S. 194, 209 (2001).)

20          Thus, "qualified immunity shields an officer from suit when she makes the decision that,

21   even if constitutionally defective, reasonably misapprehends the law governing the circumstances

22   she confronted." (*Brosseau, Supra*, 543 U.S. at 198.)  When a court is determining whether a

23   law enforcement officer's use of force entitled the officer to qualified immunity, the court must

24   determine at a fairly specific level whether prior cases should have indicated to that officer that

25   the use of force was constitutionally prohibited. (*Id*. at 199.)  If there is no prior case dealing with

26   the same factual situation, then only if the constitutional violation would have been manifestly

27   obvious to the officer should a person be denied qualified immunity. (*Id*.)

28          In examining whether the force used allows the officer to claim qualified immunity, the

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

8

NOTICE OF MOTION 1:06-CV-00684-AWI-LJO

1  knowledge possessed by one police officer can be imputed to another so that the knowledge
2  possessed by the defendant officer is the collective total of all the knowledge possessed by all
3  officers involved in the events giving rise to the use of force. (*Burrell v. McIlroy*, 423 F.3d 1121,
4  1124 (9th Cir. 2005) .)

5          In this case, it has been clearly established above in Section III (a), that under the totality
6  of the circumstances, it was objectively reasonable for Officers RHYMAN and BAKER to
7  conclude that it was necessary to use deadly force in order to prevent the PLAINTIFFS from
8  using their stolen vehicle to injure the officers.  Thus, there was no violation of the PLAINTIFFS'
9  constitutional rights.

10         However, even if the Court determines that there may have been a constitutional violation,
11  RHYMAN and BAKER are still entitled to qualified immunity.  "The broad discretion that must
12  be afforded to police officers who face a tense situation, must be extended to *mistakes of fact*
13  concerning the existence of probable cause as well as to mistakes as to what the law requires
14  under particular circumstances." (*Jeffers v. Gomez*, 267 F.3d 895, 909 (9th Cir. 2001), emphasis
15  added)  Even if RHYMAN and BAKER were mistaken as to what the law required under these
16  circumstances, or as to the facts surrounding their determination of probable cause, they were
17  objectively justified in their use of deadly force to prevent PLAINTIFFS from using their stolen
18  truck as a weapon.

19         RHYMAN and BAKER both feared for their lives, and the lives of each other, when they
20  made the determination to shoot at the PLAINTIFFS vehicle.  (UMF 17-18.)  This fear was
21  reasonable based on the high speed chase PLAINTIFFS had engaged the officers in, the
22  recklessness they had shown by driving onto incoming traffic, and almost running down a
23  pedestrian.  (UMF 6.)  Additionally, both RHYMAN and BAKER observed the PLAINTIFFS'
24  truck move toward the officers in a threatening manner and, even if they were mistaken as to
25  these facts, reasonably believed that they had probable cause to use deadly force to protect
26  themselves. (UMF 13-16.)

27         RHYMAN's vehicle was impacted multiple times and his person was assaulted by the
28  PLAINTIFFS' vehicle. (UMF 9, 13, 14.)  Based on what RHYMAN and BAKER knew and

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

9

NOTICE OF MOTION 1:06-CV-00684-AWI-LJO

1   observed, it was reasonable for them to believe that PLAINTIFFS were using their vehicle as a

2   weapon, and would do anything to escape, including harming the officers.  This was further

3   bolstered by the unwillingness of the driver of the vehicle, MEGARGEE, to raise his hands and

4   surrender, despite the fact that the officers' guns were drawn and they were shouting commands.

5   (UMF 15-16.)

6       It is undisputed that the PLAINTIFFS' vehicle began moving again after they were

7   already on the residential driveway in close proximity to BAKER and RHYMAN.  (UMF 12.)

8   Based on *Reese* and *Freland*, *supra*, it was reasonable for both RHYMAN and BAKER to feel

9   that their actions were constitutionally permissible and in accordance with the law, even if this

10  was a misapprehension.  When faced with the fact that PLAINTIFFS continued to move their

11  vehicle, even in the face of commands to stop and drawn weapons, it is reasonable that the

12  officers felt that deadly force was necessary.  Therefore, even if the PLAINTIFFS could prove

13  that the force used to arrest PLAINTIFFS was excessive, it was based on a mistake in the facts

14  and the law, and RHYMAN and BAKER are still entitled to qualified immunity.

15      3.      **PLAINTIFFS' First Cause of Action Must Be Dismissed As to WITTMAN,**
                **Since They Cannot Establish Any Causal Connection Between WITTMAN's**
16              **Actions and The Alleged Constitutional Deprivation.**

17      PLAINTIFFS' Complaint bases their §1983 claim against WITTMAN on the allegations

18  that he (1) failed to properly supervise and train RHYMAN and BAKER in the proper use of

19  force, and (2) that he knew that there were customs, policies, and practice in the Tulare County

20  Sheriff's Department that were causing the unlawful and unreasonable use of force by the

21  officers, and did not take any appropriate action.  (UMF 1; Hooks Declaration, Exhibit "I.")

22  PLAINTIFFS are unable to prove any of the above allegations, and thus, the First Cause of

23  Action against WITTMAN cannot be sustained.

24      In the instant matter, PLAINTIFFS have not alleged that WITTMAN was personally

25  involved causing their injuries.  Moreover, the evidence indisputably shows that WITTMAN was

26  not present during the pursuit, shooting, or subsequent medical care of the PLAINTIFFS.  (UMF

27  23.)  As WITTMAN was not present during the alleged constitutional violation, the only way that

28  PLAINTIFFS can establish supervisory liability under §1983 is to show that there is a sufficient

10

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

NOTICE OF MOTION 1:06-CV-00684-AWI-LJO

1   causal connection between the supervisor's wrongful conduct and the constitutional violation.

2   (*Jeffers*, *supra*, 267 F.3d at 915.)  This is due to the fact that there is no respondeat superior

3   liability under §1983.  (*Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2001).)

4          Supervisors can be held liable if they play an affirmative part in the alleged deprivation of

5   constitutional rights by setting in motion a series of acts by others which the supervisor knew or

6   reasonably should have known would cause others to inflict the constitutional injury.  (*Graves v.*

7   *City of Coeur D'Alene*, 339 F.3d 828, 848 (9th Cir. 2003).)  "Supervisory liability is imposed

8   against a supervisory official in his individual capacity for his own culpable action or inaction in

9   the training, supervision, or control of his subordinates, for his acquiescence in the constitutional

10  deprivations of which the complaint is made, or for conduct that showed a reckless or callous

11  indifference to the rights of others."  (*Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir.

12  2005).)

13         In the instant matter, there is no evidence that WITTMAN engaged in any wrongful

14  conduct, much less that any wrongful conduct led to the constitutional deprivation claimed by

15  PLAINTIFFS.   Initially, as explained above in Section III (A), the officers did not commit any

16  constitutional violation against the PLAINTIFFS.    Thus, WITTMAN could not be held

17  accountable either since there is no allegation, nor is there any proof, to support the notion that

18  WITTMAN individually committed a constitutional violation that is separate and apart from the

19  actions of RHYMAN and BAKER on the date of the subject incident.   In other words, if

20  RHYMAN and BAKER did not use unreasonable force when they shot the PLAINTIFFS, then

21  WITTMAN could not be held liable for failure to train or supervise them in the use of force.

22         Since WITTMAN was not present during the pursuit or shooting of PLAINTIFFS, he can

23  *only* be held liable if he affirmatively contributed to the constitutional violation.  PLAINTIFFS

24  have alleged that WITTMAN did not properly supervise or train RHYMAN or BAKER in the use

25  of force.  However, WITTMAN did not direct BAKER and RHYMAN to perform any acts, or

26  refrain from performing any acts, during the subject incident.  (UMF 23.)  Nor has WITTMAN

27  ever been personally involved in the training or supervision of RHYMAN or BAKER.   (UMF

28  24.)  As such, it is undisputed that WITTMAN did not supervise, train, or have any personal

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

11

NOTICE OF MOTION 1:06-CV-00684-AWI-LJO

1  involvement in the decisions that RHYMAN and BAKER made on the date of the subject

2  incident.  Thus, PLAINTIFFS cannot establish that WITTMAN committed any wrongdoing, nor

3  that there is any causal connection between any of WITTMAN's actions and the alleged

4  constitutional violation.

5  **B.**      **PLAINTIFFS' SECOND CAUSE OF ACTION FOR ENTITY/OFFICIAL LIABILITY**

6          1.      **The Second Cause of Action for Entity/Official Liability Is Redundant, As a**
7                  **Suit Against WITTMAN in His Official Capacity is Actually a Suit Against**
                   **the COUNTY OF TULARE.**

8          In PLAINTIFFS' Second Cause of Action, they have alleged entity liability/official

9  liability against WITTMAN and the COUNTY OF TULARE.   However, this allegation is

10  redundant, as "suits against an official in her or his official capacity are treated as suits against the

11  entity on whose behalf that official acts." (*Faulkner v. County of Kern*, 2006 U.S. Dist. LEXIS

12  44151 (E.D. CA).)  Moreover, suits against officers in their "official capacity" are simply another

13  way of pleading an action against the entity of that officer.  (*Hafer v. Melo*, 502 U.S. 21, 25

14  (1991).)   As such, PLAINTIFFS' Second Cause of Action for entity/official liability against

15  WITTMAN and COUNTY OF TULARE is redundant.  This suit against WITTMAN is really an

16  action against the COUNTY OF TULARE, and thus, the Second Cause of Action against

17  WITTMAN should be dismissed.

18          2.      **PLAINTIFFS' Second Cause of Action Against COUNTY OF TULARE**
                   **Fails, As There is No Evidence that It Had Any Unlawful Policy or Custom.**
19

20          "Liability may attach to a municipality only where the municipality itself causes the

21  constitutional violation through execution of a government's policy or custom, whether made by

22  its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."

23  (*Menotti*, *supra*, 409 F.3d 1113, 1147 (9th Cir. 2005).)  "A municipal 'policy' exists when a

24  deliberate choice to follow a course of action is made from among various alternatives by the

25  official or officials responsible for establishing final policy with respect to the subject matter in

26  question." (*Id*.)

27          "There are three ways to show a policy or custom of a municipality: (1) by showing 'a

28  longstanding practice or custom which constitutes the 'standard operating procedure' of the local

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

12

NOTICE OF MOTION 1:06-CV-00684-AWI-LJO

1   government entity;' (2) 'by showing that the decision-making official was, as a matter of state

2   law, a final policymaking authority whose edicts or acts may fairly be said to represent official

3   policy in the area of decision;' or (3) 'by showing that an official with final policymaking

4   authority either delegated that authority to, or ratified the decision of, a subordinate.'" (*Id.*)

5       When a plaintiff is presenting his/her evidence, "[m]ere proof of a single incident of errant

6   behavior *is a clearly insufficient* basis for imposing liability" onto a municipality. (*Merritt v.*

7   *County of Los Angeles* (9th Cir. 1989.) 875 F.2d 765, 770, emphasis added.) A limited exception

8   to this prohibition "makes clear that although municipal liability may be imposed for a single

9   decision or action by a municipal policymaker, municipal liability attaches *only when* the

10  decisionmaker possesses 'final authority' to establish municipal policy.'" (*Tanner v. Heise*, 879

11  F.2d 572, 582 (9th Cir. 1989), emphasis added.)

12      Initially, as outlined above in Sections III (A) and (B), there was no constitutional

13  violation by either RHYMAN, BAKER, or WITTMAN, which means that there was also no

14  violation by the COUNTY OF TULARE. "If a person has suffered no constitutional injury at the

15  hands of the individual police officer, the fact that the departmental regulations might have

16  authorized the use of constitutionally excessive force is quite beside the point." (*Carillo v. City of*

17  *Fresno*, 2007 U.S. Dist. LEXIS 86314, *33 (E.D. Ca. 2007) quoting *City of Los Angeles v.*

18  *Heller*, 475 U.S. 796, 799 (1986).)

19      Moreover, PLAINTIFFS also have no evidence to show that there was a policy or custom

20  which caused any constitutional violation. "Congress did not intend municipalities to be held

21  liable unless action pursuant to official municipal policy of some nature caused a constitutional

22  tort…a municipality cannot be held liable solely because it employs a tortfeasor…" (*Carillo*,

23  *supra*, 2007 U.S. Dist. LEXIS 86314 at *32.)

24      The Tulare County Sheriff's Department General Operations Manual establishes the

25  general policies and procedures applicable to the Tulare County Sheriff's Department at the time

26  of the subject incident. (UMF 25.) Since PLAINTIFFS claim constitutional violations based on

27  the officers' use of force following a vehicular pursuit, the applicable sections of the General

28  Operations Manual are the policy on the use of force, and on vehicular pursuits. The entirety of

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

13

1   the General Operations Manual, particularly the portions on use of force and vehicular pursuits,

2   are in conformity with both state and federal law (UMF 26.)  As such, there is no unconstitutional

3   policy followed by the COUNTY OF TULARE, and no unconstitutional policy caused

4   PLAINTIFFS' alleged damages.

5       Both RHYMAN and BAKER were aware of these policies and did not violate any policy

6   instituted by the COUNTY OF TULARE General Operations Manual.  (UMF 27.)  The policy for

7   use of deadly force states that it is authorized "when it reasonably appears necessary for the

8   defense of another" or to "prevent the escape of a serious felon when the deputy has probable

9   cause to believe that the suspect poses a significant threat of death or serious physical injury to

10  the deputy or others."  (Hooks Declaration, Exhibit "H.")  This policy was clearly understood by

11  both RHYMAN and BAKER.  (UMF 30-31.)  They also followed the policy, as they did not

12  engage in deadly force until they reasonably felt that their lives were threatened.  (UMF 17-18.)

13  Thus, PLAINTIFFS cannot show that any constitutional violation was caused by the polices and

14  procedures of the COUNTY OF TULARE.

15      PLAINTIFFS additionally allege that their constitutional violation stemmed from

16  COUNTY OF TULARE's failure to properly train RHYMAN and BAKER; however, there is no

17  evidence that this is true.  Regardless, "the inadequacy of police training can form the basis for

18  municipal liability *only* where the failure to train amounts to deliberate indifference to the rights

19  of the persons with whom the police came into contact."  (*David v. City of Fremont*, 2006 U.S.

20  Dist. LEXIS 57211, *53 (N.D. Ca. 2006), emphasis added.)  As such, it is not sufficient to simply

21  prove that PLAINTIFFS' injuries would have been avoided if the officer had received better or

22  more training.  (*Id.* at *53-54.)  Here, both RHYMAN and BAKER received training prior to

23  becoming patrol officers, and are familiar with the policies and procedures of the COUNTY OF

24  TULARE.  (UMF 27-30.)  There is no evidence to show that COUNTY OF TULARE exhibited

25  the type of "deliberate indifference" in training RHYMAN and BAKER that is necessary to

26  support a §1983 claim.

27      Moreover, there is no evidence that the decision of any official caused the PLAINTIFFS'

28  alleged constitutional violation.  PLAINTIFFS have made allegations against WITTMAN;

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

14

NOTICE OF MOTION 1:06-CV-00684-AWI-LJO

1    however, there is no evidence that WITTMAN had any participation in the subject incident, nor

2    that he made any decisions related to the subject incident (UMF 23-24.)  Finally, there is no

3    evidence that WITTMAN, or any other policy-making official, delegated his authority to any

4    subordinate, nor that any such delegation caused PLAINTIFFS' injuries.  As such, COUNTY OF

5    TULARE cannot be held liable for under §1983 as a matter of law, and summary adjudication is

6    appropriate.

7                                            **IV.**

8              **LEGAL ARGUMENT FOR PLAINTIFFS' STATE LAW CLAIMS**

9    A.      UNDER CALIFORNIA STATE LAW, DEFENDANTS ARE IMMUNE AGAINST
             PLAINTIFFS' STATE LAW CAUSES OF ACTION.
10

11            "Except as otherwise provided by statute, a public employee is not liable for an injury

12    resulting from his act or omission where the act or omission was a result of the exercise of the

13    discretion vested in him, whether or not such discretion be abuse."  (Gov. Code §820.2.)

14    Additionally, "[t]he liability of a public employee . . . is subject to any defenses that would be

15    available to the public employee if he were a private person."  (Gov. Code §820(b).)

16            The public entity that employs the public employee is immune from suit if the public

17    employee is immune.  (Gov. Code §815.2(b).)  Moreover, "[t]he liability of a public entity . . . is

18    subject to any immunity of the public entity provided by statute . . . and is subject to any defenses

19    that would be available to the public entity if it were a private person."  (Gov. Code §815(b).)

20            One defense that a private person could assert by means of a dispositive motion is that

21    there is no causation between the injury alleged and any action or inaction by that person.  (*Allen*

22    *v. Sully-Miller Contracting Co.* (2002) 28 Cal.4th 222, 228-229; *Burgess v. Superior Court*

23    (1992) 2 Cal.4th 1064, 1077.)

24            The immunity given to public employees by Government Code Section 820.2 (hereinafter

25    "Section 820.2") provides protection for policy decisions and the planning involved in that

26    decision making process.  (*Johnson v. State of California* (1968) 69 Cal.2d 782, 793-794; 52

27    Cal.Jur.3d *Public Officers and Employees* (West Group 2001) §§254, 288; Timothy T. Coates, et

28    al., *Government Tort Liability* (CEB 2006) §§10.10, 10.12, 10.31.)  "In enacting Section 820.2,

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

15

NOTICE OF MOTION 1:06-CV-00684-AWI-LJO

1    the legislature clearly *has* provided for immunity for injuries caused by acts or omissions that are

2    the result of a public employees exercise of discretion, as the term is used in Section 820.2.

3    (*Barner v. Leeds* (2000) 24 Cal.4th 676, 684 (Emphasis Original.)

4        "[A] discretionary act is one which requires the exercise of judgment or choice.

5    Discretion has also been defined as meaning equitable decision of what is just and proper under

6    the circumstances." (*C.N. v. Wolf*,  410 F.Supp.2d 894 (C.D.Cal. 2005); 2005 U.S. Dist. LEXIS

7    40009, *19.)  If the decision made by the public employee is immune under Section 820.2, then

8    the public entity employing that employee is immune under Government Code Section 815.2

9    (hereinafter "815.2").  (*Guillor v. County of Orange*, 731 F.2d 1379, 1382 (9th Cir. 1984); *Tailor*

10   *v. Buff* , 172 Cal.App.3d 384, 388-389 (1985).)

11       The immunities of Sections  815.2 and 820.2 apply to police officers and the police

12   departments for which they work.  (*Scruggs v. Haynes* (1967) 252 Cal.App.2d 256, 263-268.)

13   Furthermore, these immunities apply to both statutory and common law causes of action.  (5

14   Witkin, *Summary of California Law: Torts* (10th Ed. Witkin Legal Institute 2005) §353.)

15       The immunities of Sections 820.2 and 815.2 extend to when a police officer is statutorily

16   authorized to use force when either making an arrest or attempting to do so.  (Pen. Code §835a.)

17   This authorized use of force includes when the use of deadly force by a police officer is necessary

18   either for his own safety or the safety of others.  (Pen. Code §196.)  Furthermore, if the officer is

19   entitled to immunity pursuant to Section 820.2, then the police department employing that officer

20   is also entitled to immunity pursuant to Section 815.2.  (*Martinez v. County of Los Angeles* (1996)

21   47 Cal.App.4th 334, 349-350.)

22       For example, in *Foster v. City of Fresno*, 392 F.Supp.2d 1140, 1159 (E.D. Cal. 2005),

23   defendant police officer was found to be immune pursuant to Section 820.2 for the use of lethal

24   force since resulting homicide was justified pursuant to Penal Code Section 196.  In examining

25   the allegations by plaintiffs and the factual events leading up to the shooting, the Court utilized

26   the standard under federal law to determine whether or not the decedent's Fourth Amendment

27   rights were violated.  (*Id.* at 1149-1158.)  Through this analysis, the Court concluded that the

28   decision of the defendant officer to use legal force was justified given the threatening manner in

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

16

NOTICE OF MOTION 1:06-CV-00684-AWI-LJO

1  which the decedent interacted with the defendant officer. (*Id.*)

2       From the Court's factual finding that the decedent had engaged in threatening behavior

3  towards the defendant officer, the Court made the legal determination that the defendant officer

4  was entitled to use of lethal force. (*Id.* at 1159.) Lastly, since the defendant officer was entitled

5  to immunity, then the public entity defendant that employed the defendant officer was likewise

6  entitled to immunity pursuant to Section 815.2. (*Id.*)

7       As detailed above in section III (A), like *Foster*, the actions of RHYMAN and BAKER

8  were justified, and their use of force was reasonable based on their reasonable perception of the

9  danger. This entitles both RHYMAN and BAKER to immunity under §§820.2 and 815.2. As

10 such, neither COUNTY OF TULARE nor WITTMAN may be held liable for PLAINTIFFS' state

11 law causes of action. (See Gov. Code §815.2(b).)

12 **B.    PLAINTIFFS' FOURTH CAUSE OF ACTION FOR NEGLIGENCE AGAINST RHYMAN AND**
13 **BAKER**

14       The essential elements of a negligence claim are well established: (1) a legal duty on the

15 part of the defendant to use due care; (2) breach of such duty; (3) that defendant's breach was the

16 proximate or legal cause of the resulting injury; and (4) that plaintiff was damaged. (*Ladd v.*

17 *County of San Mateo*, 12 Cal.4th 913, 917 (1996); *Mendoza v. City of Los Angeles*, 66 Ca.App.4[th]

18 1333, 1339 (1998); CACI No. 400.) In the context of police officers, there is a "duty to use

19 reasonable care in employing deadly force." (*Munoz v. City of Union City*, 120 Cal.App.4[th]

20 1077,1101.) The determination of whether a duty was breached by an officer in a negligence

21 action, through the failure to use "reasonable care," is evaluated under the same standard used

22 under the Fourth Amendment. (See *Id.* at 1102-3; *David v. City of Fremont*, 2006 U.S. Dist.

23 Lexis 57211, *63 (N.D. Cal.).)

24       As analyzed fully above in Section III (A), hereby incorporated by reference, neither

25 RHYMAN nor BAKER can be held liable for any violation of PLAINTIFFS' Fourth Amendment

26 rights. Since the same standard is employed for PLAINTIFFS' state law negligence claims

27 against the officers, they too are subject to summary adjudication in favor of RHYMAN and

28 BAKER.

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

17

NOTICE OF MOTION 1:06-CV-00684-AWI-LJO

C.      **PLAINTIFFS' THIRD AND FOURTH CAUSES OF ACTION FOR NEGLIGENT SUPERVISION AGAINST WITTMAN AND COUNTY OF TULARE**

As noted above, the essential elements of a negligence claim are (1) a legal duty on the part of the defendant to use due care; (2) breach of such duty; (3) that defendant's breach was the proximate or legal cause of the resulting injury; and (4) that plaintiff was damaged. (*Ladd v. County of San Mateo* 12 Cal.4th 913, 917 (1996); CACI No. 400.)  However, under California's Tort Claims Act, a public entity cannot be held directly liable on a theory of common law negligence.  Instead, any liability must be specifically provided by statute.  (Cal. Gov. Code §815.)

In pertinent part, §815 of the California Government Code explicitly states that unless otherwise provided by statute, **"A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."** (Cal. Gov. Code §815(a) [emphasis added].)  In *Munoz v. City of Union City*, 120 Cal.App.4th 1077 (2004), the California Court of Appeal discussed the effect of Section 815 in the context of the plaintiffs' negligence claim against a city and explained that "direct tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care…." (*Id.* at 1112.)

Under facts analogous to the instant case, the court in *Munoz* addressed claims made by the plaintiffs against the City of Union City, CA that were based upon allegations of "negligence in the selection, training, retention, supervision and discipline of police officers." (*Id.*)  Relying upon Government Code section 815, the court noted that the plaintiffs had failed to identify any statutory basis for direct liability against the city or any statute creating a special duty of care applicable to the facts of their case. (*Munoz*, *Supra*, 120 Cal.App.4th at 1113.)  Accordingly, the court reversed the underlying jury verdict as to plaintiffs claims against the city for direct negligence. (*Id.*)

Thus, as outlined above, the California Court of Appeal in *Munoz*, *supra*, found no statutory basis for a public entity's liability premised on an officers use of excessive force. Similarly, other courts have also found that it is not possible to hold a municipality directly liable

18

1  for negligent hiring, supervision or training of its police officers.  (See *Sanders v. City of Fresno*,

2  2006 WL 1883394, *9 (E.D. Cal. 2006); *Sorgen v. City and County of San Francisco*, 2006 WL

3  2583683, *10 (N.D. Cal. 2006).)  There is no indication in PLAINTIFFS' Third or Fourth Cause

4  of Action that they are based on vicarious liability.  Instead, both causes of action are based on

5  actions allegedly done by either COUNTY OF TULARE or WITTMAN.   Specifically, they

6  allege that COUNTY OF TULARE is directly liable for allegedly allowing the cover-up of

7  excessive force, allowing the use of excessive force, and failing to provide for the criteria for the

8  use of excessive force.  (See Hooks Declaration, Exhibit "I" ¶72(a)-(d).)  After being granted

9  leave to amend, PLAINTIFFS have still alleged actions for directly liability against COUNTY

10  OF TULARE and WITTMAN for negligence.   This is improper under §815, and thus

11  PLAINTIFFS' Third and Fourth Causes of Action should be dismissed.

12  **D.      PLAINTIFFS' FIFTH CAUSE OF ACTION FOR VICARIOUS LIABILITY AGAINST WITTMAN AND COUNTY OF TULARE**

13

14       PLAINTIFFS have alleged an action for vicarious liability against WITTMAN and

15  COUNTY OF TULARE.   Although not specifically stated in PLAINTIFFS' Complaint,

16  DEFENDANTS assume that this cause of action is based on California Government Code §815.2.

17  This Section states that "A public entity is liable for injury proximately caused by an act or

18  omission of an employee of the public entity within the scope of his employment if the act or

19  omission would, apart from this section, have given rise to a cause of action against that

20  employee or his personal representative."  (See Cal. Gov. Code §815.2(a).)  However, the public

21  entity is also immune if the employee is immune.  (*Id.* at §815.2(b).)

22       As detailed above in Sections III (A), IV (A) and IV (B), since RHYMAN and BAKER

23  used reasonable force under the Fourth Amendment and were not negligent, they are entitled to

24  immunity under California Government Code §820.2.   Since RHYMAN and BAKER are

25  immune, COUNTY OF TULARE and WITTMAN are also immune pursuant to Government

26  Code §815.2.   Thus, PLAINTIFFS' Fifth Cause of Action for vicarious liability must be

27  dismissed.

28  //

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

19

NOTICE OF MOTION 1:06-CV-00684-AWI-LJO

E.   **PLAINTIFFS' SIXTH CAUSE OF ACTION FOR BATTERY AGAINST RHYMAN AND BAKER**

California battery claims are the counterpart to PLAINTIFFS' federal law claims for excessive force brought pursuant to §1983.  (See *Phillips v. City of Fairfield*, 406 F.Supp.2d 1101, 1118 (E.D. Cal. 2005).)  Under California state law, a police officer is permitted to use reasonable force when making an arrest.  (Pen. Code §§835-835a.)  This authority to use reasonable force exists regardless of whether the arrest is being made pursuant to a warrant.  (Pen. Code §836.)  Once the arrest is being made by the police officer, then the arrested person is under a "duty . . . to refrain from using force or any weapon to resist such arrest."  (Pen. Code §834a.)

If an arrest was conducted with reasonable force, then the arrested person cannot maintain a cause of action for the tort of battery based upon California state law.  (*Fobbs v. City of Los Angeles* (1957) 154 Cal.App.2d 464, 467-469; CACI 1305.)  "[A] prima facie element of a battery claim against a police officer is the use of unreasonable force."  (*Susag v. City of Lake Forest* (2002) 94 Cal.App.4th 1401, 1415.)  The "[p]laintiff *must* prove unreasonable force as an element of the tort."  (*Edson*, *supra*, 63 Cal.App.4th at 1272, emphasis added).)  "The normal right of a person to resist what appears to be a battery does not exit where a lawful arrest is being attempted."  (5 Witkin, *Summary of California Law:  Torts* (Witkin 2005) § 424.)

Under both federal and California state law, the determination of whether the actions of the police officer were reasonable is made based upon the facts as they were known at the time that the force was used.  (*Johnson v. Lewis* (2004) 120 Cal.App.4th 443, 452–456; *Ne Casek v. City of Los Angeles* (1965) 233 Cal.App.2d 131, 138–140.)  These actions are not to be judged as they exist after the force was used but instead based upon the facts as known to the officer at the time.  (*Graham, Supra* ,490 U.S. at 396.)  In this analysis, there is a constant recognition that officers must often make split second decisions regarding the amount of force that will be used.  (*Burrell v. McIlroy* (9th Cir. 2005) 423 F.3d 1121, 1124.)

The evidentiary burden on the plaintiff for California state law cause of action is the same as when a cause of action is asserted pursuant to 42 U.S.C.  §1983 so that the plaintiff must establish that the use of force by the police officer was unreasonable.  (*Edson*, *supra*,

63 Cal.App.4th at 1274; *Susag*, *supra*, 94 Cal.App.4th at 1412–1413.)  PLAINTIFFS' state law claims for battery are thus evaluated using the same analysis applicable to their Fourth Amendment claim of excessive force.  The arguments set forth above in Sections III (A), and IV (A) are equally applicable to PLAINTIFFS' claim for battery, and are hereby incorporated by reference.  The undisputed material facts show that the amount of force used by RHYMAN and BAKER was reasonable under the totality of the circumstances.  As such, there is insufficient evidence to establish the elements of PLAINTIFFS' battery cause of action and DEFENDANTS are entitled to summary adjudication on this issue.

## F.    PLAINTIFFS' SEVENTH CAUSE OF ACTION FOR FAILURE TO PROVIDE MEDICAL CARE AGAINST ALL DEFENDANTS

### 1.    Since RHYMAN and BAKER Did Not Act In a Grossly Negligent Manner, They Are Not Liable For Civil Damages Pursuant to California Health And Safety Code §1799.106.

California Health and Safety Code §1799.106 states that "a firefighter, police officer or other law enforcement officer….who renders medical services at the scene of an emergency shall *only* be liable in civil damages for acts or omission performed in a grossly negligent manner or acts or omissions no performed in good faith." (emphasis added)  In this context, "the term gross negligence means the failure to provide even scant care or an extreme departure from the ordinary standard of conduct." (*Wright v. City of Los Angeles*, 219 Cal.App.3d 318, 343-44 (1990).)

> These statutes reflect the sound legislative judgment that, under a gross negligence standard, meritless suits will typically be disposed of by summary judgment; that when a case goes to trial the jury, instructed on this standard, will be less likely to confuse injury with fault; and that verdicts reflecting such confusion will be more readily reversed, whether by the trial or appellate court, than under an ordinary negligence standard. (*Kahn v. East Side Union High School Dist.*, 31 Cal. 4th 990, 1020 (2003) [discussing the purpose behind qualified immunity in statutes such as §1799.106]; see also *Perkins v. Howard*, 232 Cal. App. 3d 708, 713 (1991) [stating that the purpose of statutes such as §1799.106 is to offer protection from civil liability when rendering emergency assistance.])

PLAINTIFFS have not provided any evidence to show any departure from the ordinary standard of conduct, much less gross negligence.  Immediately following the shooting, even before MEGARGEE was taken out of the vehicle, TAYLOR recalls one of the officers on the

21

1   scene stating that MEGARGEE "had a pulse." (UMF 20.)  This proves that MEGARGEE's vital

2   signs were taken at the first possible opportunity prior to paramedics arriving.  The paramedics

3   also arrived seconds after the shooting and began providing medical care to both of the

4   PLAINTIFFS.   (UMF 21.)   Based on the undisputed facts, there is clear evidence that

5   PLAINTIFFS were provided more than just the "scant care" required by the standard for gross

6   negligence.   Instead, their vital signs were taken, and their injuries were treated by the

7   paramedics.  (UMF 20-21.)

8          Moreover, there is absolutely no evidence that either RHYMAN or BAKER individually

9   failed to provide medical care, nor is there any evidence that PLAINTIFFS were damaged by any

10  such failure.  Even if PLAINTIFFS were able to prove, which they cannot, that RHYMAN and

11  BAKER acted *negligently* in providing medical care to PLAINTIFFS, this would still not meet

12  the gross negligence standard set by California Health and Safety Code §1799.106.  As such,

13  RHYMAN and BAKER are entitled to summary adjudication as to this cause of action as a

14  matter of law.

15          2.    **As RHYMAN and BAKER Are Immune From Civil Damages, The COUNTY
                  OF TULARE and WITTMAN Are Also Entitled to Immunity Under
16                California Health And Safety Code §1799.106.**

17          If the employee of a governmental entity is subject to immunity under Health and Safety

18  Code §1799.106, then the governmental entity is also entitled to immunity.  "A public agency

19  employing such a firefighter, police officer or other law enforcement officer….shall not be liable

20  for civil damages if the firefighter, police officer or other law enforcement officer…is not liable."

21  (Cal. Health & Safety Code §1799.106.)  As outlined above in Section IV (F)(1), incorporated

22  herein, the undisputed facts show that both RHYMAN and BAKER were not grossly negligent in

23  their provision of medical care to PLAINTIFFS.  (See UMF 20-21.)  Accordingly, RHYMAN

24  and BAKER, as police officers, are entitled to immunity under §1799.106.

25          Since RHYMAN and BAKER are immune, COUNTY OF TULARE, as their employer, is

26  also immune under §1799.106.  Moreover, there is no statutory basis for claim that a municipality

27  can be directly liable if its deputies fail to timely summon proper medical aid.  Contrarily,

28  §1799.106 provides that public entities are immune to the extent that its employees are immune.

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

22

1    Here, PLAINTIFFS have also alleged their Seventh Cause of Action against WITTMAN.

2    However, there is no evidence that WITTMAN personally participated at the shooting, or that he

3    was in any position to render, or fail to render, medical care.  (UMF 23.)  PLAINTIFFS have

4    alleged that WITTMAN can be held liable for failure to provide medical care since he was

5    RHYMAN and BAKER's supervisor, and supposedly approved of the conduct after it occurred.

6    However, there is no evidence that WITTMAN can be held liable for the failure to provide

7    medical care simply because he was allegedly a supervisor.  Contrarily, as detailed below,

8    California Government Code §820.8 states that "a public employee is not liable for an injury

9    caused by the act or omission of another person."  (See also, *Martinez v. Cahill* (1963) 215

10   Cal.App.2d 823, 824.)

11    Moreover, PLAINTIFFS cannot base a negligence cause of action for failure to render

12   medical care on WITTMAN's alleged conduct *after* the tort occurred.  The possibility that

13   WITTMAN may have approved of RHYMAN and BAKER's actions after the supposed failure to

14   render medical care occurred does not establish that PLAINTIFFS' suffered any damages as a

15   result.  In other words, even if PLAINTIFFS' could establish WITTMAN's subsequent approval,

16   they would still be unable to prove that they suffered any damage because of it.

17    Finally, since PLAINTIFFS are unable to establish any cause of action against

18   WITTMAN in his individual capacity for failure to render medical aid, this cause of action must

19   only be based on his "official capacity" as the Sheriff.  As detailed below in Section IV (G), this

20   means that the cause of action against WITTMAN is really a cause of action against COUNTY

21   OF TULARE.  The Court has already recognized that "because Wittman is sued in his capacity as

22   Sheriff, the court find that for the purposes of immunity on the negligence claims, negligence

23   claims against Wittman are in fact claims against the County."  (See Opinion pg. 17 n.2 citing

24   *Sanders v. City of Fresno*, 2006 WL 1883394, *11 and *Munoz v. City of Union City* (2004) 120

25   Cal.App.4th 1077, 1112-13.)  As such, WITTMAN is entitled to the same immunity that

26   COUNTY OF TULARE is entitled to under §1799.106 and should be dismissed.

27   //

28   //

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

23

NOTICE OF MOTION 1:06-CV-00684-AWI-LJO

**G.** **ALL CAUSES OF ACTION AGAINST DEFENDANT WITTMAN SHOULD BE DISMISSED AS REDUNDANT AND UNNECESSARY.**

Since WITTMAN is sued in his capacity as Sheriff, PLAINTIFFS' state law claims against him are actually claims against the COUNTY OF TULARE, and thus, all state actions against WITTMAN and both redundant and unnecessary.  In PLAINTIFFS' Third and Fourth Causes of Action, they have alleged that WITTMAN is liable for negligence and negligent hiring, training, supervision and retention on the basis that he (1) failed to properly supervise and train RHYMAN and BAKER, and (2) knew that there were customs, practices and policies that caused the unlawful and unreasonable use of excessive force.  (Hooks Declaration, Exhibit "I," FAC ¶¶ 71, 97.)  In the Fifth Cause of Action, PLAINTIFFS' allege that WITTMAN can be liable for the actions of RHYMAN and BAKER under a vicarious liability theory.  (Hooks Declaration, Exhibit "I," FAC¶¶106-120.)  Similarly, PLAINTIFFS' Seventh Cause of Action alleges that WITTMAN has supervisory liability for RHYMAN and BAKER's alleged failure to provide medical care.  (*Id*. at ¶¶151-152.)

1.   **As a Public Officer, WITTMAN Cannot Be Held Vicariously Liable for His Subordinates' Actions.**

PLAINTIFFS' have alleged their Third, Fourth, Fifth and Seventh Causes of Action against WITTMAN; however, as a public officer, he cannot be held liable for the actions of his subordinates, RHYMAN and BAKER.  In the Third, Fourth and Seventh Causes of Action for negligence and negligence hiring, supervision and training, and failure to provide medical care, PLAINTIFFS' allege that WITTMAN can be held liable for failing to properly supervise and train Defendants RHYMAN and BAKER.  However, as an officer, WITTMAN is entitled to immunity for these actions under California law.  California Government Code §820.8 states that "a public employee is not liable for an injury caused by the act or omission of another person."  (See also, *Martinez v. Cahill* (1963) 215 Cal.App.2d 823, 824.)

Moreover, as outlined above, since there was no custom or policy for violating the PLAINTIFFS' rights, WITTMAN cannot be held to have known of this "policy" and it could not have contributed to PLAINTIFFS' injuries.  (See Section III (B), *supra*.)  This is particularly true

24

MCCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

1  considering that there is no evidence that WITTMAN knew of the circumstances surrounding the

2  incident which allegedly gave rise to PLAINTIFFS' injuries.  Unlike allegations against the

3  COUNTY OF TULARE, public officers are statutorily immune from claims based on vicarious

4  liability.  (See Gov. Code §820.8; see also, *Weaver v. State of California* (1998) 63 Cal.App.4th

5  188, 202.)   Thus, PLAINTIFFS' Third, Fourth, Fifth and Seventh Causes of Action against

6  WITTMAN fail as a matter of law.

7        **2.**      **Since COUNTY OF TULARE is Already Joined As a Party to This Action,**
   **Asserting Entity Liability Against WITTMAN for State Causes of Action is**

8                   **Redundant and Improper.**

9        As outlined above, PLAINTIFFS cannot maintain a cause of action against WITTMAN

10  individually.  However, suing WITTMAN in his "official capacity" is redundant when COUNTY

11  OF TULARE is already joined as a Defendant.  Although Government Code §815.2 "makes a

12  public entity vicariously liable for its employee's negligent acts or omissions within the scope of

13  employment," WITTMAN is *not* a public entity.  Pursuant to Government Code §811.2, the

14  definition of "public entity" does not include public employees or officials.  However, it does

15  include counties, such as Defendant COUNTY OF TULARE.

16        WITTMAN, as a county sheriff, is an elected officer of the county.  (Cal. Const., art. XI

17  [Local Government], §§1(b), 4(c) [Legislature and county charters shall provide for county

18  officers including an elected county sheriff.]; see also, Gov. Code §24000.)  However, this does

19  not convert him into a public entity, he is still merely a public official or employee.  In fact, this

20  Court has already determined, in its Opinion regarding DEFENDANTS' prior 12(b)(6) Motion to

21  Dismiss, that "because Wittman is sued in his capacity as Sheriff, the court find that for the

22  purposes of immunity on the negligence claims, negligence claims against Wittman are in fact

23  claims against the County."  (See Opinion pg. 17 n.2 citing *Sanders v. City of Fresno*, 2006 WL

24  1883394, *11 and *Munoz v. City of Union City* (2004) 120 Cal.App.4th 1077, 1112-13.)

25        Moreover, since all federal claims against WITTMAN fail as a matter of law, there is no

26  purpose in allowing WITTMAN to remain in this action solely on the basis of entity liability.

27  This is particularly true considering that COUNTY OF TULARE is already named in this action.

28  As such, all causes of action against WITTMAN should be dismissed.

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

25

NOTICE OF MOTION 1:06-CV-00684-AWI-LJO

**H.**    **PLAINTIFFS' PUNITIVE DAMAGES CLAIMS AGAINST DEFENDANTS CANNOT BE SUSTAINED.**

As to claims brought pursuant to 42 U.S.C. §1983, punitive damages are only recoverable when the defendant's conduct is shown to be "a reckless or callous disregard of, or indifference to, the rights or safety of others." (*Smith v. Wade*, 461 U.S. 30, 33 (1983); *Dang v. Cross*, 422 F.3d 800, 806 (9th Cir. 2005).) Under California state law, punitive damages are authorized only when it is proven "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." (Cal. Civ. Code §3294(a).) As repeatedly explained in the preceding discussions, PLAINTIFFS simply cannot produce sufficient evidence to justify the imposition of punitive damages against DEFENDANTS under the applicable state or federal standards. Therefore, DEFENDANTS are entitled to summary adjudication in its favor on this issue.

However, even if the Court determines that PLAINTIFFS can survive summary judgment on their state and federal claims, they still would not have sufficient evidence to support their punitive damages claims against DEFENDANTS.

1.    **Under Both State and Federal Law, PLAINTIFFS Cannot Recover Punitive Damages Against a Municipality or Against Officers Acting in Their Official Capacity.**

As a municipality, COUNTY OF TULARE is immune from punitive damages under §1983. (*City of Newport v. Fact Concerts, Inc.* 453 U.S. 247, 271 (1981).) Moreover, since "a suit against a governmental officer in his official capacity is equivalent to a suit against the governmental entity itself," WITTMAN, RHYMAN and BAKER also cannot be held liable for punitive damages in their official capacities. (*Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991); see also, *Mitchell v. Dupnik*, 75 F.2d 517, 527 (9th Cir. 1996) [holding that punitive damages award against sheriff and officers in their official capacity was invalid since it was in reality an assessment against the county.])

Similarly, according to California Government Code §818, "[n]otwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

1  the defendant." This section serves *to "bars any award of punitive damages against a public*

2  *entity."* (*Westlands Water District v. Amoco Chemical Company*, 953 F.3d 1109, 1113 (9th Cir.

3  1992), emphasis added.) Thus, all punitive damages claims against COUNTY OF TULARE

4  should be dismissed, along with those against WITTMAN, RHYMAN and BAKER in their

5  official capacities.

6    2.  **PLAINTIFFS Have Insufficient Evidence To Substantiate Any Punitive**
    **Damage Claim Against WITTMAN in His Individual Capacity.**

7

8    As stated above in Sections III (A)(3), III (B)(1), IV (C), IV (D), IV (F), and IV (G),

9  incorporated herein, PLAINTIFFS cannot produce sufficient evidence that WITTMAN caused

10  them any harm, nor that he contributed their the alleged constitutional violation in any way.

11  WITTMAN was not present during the pursuit or shooting that allegedly occurred on June 6,

12  2005, nor did he direct RHYMAN and BAKER to perform any actions. (UMF 23.) Additionally,

13  WITTMAN was not personally involved in any training or supervision of the officers. (UMF

14  24.) As such, there is absolutely no evidence to establish that WITTMAN exhibited the type of

15  "malice" necessary under California state law, nor is there evidence to show that he exhibited a

16  "reckless or callous disregard" for the PLAINTIFFS' rights.

17    3.  **PLAINTIFFS Have Insufficient Evidence to Substantiate Their Punitive**
    **Damages Claims Against RHYMAN and BAKER.**

18

19    Even if the Court analyzes the undisputed actions of RHYMAN and BAKER under the

20  less stringent standard set forth in §1983 claims, they are still insufficient to support an award of

21  punitive damages as a matter of law. In fact, the same arguments set forth above in Sections III

22  (A)(1) and III (A)(2), hereby incorporated by reference, also support the failure of PLAINTIFFS

23  to establish any basis for punitive damages. As previously stated, punitive damages are available

24  in §1983 cases "only upon a showing of evil motive or intent, or . . . reckless or callous

25  indifference to the federally protected rights of others." (*Smith*, *supra*, 461 U.S. at 56; see also

26  *Sahagian v. Dickey*, 827 F.2d 90, 100 (7th Cir. 1987).) Moreover, a court is authorized to dispose

27  of meritless punitive damages allegations "where a plaintiff fails to produce evidence raising a

28  material question of fact regarding aggravating circumstances or the reckless or callous nature of

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

27

NOTICE OF MOTION 1:06-CV-00684-AWI-LJO

1    the defendant's actions." (*Kyle v. Patterson*, 196 F.3d 695, 697-698 (7th Cir. 1999).)

2         In the instant matter, the undisputed material facts fail to show any evidence of the type of

3    egregious conduct necessary to support an award of punitive damages against RHYMAN and

4    BAKER.  PLAINTIFFS were pursued by RHYMAN and BAKER based on serious charges of

5    residential burglary, for which they then evaded arrest.  (UMF 2.)  During their attempted flight,

6    PLAINTIFFS admit that they drove into oncoming traffic and almost injured a pedestrian.  (UMF

7    6.)  After PLAINTIFFS' drove their stolen truck into the residential driveway, PLAINTIFFS

8    admit that their vehicle continued moving toward the officers right before the shooting occurred.

9    (UMF 12.)  This vehicle constituted a weapon, and both RHYMAN and BAKER treated it as

10   such. This was particularly true considering that PLAINTIFFS had used their vehicle to commit

11   multiple assaults on RHYMAN's vehicle and his person.  (UMF 9, 13.)  It is undisputed that prior

12   to shooting, both officers loudly commanded the PLAINTIFFS to stop their vehicle and

13   surrender.  (UMF 15.)  However, the driver of the PLAINTIFFS' vehicle, MEGARGEE never

14   raised his hands off the wheel to indicate that he was surrendering.  (UMF 16.)

15        All of the above undisputed facts establish that there was no evil motive behind

16   RHYMAN and BAKER's actions on the date of the shooting.  Moreover, through their pleas with

17   PLAINTIFFS to stop the car and surrender, RHYMAN and BAKER prove that they did not act

18   callously or maliciously.  Instead, RHYMAN and BAKER gave PLAINTIFFS the opportunity to

19   surrender, and then when MEGARGEE did not raise his hands and began to move toward the

20   officers, they discharged their weapons.  (UMF 15-19.)  Additionally, it is undisputed that both

21   officers feared for their lives when they shot at the PLAINTIFFS' vehicle.  (UMF 18-19.)  As

22   such, PLAINTIFFS are unable, as a matter of law, to establish that RHYMAN and BAKER acted

23   with the evil motive required for punitive damages under state and federal law.

24                                              **V.**

25                                        **CONCLUSION**

26        Pursuant to the foregoing arguments and authorities, and Rule 56 of the Federal Rules of

27   Civil Procedure, Defendants COUNTY OF TULARE, BILL WITTMAN, CHAD RHYMAN and

28   DAN BAKER respectfully request that this Court issue an Order granting summary judgment in

28

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

NOTICE OF MOTION 1:06-CV-00684-AWI-LJO

1   their favor and against Plaintiffs STANLEIGH GEAN MEGARGEE and KATIE TAYLOR.  In

2   the alternative, DEFENDANTS request that the following issues be adjudicated in their favor and

3   against the PLAINTIFFS:

4         1.     That PLAINTIFFS, and each of them, lack sufficient evidence to establish a

5   Fourth Amendment violation as to RHYMAN and BAKER.

6         2.     That PLAINTIFFS, and each of them, lack sufficient evidence to establish a

7   Fourth Amendment violation as to WITTMAN in his individual capacity.

8         3.     That PLAINTIFFS, and each of them, lack sufficient evidence to establish a

9   Fourth Amendment violation as to COUNTY OF TULARE.

10        4.     That PLAINTIFFS, and each of them, lack sufficient evidence to establish a

11  Fourth Amendment violation as to WITTMAN in his official capacity.

12        5.     That PLAINTIFFS, and each of them, lack sufficient evidence to establish a claim

13  against COUNTY OF TULARE for Negligence.

14        6.     That PLAINTIFFS, and each of them, lack sufficient evidence to establish a claim

15  against RHYMAN and BAKER for Negligence.

16        7.     That PLAINTIFFS, and each of them, lack sufficient evidence to establish a claim

17  against WITTMAN for Negligence.

18        8.     That PLAINTIFFS, and each of them, lack sufficient evidence to establish a claim

19  against COUNTY OF TULARE for vicarious liability.

20        9.     That PLAINTIFFS, and each of them, lack sufficient evidence to establish a claim

21  against WITTMAN for vicarious liability.

22        10.     That PLAINTIFFS, and each of them, lack sufficient evidence to establish a claim

23  against RHYMAN and BAKER for battery.

24        11.     That PLAINTIFFS, and each of them, lack sufficient evidence to establish a claim

25  against RHYMAN and BAKER for failure to provide medical care.

26        12.     That PLAINTIFFS, and each of them, lack sufficient evidence to establish a claim

27  //

28  //

1   against WITTMAN for failure to provide medical care.

2         13.    That PLAINTIFFS, and each of them, lack sufficient evidence to establish a claim

3   against COUNTY OF TULARE for failure to provide medical care.

4

5   Dated: February 19, 2008                  McCORMICK, BARSTOW, SHEPPARD,
                                                      WAYTE & CARRUTH LLP

6

7                                     By:        /S/Cassandra E. Hooks

8                                             Justus C. Spillner
                                            Cassandra E. Hooks

9                                         Attorneys for Defendants
                                        COUNTY OF TULARE, BILL

10                                         WITTMAN, CHAD RHYMAN, and
                                        DAN BAKER

11

12

13   1141877.v1

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

30

NOTICE OF MOTION 1:06-CV-00684-AWI-LJO