Kathleen Bales-Lange, # 094765
County Counsel for the County of Tulare
Teresa M. Saucedo, #093121
Deputy County Counsel
2900 W. Burrel, County Civic Center
Visalia, California 93291
Telephone:   (559) 733-6263
Facsimile:   (559) 737-4319

Justus C. Spillner, # 067638
Cassandra E. Hooks, # 277741
McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
P.O. Box 28912
5 River Park Place East
Fresno, CA  93720-1501
Telephone:   (559) 433-1300
Facsimile:   (559) 433-2300

Attorneys for Defendants
COUNTY OF TULARE, BILL WITTMAN, CHAD RHYMAN and DAN BAKER

(SPACE BELOW FOR FILING STAMP ONLY)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA (FRESNO DIVISION)

| | |
|---|---|
| **STANLEIGH GEAN MEGARGEE an incompetent, by Hazel and Art Lopez, his guardian ad litem; and KATIE TAYLOR, a minor, by Terry Huerta, her guardian ad litem,**<br><br>          Plaintiffs,<br><br>     v.<br><br>**BILL WITTMAN, CHAD RHYMAN and DAN BAKER, in their individual capacity as sheriffs of the COUNTY OF TULARE, and the COUNTY OF TULARE, and DOES 1 through 100 inclusive,**<br><br>          Defendants. | Case No.  1:06-CV-00684-LJO-GSA<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO THE OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION, PURSUANT TO RULE 56**<br><br>Date:       March 21, 2008<br>Time:       8:30 a.m.<br>Courtroom: 4<br>Judge:      Lawrence J. O'Neill |

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

i

REPLY TO OPPOSITION 1:06-CV-00684-AWI-LJO

# TABLE OF CONTENTS

Page

I. ARGUMENT .................................................................................................................1

    A. Federal Law Claims ..........................................................................................1

        1. The Undisputed Material Facts Show That RHYMAN and BAKER Are Entitled to Summary Judgment as to PLAINTIFFS' §1983 Claim .................................................................................................1

        2. DEFENDANTS' Are Entitled to Qualified Immunity, Even If They Made a Reasonable Mistake as to the Law or Facts ..................4

        3. There is No Evidence That COUNTY OF TULARE or WITTMAN Adopted a Policy Permitting Its Officers to Use a Subjective Standard for the Use of Deadly Force in Violation of §1983. .....................6

    B. State Law Claims ...............................................................................................8

        1. DEFENDANTS Are Entitled to Immunity Since RHYMAN and BAKER Did Not Use Excessive Force Against PLAINTIFFS ..................8

        2. DEFENDANTS Are Entitled to Summary Judgment on PLAINTIFFS' Assault and Battery and Negligence Claims ......................8

        3. California Health and Safety Code §1799.106 Bars All Civil Actions Against Police Officers For the Failure to Render Medical Care .................................................................................................9

        4. RHYMAN and BAKER Are Entitled to Summary Adjudication On PLAINTIFFS' Claims for Punitive Damages ..........................................10

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

i

REPLY TO OPPOSITION 1:06-CV-00684-AWI-LJO

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adams v. Speers*,
  473 F.3d 989 (2007) .................................................................................................. 4

*Adams v. Speers*,
  CV-F-02-5741-LJO (E.D. Cal. December 16, 2004) .................................................. 4

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 247 (1986) ........................................................................................... 1

*Brosseau v. Haugen*,
  543 U.S. 194 (2004) ............................................................................................... 3, 5

*Carillo v. City of Fresno*,
  2007 U.S. Dist. LEXIS 86314, *33 (E.D. Cal 2007 .................................................... 6

*Elliott v. Leavitt*,
  99 F.3d 640, 641 (4th Cir. 1996) ................................................................................ 2

*Foster v. City of Fresno*,
  392 F.Supp.2d 1140, 1159 (2005) .............................................................................. 8

*Haugen v. Brosseau*,
  351 F.3d 372 (2003) ................................................................................................... 3

*Jacobs v. City of Shreveport*,
  2006 U.S. Dist. LEXIS 81726, *45 (W.D. La 2006) .................................................. 7

*Martinez v. County of Los Angeles*,
  47 Cal.App.4th 334, 349 (1996) ................................................................................. 8

*Monell v. Dep't of Social Services of New York*,
  436 U.S. 658, 694 (1978) ........................................................................................... 7

*Munoz v. City of Union City*,
  20 Cal.App.4th 1077,1102-3 (2004) ........................................................................... 9

*Phillips v. City of Fairfield*,
  406 F.Supp.2d 1101, 1118 (E.D. Cal. 2005) .............................................................. 8

*Price v. Sery*,
  308 F.3d 968, 984-85 .................................................................................................. 7

*Rudebusch v. Hughes*,
  313 F.3d 506, 514 (9th Cir. 2002) .............................................................................. 6

*Saucier v. Katz*,
  533 U.S. 194, 202 (2001) ........................................................................................... 5

ii

REPLY TO OPPOSITION 1:06-CV-00684-AWI-LJO

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Smith v. Freland,*
　954 F.3d 343 (1992)..................................................................................................3

*Willis v. Oakes,*
　493 F.Supp.2d 776, 783 (W.D. Va 2007)..................................................................2

*Wright v. City of Los Angeles,*
　219 Cal.App.3d 318, 343-343 (1990) ........................................................................9

**Statutes**

42 USC §1983..................................................................................................................2, 6

Government Code §815.2..................................................................................................8, 9

Governement Code §820.2................................................................................................8, 9

Health and Safety Code §1799.106................................................................................9, 10

COME NOW, Defendants COUNTY OF TULARE, BILL WITTMAN, CHAD RHYMAN and DAN BAKER (collectively "DEFENDANTS") and hereby submit the following Memorandum of Points and Authorities in Reply to Plaintiff KATIE TAYLOR and STANLEIGH MEGARGEE's (collectively "PLAINTIFFS") Opposition to DEFENDANTS' Motion for Summary Judgment and/or Summary Adjudication.

# I.
# ARGUMENT

## A.  Federal Law Claims

### 1.  The Undisputed Material Facts Show That RHYMAN and BAKER Are Entitled to Summary Judgment as to PLAINTIFFS' §1983 Claim.

In their Opposition, PLAINTIFFS argue that DEFENDANTS are not entitled to summary judgment since there are factual disputes between the parties. However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), emphasis in original.) In the instant matter, PLAINTIFFS have conceded many material facts. Moreover, even if the facts are as PLAINTIFFS' present them to be, DEFENDANTS are still entitled to summary judgment, as they were justified in using force against PLAINTIFFS.

PLAINTIFFS base their version of the material facts on the testimony of certain witnesses who said that the truck was stationary at the time the shooting occurred. (See Plaintiff's Disputed Facts 15; Plaintiff's Response to UMF 17, 18.) However, as noted in PLAINTIFFS' Opposition, the testimony of these witnesses also establishes that the truck's wheels were spinning and that its engine was revving immediately before RHYMAN and BAKER opened fire. (Declaration of Eric R. Maier ("Maier Decl."), Exhibit A. (Rendon Dep.) at 16:6-12; Exhibit D (M. Lee Dep.) 16:9-25, 17:1-5; Exhibit C (R. Lee Dep.) 26:14-23.)

As such, the undisputed material facts between the parties are (1) PLAINTIFFS committed a residential burglary and evaded arrest in a stolen truck (UMF 2); (2) PLAINTIFFS then led RHYMAN and BAKER on a high speed chase through numerous residential streets, putting pedestrians and officers in danger (UMF 4, 6.); (3) once PLAINTIFFS entered the cul-de-

sac, they collided with RHYMAN's vehicle when they attempted to escape (UMF 9); (4) both RHYMAN and BAKER drew their weapons and loudly ordered PLAINTIFFS' to stop the car (UMF 15); (4) the driver, MEGARGEE, never raised his hands to indicate that he was surrendering (UMF 16); and (5) as PLAINTIFFS' attempted to flee, the truck's wheels began spinning and the engine was revving moments before the shooting began (See Plaintiff's Disputed Facts 15; Plaintiff's Response to UMF 17, 18; Maier Decl., Exhibit A. (Rendon Dep.) at 16:6-12; Exhibit D (M. Lee Dep.) 16:9-25, 17:1-5; Exhibit C (R. Lee Dep.) 26:14-23.)

Based on these facts, RHYMAN and BAKER were justified in opening fire in self-defense and defense of others under §1983. It is immaterial whether the truck was actually moving during the seconds before the shooting began (although the evidence shows indisputably that it was). "The Constitution simply does not require police to gamble with their lives in the face of a serious threat of harm." (*Elliott v. Leavitt*, 99 F.3d 640, 641 (4th Cir. 1996).) In the similar case of *Willis v. Oakes*, 493 F.Supp.2d 776, 783 (W.D. Va 2007), the court also dealt with a §1983 claim brought by a plaintiff who was in a vehicle at the time he was shot by officers who were in pursuit. Plaintiff argued that the officers were not entitled to summary judgment since there was a factual dispute as to whether the truck was moving at the time of the shooting. (*Id.*) The court found that this fact was immaterial. "The Fourth Amendment does not require police officers to wait until a suspect shoots to confirm that a serious threat of harm exists. [Plaintiff] posed a threat to [the officer] and others whether or not he had actually driven the [car] forward before the shots were fired." (*Id.*)

Similarly, in the instant matter, it is immaterial whether the truck that PLAINTIFFS were in moved immediately prior to the shooting. There is ample evidence to show that if PLAINTIFFS did not actually move the truck, they were doing everything in their power to do so. Considering that the truck was revving its engine and the wheels were spinning, it was reasonable for RHYMAN and BAKER to fear for their own lives, and act accordingly. "No court can expect any human begin to remain passive in the fact of an active threat on his or her life." (*Elliott*, *supra*, 99 F.3d at 644.)

PLAINTIFFS argue that the Ninth Circuit's decision in *Haugen v. Brosseau*, 351 F.3d 372

(2003) as to the constitutionality of the plaintiff's excessive force claim presents an analogous situation to the instant matter. It is important to note that this portion of the decision was ultimately irrelevant, as the Supreme Court later decided that the officer in *Haugen* was subject to qualified immunity for his actions. (*Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).) However, even if this Court determines that *Haugen* is still relevant, applicable law, it is distinguishable from the instant matter. In *Haugen*, the officer stated that she did not fear for her own life at the time of the shooting, but for the lives of the other officers that were in the immediate area. (*Id*. at 386.) Moreover, even the Ninth Circuit distinguished between the threat caused by a high speed chase and police assault, as in *Smith v. Freland*, 954 F.3d 343 (1992)[1], and the facts of *Haugen* which involved a suspect on foot who was attempting to get into a car in order to flee. (See *Haugen*, 351 F.3d at 389-90.)

In the instant matter, it is undisputed that PLAINTIFFS had engaged RHYMAN and BAKER in a high speed chase, which put pedestrians and the officers at risk. (UMF 4, 6.) Also, unlike in *Haugen*, RHYMAN and BAKER reasonably feared for their own safety as well as the safety of others. (UMF 17, 18.) This fear is supported by the fact that they were in close proximity to the PLAINTIFFS' truck at the time, that the truck was pointed at the officers, and that the truck's engine was revving and wheeling were spinning moments prior to the shooting. (See Plaintiff's Disputed Facts 15; Plaintiff's Response to UMF 17, 18; Maier Decl., Exhibit A. (Rendon Dep.) at 16:6-12; Exhibit D (M. Lee Dep.) 16:9-25, 17:1-5; Exhibit C (R. Lee Dep.) 26:14-23.) Moreover, it is also undisputed that RHYMAN's vehicle collided with the PLAINTIFFS' truck prior to the shooting. (UMF 9; Plaintiff's Disputed Facts 11-13.) Even if the collision was accidental, it is reasonable that RHYMAN thought that PLAINTIFFS had intentionally rammed into his car in an attempt to escape. (UMF 9, 10.) This is further supported by TAYLOR's statement that MEGARGEE was trying to escape again once the truck had entered the cul-de-sac, prior to the collision with RHYMAN. (See UMF 10.)

PLAINTIFFS also cite the District Court's ruling in *Adams v. Speers*, CV-F-02-5741-LJO

---

[1] DEFENDANTS' analogized the instant matter to *Smith v. Freland* in their moving papers. (See Memorandum of Points and Authorities in Support of Motion for Summary Judgment, pp. 5-6.)

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

3

REPLY TO OPPOSITION 1:06-CV-00684-AWI-LJO

(E.D. Cal. December 16, 2004), which was affirmed by the Ninth Circuit in *Adams v. Speers*, 473 F.3d 989 (2007). In affirming the District Court's ruling the Ninth Circuit in *Adams* stated "accepting the Adamses' facts as true, this case falls within the obvious: the absence of warning and the lack of danger to the shooter or others distinguish the case from *Cole*, *Smith*, and *Brosseau*." In the instant matter, DEFENDANTS have shown that they had reason to fear for their lives prior to the shooting, particularly due to their proximity to the PLAINTIFFS' truck and the fact that the truck's wheels were spinning and engine was revving, which indicated that the truck could take off at any moment and run directly into either officer RHYMAN or BAKER. (See Plaintiff's Disputed Facts 15; Plaintiff's Response to UMF 17, 18; Maier Decl., Exhibit A. (Rendon Dep.) at 16:6-12; Exhibit D (M. Lee Dep.) 16:9-25, 17:1-5; Exhibit C (R. Lee Dep.) 26:14-23.)

Moreover, unlike *Adams*, RHYMAN and BAKER saw PLAINTIFFS' use their vehicle as a weapon, both during the collision with RHYMAN and the subsequent revving of the engine, which led RHYMAN and BAKER to reasonably believe that PLAINTIFFS' were willing to cause them harm in order to escape. Finally, BAKER and RHYMAN gave loud warnings to the PLAINTIFFS prior to shooting, as proved by witness Dennis Carter who was one of PLAINTIFFS' accomplices. (UMF 15.) Yet, it is undisputed that MEGARGEE, the driver of the vehicle never put his hands up in the air to indicate that he was surrendering, and instead caused the truck's wheels to spin and the its engine to rev as he attempted to escape. Under these circumstances, the RHYMAN and BAKER were justified in their use of force against PLAINTIFFS, and no jury could reasonably find otherwise. Thus, DEFENDANTS are entitled to summary judgment on PLAINTIFFS' §1983 claims.

 2. **DEFENDANTS' Are Entitled to Qualified Immunity, Even If They Made a Reasonable Mistake as to the Law or Facts.**

In support of their argument that DEFENDANTS are not entitled to immunity, PLAINTIFFS rely on *Adams, supra*[2] and, ironically, on the Supreme Court's decision in

---

[2] *Adams* is distinguished from the instant matter in Section II(A) above, which is incorporated herein by reference.

*Brosseau v. Haugen*, 543 U.S. 194, where the Court found that the officers *were* entitled to qualified immunity. Nevertheless, PLAINTIFFS argue that since Ninth Circuit's *Brosseau* decision was issued prior to the shooting in the instant case, RHYMAN and BAKER "were on clear notice that their conduct was unconstitutional." (See Plaintiffs' Opposition at p. 16.)

Initially, this argument is nonsensical considering that the Ninth Circuit in *Brosseau* did not determine the constitutionality or non-constitutionality of the officer's conduct. Instead, *Brosseau* was a determination as to whether summary judgment was warranted under the circumstances. (See *Haugen*, *supra*, 351 F.3d at 391.) As such, there is no possible way that the Ninth Circuit's decision in *Brosseau* could put RHYMAN and BAKER on notice regarding the constitutionality of their actions.

Moreover, in the Supreme Court's review of *Brosseau*, decided less than one year prior to the subject shooting, they determined that qualified immunity was warranted based on the fact that the law was not "clearly established" in the area of "whether to shoot a disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight." (*Brosseau*, 543 U.S. at 199-200.) After reviewing three cases involving fleeing suspects, including *Smith v. Freland*, discussed extensively in DEFENDANTS' moving papers, the court determined that the officers were entitled to qualified immunity:

> These three cases taken together *undoubtedly* show that this area is one in which the result depends very much on the facts of each case. None of them squarely governs the case here; they do suggest that Brosseau's actions fell within the 'hazy border between excessive and acceptable force.' These cases by no means 'clearly establish' that Brosseau's conduct violated the Fourth Amendment. (*Id*. at 201.)

In the less than a year after the Supreme Court determined *Brosseau* but prior to the subject shooting, PLAINTIFFS' have provided no caselaw showing any further developments in the law. As such, there is no evidence that the law has been "clearly established" in this area since *Brosseau*, and officers RHYMAN and BAKER would have no reason to be any more well informed than the defendant officer in *Brosseau*. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." (*Saucier v. Katz*, 533 U.S. 194, 202 (2001).) Moreover, as outlined above, the facts

of the instant matter more strongly implicate that there was no constitutional violation than *Brosseau*. Thus, RHYMAN and BAKER are entitled to qualified immunity as to their actions, particularly considering the fact that the qualified immunity standard "allows ample room for reasonable error on the part of the official" and "encompasses both mistakes of fact and mistakes of law." (*Rudebusch v. Hughes*, 313 F.3d 506, 514 (9th Cir. 2002).)

   3.   **There is No Evidence That COUNTY OF TULARE or WITTMAN Adopted a Policy Permitting Its Officers to Use a Subjective Standard for the Use of Deadly Force in Violation of §1983.**

As outlined above, and in DEFENDANTS' moving papers, the undisputed material facts show that there was no constitutional violation committed by RHYMAN and BAKER. As such, the COUNTY OF TULARE and WITTMAN cannot be held liable. (See *Carillo v. City of Fresno*, 2007 U.S. Dist. LEXIS 86314, *33 (E.D. Cal 2007) ["If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."].)

In this case, the constitutionality of the policies and procedures of the Tulare County Sheriff's Department as they relate to the use of force is undisputed. (UMF 26.) PLAINTIFFS' have also conceded that both RHYMAN and BAKER were familiar with the constitutionally valid provisions of the Tulare County Sheriff's Department discussing the use of force. (UMF 27.) Finally, PLAINTIFFS do not dispute the fact that, at the time of the shooting, both RHYMAN and BAKER knew that deadly force was authorized to prevent death or serious bodily injury to themselves or another person. (UMF 31.)

However, despite the fact that RHYMAN and BAKER were familiar with the constitutionally valid policies of COUNTY OF TULARE at the time of the shooting, PLAINTIFFS' argue that RHYMAN and BAKER applied a different constitutionally defective interpretation of the policy. However, based on the undisputed facts, BAKER and RHYMAN understood that deadly force was authorized only when necessary to prevent death or bodily injury to themselves or another person, which is in alignment with the constitutionally valid policy of the COUNTY OF TULARE.

Moreover, PLAINTIFFS' base this argument on the court's decision in *Price v. Sery*, 308 F.3d 968, 984-85, which is distinguishable from the instant matter. Initially, *Price* involved the deposition testimony of a police chief, who is clearly a policy maker. The police chief in *Price* was asked specifically about whether an "objective" or "subjective" standard was used when applying deadly force. (*Id.* at 25-26.) Since the police chief stated that a "subjective" standard should be used, the court found that there was a triable issue of material fact and summary judgment was not warranted. (*Id.* at 26-27.) In the instant matter, PLAINTIFFS rely on only the testimony of Lieutenant Richard Matthews, who has no apparent policy making ability. Moreover, unlike in *Price*, Lieutenant Matthews was never even asked whether a subjective or objective standard was to be used by officers. Yet, PLAINTIFFS ask that this Court deny Summary Adjudication and assume that Matthew trained RHYMAN and BAKER based on a subjective standard, that this training indicates a long standing custom or practice, and that this practice contributed to the PLAINTIFFS' alleged injuries. PLAINTIFFS have cited no evidence to support any of these assumptions.

Even if PLAINTIFFS could show that Matthews improperly trained RHYMAN and BAKER, and that this training somehow amounted to a policy of the COUNTY OF TULARE, they could still be unable to establish that this was done with "deliberate indifference to its known or obvious consequences, and second, that the municipality was the moving force behind the constitutional violation." (*Jacobs v. City of Shreveport*, 2006 U.S. Dist. LEXIS 81726, *45 (W.D. La 2006) citing *Monell v. Dep't of Social Services of New York*, 436 U.S. 658, 694 (1978).) "Stated another way, to establish deliberate indifference, a plaintiff must show at least a pattern of violations (fairly similar to what ultimately transpired) so that the failure of the city to respond with different training or better supervision reflects a deliberate or conscious choice to endanger constitutional rights." (*Jacobs*, 2006 U.S. Dist. 81726, *47.) Here, PLAINTIFFS have no evidence of a pattern of violations similar to the instant case. As such, they cannot meet their burden of establishing deliberate indifference as to COUNTY OF TULARE or WITTMAN as a matter of law, and summary adjudication is appropriate. (See *Id.* at 47-48 [holding that summary adjudication was appropriate when there was no evidence that the alleged failure to train or

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

7

REPLY TO OPPOSITION 1:06-CV-00684-AWI-LJO

supervise was a "deliberate" or "conscious" choice by the City or police chief].)

B.  **State Law Claims**

Initially, PLAINTIFFS have conceded that Summary Adjudication is warranted as to the entirety of the Third Cause of Action for Negligent Hiring, Training, Supervision, and Retention. Also, PLAINTIFFS have conceded that the First, Third, Fourth, Fifth, and Seventh Causes of Action WITTMAN are subject to Summary Adjudication. (See Plaintiffs' Opposition at p. 4, note 2.) As such, DEFENDANTS respectfully request that judgment be entered accordingly.

1.  **DEFENDANTS Are Entitled to Immunity Since RHYMAN and BAKER Did Not Use Excessive Force Against PLAINTIFFS.**

Although there is no qualified immunity under California law, police officers are still entitled to immunity from governmental claims if they did not engage in any excessive force against PLAINTIFFS. In *Martinez v. County of Los Angeles*, 47 Cal.App.4th 334, 349 (1996), the court determined that the officers were entitled to immunity pursuant to Government Code §820.2 since the force that they used was not excessive. Moreover, under Government Code §815.2, if the officers are subject to immunity, then the county is also immune.

As outlined above in Section II(A) and in DEFENDANTS' moving papers, hereby incorporated, RHYMAN and BAKER did not engage in excessive force against the PLAINTIFFS. As such, they are entitled to immunity for all state law claims under Government Code §820.2. (See *Foster v. City of Fresno*, 392 F.Supp.2d 1140, 1159 (2005) [finding that the officers were immune under §820.2 since they were justified in using deadly force against Plaintiffs].) Similarly, COUNTY OF TULARE and WITTMAN are also immune under Government Code §815.2.

2.  **DEFENDANTS Are Entitled to Summary Judgment on PLAINTIFFS' Assault and Battery and Negligence Claims.**

California battery claims are the counterpart to PLAINTIFFS' federal law claims for excessive force brought pursuant to §1983. (See *Phillips v. City of Fairfield*, 406 F.Supp.2d 1101, 1118 (E.D. Cal. 2005).) For the reasons set forth above, as well as those in DEFENDANTS' moving papers, RHYMAN and BAKER did not use excessive force against PLAINTIFFS in violation of §1983, and as such, cannot be held liable for assault and battery

under state law.  (See Government Code §820.2, and section II(B)(1) supra.)

Similarly, the determination of whether a duty was breached by an officer in a negligence action, through the failure to use "reasonable care," is evaluated under the same standard used under the Fourth Amendment.  (See *Munoz v. City of Union City*, 120 Cal.App.4th 1077,1102-3 (2004); *David v. City of Fremont*, 2006 U.S. Dist. Lexis 57211, *63 (N.D. Cal.).)  For the reasons set forth above, as well as those in DEFENDANTS' moving papers, RHYMAN and BAKER did not use excessive force against PLAINTIFFS in violation of §1983, and as such, cannot be held liable for negligence under state law.  (See Government Code §820.2, and section II(B)(1) supra.)

As to both the assault and battery and negligence claims, COUNTY OF TULARE is also immune to the extent that RHYMAN and BAKER are immune.  (See Government Code §815.2.)  Thus, DEFENDANTS are entitled to Summary Adjudication as to the negligence and assault and battery claims.

        3.      **California Health and Safety Code §1799.106 Bars All Civil Actions Against Police Officers For the Failure to Render Medical Care.**

PLAINTIFFS argue that RHYMAN and BAKER are not entitled to the immunity offered by Health and Safety Code §1799.106 because their action was filed under the "common law." However, as outlined more fully in DEFENDANTS' moving papers, in enacting §1799.106, the legislature did not limit its applicability in this manner.  Instead, the text of §1799.106 states that a "police officer or other law enforcement officer….who renders medical services at the scene of an emergency *shall only be liable in civil damages* for acts or omission performed in a grossly negligent manner or acts or omissions no performed in good faith."  An action based on the common law, is still an action which seeks civil damages, and as such, is still within the purview of Health and Safety Code §1799.106.  (See *Wright v. City of Los Angeles*, 219 Cal.App.3d 318, 343-343 (1990) [applies §1799.106 to a negligence action for wrongful death].)  Thus, RHYMAN and BAKER can only be held liable if they acted in a grossly negligent manner in their provision of medical care.

PLAINTIFFS have not brought forth any facts to show that RHYMAN and BAKER failed to "provide even scant care or an extreme departure from the ordinary standard of

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
5 River Park Place East
Fresno, CA 93720-1501

conduct." (*Wright*, *supra*, 219 Cal.App.3d at 343-44 [articulating the standard for gross negligence].) Contrarily, the undisputed facts show that first aid was rendered to both TAYLOR and MEGARGEE immediately. MEGARGEE's vital signs were checked before removing him from the truck, and by TAYLOR's estimation, the paramedics arrived shortly after. (UMF 20.) Moreover, there is no evidence that any possible delay in the paramedics arriving was due to the actions of RHYMAN and BAKER. Since there is no evidence that RHYMAN and BAKER acted in a grossly negligent manner, they are entitled to the immunity afforded by Health and Safety Code §1799.106. Likewise, COUNTY OF TULARE is also immune under §1799.106. (See §1799.106 [stating that a public entity employing the police officer is not liable for civil damages if the officer is not liable].)

### 4. RHYMAN and BAKER Are Entitled to Summary Adjudication On PLAINTIFFS' Claims for Punitive Damages.

Initially, PLAINTIFFS have conceded that they have no evidence, nor legal authority, to support a punitive damages claim against WITTMAN or COUNTY OF TULARE. As such, PLAINTIFFS ask that judgment as to WITTMAN and COUNTY OF TULARE be entered accordingly. Moreover, PLAINTIFFS have also failed to present any facts which would support a award of punitive damages against RHYMAN and BAKER. As outlined above, and in DEFENDANTS' moving papers, the undisputed material facts show that RHYMAN and BAKER did not use excessive force against PLAINTIFFS. However, even if the court determines that PLAINTIFFS can survive summary judgment on their state and federal claims, punitive damages would still not be warranted as a matter of law based on the undisputed material facts. RHYMAN and BAKER do not deserve to be punished for opening fire into a moving vehicle, with its engine revving and wheels spinning, after shouting commands to stop, and after the failure of the driver of the vehicle, MEGARGEE, to raise his hands and surrender.

| | |
|---|---|
| Dated: March 14, 2008 | MCCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP |

By: _____/S/ Cassandra E. Hooks_____
Justus C. Spillner
Cassandra E. Hooks
Attorneys for Defendants
COUNTY OF TULARE, BILL WITTMAN, CHAD RHYMAN and DAN BAKER

99930/01066-1202776.v1