1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  STANLEIGH GEAN MEGARGEE,                    CASE NO. CV F 06-0684 LJO GSA
    et al.,
12                                              **SUMMARY JUDGMENT DECISION**
                         Plaintiffs,            _____(Doc. 106.)
13           vs.

14  BILL WITTMAN, et al.,

15                       Defendants.

16  _____/

17                              **INTRODUCTION**

18       Defendants County of Tulare ("County"), the County's Sheriff, and two County Sheriff's

19  Department deputies seek summary judgment/adjudication on plaintiffs' excessive force and negligence

20  claims arising from a shooting following a high speed chase.  Defendants contend that plaintiffs lack

21  sufficient evidence to support their claims.  Plaintiffs respond that factual disputes and differing versions

22  of the events preclude summary judgment/adjudication.  This Court considered defendants' summary

23  judgment/adjudication motion on the record[1] and VACATES the March 21, 2008 hearing, pursuant to

24  Local Rule 78-230(h).  For the reasons discussed below, this Court GRANTS in part and DENIES in

25  _____

26         [1]        This Court carefully reviewed and considered all arguments, points and authorities, declarations,
    depositions, exhibits, statements of undisputed and disputed facts and responses thereto, objections and other papers filed
    by the parties.  Omission of reference to an argument, document, paper or objection is not to be construed to the effect that
27  this Court did not consider the argument, document, paper or objection.  This Court thoroughly reviewed and considered the
    evidence it deemed admissible, material and appropriate for summary judgment/adjudication.
28

                                         1

part summary judgment/adjudication.

## BACKGROUND

### Summary

This action arises out of the June 6, 2005 shooting of plaintiffs Stanleigh Gean Megargee (Mr. Megargee"), then age 17, and Katie Taylor ("Ms. Taylor"), then age 15, by defendants Chad Rhyman ("Deputy Rhyman") and Dan Baker ("Deputy Baker"), then deputy sheriffs with the County Sheriff's Department.   Defendant Bill Wittman ("Sheriff Wittman") was Sheriff of the County Sheriff's Department at the time of the shooting.[2]

### Plaintiffs' Burglary And Flight

During the evening of June 5, 2005, Mr. Megargee and Ms. Taylor (collectively "plaintiffs") and two other teens had smoked marijuana and methamphetamine. On the morning of June 6, 2005, plaintiffs and their companions committed a Visalia area residential burglary and fled the scene in a stolen truck driven by Mr. Megargee.

Deputies Rhyman and Baker received a report of an interrupted burglary and in separate patrol cars pursued the stolen truck after it exited an orchard in rural Tulare County.   During a 15-minute vehicle chase, plaintiffs indicated no desire to yield to the pursuing deputies.  Plaintiffs passed through numerous residential streets, drove into oncoming traffic, and turned into a residential cul de sac, North Selina Court in Visalia, followed by Deputies Rhyman and Baker.[3]  No officers or bystanders were injured during the vehicle pursuit.  Mr. Megargee turned into a residence driveway at the end of the cul de sac and made a u-turn.  Plaintiffs claim that Deputies Rhyman and Baker's vehicles and a residence blocked potential escape.

The parties and eyewitnesses offer differing versions of the events surrounding the ensuing shooting of plaintiffs.

---

[2]        The County, Sheriff Wittman and Deputies Rhyman and Baker will be referred to collectively as "defendants."

[3]        Defendants claim that plaintiffs nearly hit a pedestrian and point to Ms. Taylor's deposition testimony that: "I remember on Simmon Road there's a guy that stood in the middle of the road and before he got out in the middle of the road, I told [Mr. Megargee], 'Don't hit him,' but that's all I said was, 'Don't hit him.'" Plaintiffs disagree that they nearly hit a pedestrian.

### Deputies Rhyman And Baker's Version Of Events

Deputy Rhyman claims that as he neared the truck in the driveway, Mr. Megargee twice lunged the truck and impacted Deputy Rhyman's vehicle to attempt to exit the cul de sac. Deputy Rhyman exited his vehicle, drew his baton and stood next to his vehicle. Deputy Rhyman does not recall if he used his baton to smash the driver's window of the truck. Mr. Megargee moved the truck forward to strike Deputy Rhyman's legs, which was observed by Deputy Baker who recalls one of Deputy Rhyman's legs was struck but he does not remember which. Deputy Baker estimated that the truck moved two to ten miles an hour when it struck Deputy Rhyman.

Deputies Rhyman and Baker drew their handguns and loudly ordered Mr. Megargee to stop the truck. Mr. Megargee neither put up his hands nor indicated that he surrendered. Deputies Rhyman and Baker feared for their safety and began to shoot into the truck when the truck struck Deputy Rhyman's leg. Deputy Rhyman shot at Mr. Megargee from the driver's side of the truck. Deputy Rhyman believed that Deputy Baker's life was in danger and that Deputy Baker was somewhere behind him but he could not recall how far.

Deputies Rhyman and Baker fired 18 shots into the truck.

### Ms. Taylor's Version Of Events

According to Ms. Taylor, the truck never contacted Deputy Rhyman or Deputy Baker and Deputies Rhyman and Baker's patrol cars collided with the stopped truck in that one patrol car's front bumper hit the truck's front bumper on the passenger's side and the other patrol car's front bumper rammed the truck's passenger side. The truck did not move between when it was struck by the patrol cars and a truck occupant jumped out of the truck and surrendered. Officer Rhyman exited his vehicle, used his baton to shatter the driver's side window and pointed his gun at the truck. The truck remained stationary as Deputies Rhyman and Baker pointed guns at the occupants, two of whom threw their hands in the air. Seconds later, Officers Rhyman and Baker opened fire to strike the three remaining occupants.

### Passenger Dennis Carter's Version Of Events

According to Dennis Carter ("Mr. Carter"), a truck occupant, the truck never contacted Deputy Rhyman or Deputy Baker and never struck a patrol car in that a patrol car collided with the truck and

1  disabled it.  Mr. Carter jumped out of the truck after it was disabled and surrendered, and Deputies

2  Rhyman and Baker started shooting approximately 15 seconds after the truck was disabled.

3                    **Neighbor Cecilia Rendon's Version Of Events**

4         Cecila Rendon ("Ms. Rendon") lives on North Selina Court, the cul de sac street, and witnessed

5  the shooting from her home's front porch.  According to Ms. Rendon, the truck did not strike Deputy

6  Rhyman or Deputy Baker.  Ms. Rendon does not characterize the contact between the vehicles as a

7  collision but more like one car was "pushing."  When Deputies Rhyman and Baker began shooting, the

8  truck wheels were spinning but the truck did not move.  The truck rolled forward after shots were fired.

9                    **Neighbor Greg Flores Jr.'s Version Of Events**

10        Greg Flores Jr. ("Mr. Flores") is Ms. Rendon's step son and lives with her on North Selina Court.

11 Mr. Flores ran to the front porch when he heard the vehicles' commotion.  Mr. Flores did not see the

12 truck run into Deputy Rhyman or Deputy Baker.  Mr. Flores observed that the truck was stopped and

13 that Deputies Rhyman and Baker stood outside the truck with weapons drawn.  Mr. Flores never saw

14 the truck move and it was stationary when Deputies Rhyman and Baker opened fire.

15                    **Neighbor Roger Lee's Version Of Events**

16        On June 6, 2005, Roger Lee ("Mr. Lee") visited his son, daughter-in-law and grandchildren who

17 live on North Selina Court.  Mr. Lee arrived and exited his vehicle when the truck and patrol cars

18 reached the cul de sac.  Mr. Lee observed that the truck never struck Deputy Rhyman or Deputy Baker

19 and that Deputies Rhyman and Baker positioned their vehicles to prevent the truck to exit the cul de sac.

20 One of the patrol vehicles struck and stopped the truck from leaving the area.  The truck backed up

21 slightly and stopped, and Mr. Lee heard the truck rev its engine as if it was out of gear. Deputies Rhyman

22 and Baker exited their patrol vehicles and opened fire 30-60 seconds after the truck remained immobile.

23                    **Neighbor Maureene Lee's Version Of Events**

24        Maureene Lee ("Ms. Lee") is Mr. Lee's daughter-in-law and observed the incident from her

25 living room window.  Ms. Lee observed the truck stuck in a planter where its wheels spun.  The truck

26 remained stuck in the planter and was no more than 10-15 feet from Deputies Rhyman and Baker when

27 they opened fire.

28 / / /

**Plaintiffs' Injuries**

Plaintiffs claim that Mr. Megargee was struck in the chest, rendered unconscious and slumped against the steering wheel. Plaintiffs contend that Deputies Rhyman and Baker shot Mr. Megargee in the head at close range. Ms. Taylor was shot three times and sustained severe upper leg injuries.

Immediately after the shooting and prior to removing Mr. Megargee from the truck, an officer checked Mr. Megargee's pulse. Defendants claim that seconds after the shooting, additional officers and paramedics arrived and treated plaintiffs. Plaintiffs point to Ms. Rendon's testimony that medical personnel arrived 20-30 minutes after the shooting. Plaintiffs claim that after Mr. Megargee was removed from the truck, officers dropped him to the pavement. Ms. Taylor claims that although she was missing a leg bone following the shooting, two officers which initially assisted her out of the truck abandoned her to cause her to fall to the ground.

Mr. Megargee underwent a partial lobotomy to remove 25 percent of his brain. Mr. Megargee's cognitive and reasoning skills have been destroyed, and his motor skills have been permanently and vastly impaired.

**Sheriff Wittman**

Sheriff Wittman was not present at the shooting or when medical care was rendered. Sheriff Wittman did not direct Deputies Rhyman and Baker to perform actions in connection with plaintiffs' shooting and medical care and was not personally involved in Deputies Rhyman and Baker's training or supervision. Sheriff Wittman does not know whether Deputies Rhyman and Baker received training regarding use of deadly force. More generally, Sheriff Wittman does not know: (1) which of his deputies have been trained on any particular topic; (2) who is responsible to train deputies on use of deadly force; or (3) whether deputies received formal training on use of deadly force. Sheriff Wittman has never personally trained deputies on use of deadly force.

**Sheriff's Department Policies And Procedures**

Defendants' expert Ph.D. criminologist Ron Martinelli ("Dr. Martinelli") opines that the General Operations Manual ("manual") of the County Sheriff's Department, including the manual's vehicle pursuit and use of force provisions, conform to federal and state law. Prior to plaintiffs' shootings, Deputies Rhyman and Baker were familiar with the manual's police pursuit provisions.

1    Deputies Rhyman and Baker attended 10-week field training prior to becoming patrol officers
2    and have received vehicle pursuit and use of deadly force training.  County Sheriff's Department
3    Lieutenant Richard Matthews ("Lt. Matthews") was responsible to train officers, including Deputies
4    Rhyman and Baker, regarding use of deadly force.  Plaintiffs note that Lt. Matthews trained Deputies
5    Rhyman and Baker to use deadly force when they subjectively believed it was warranted in that "an
6    officer has to determine whether or not he feels the fear for his life or the life of others and be able to
7    articulate that fear."  Deputies Rhyman and Baker are aware that deadly force is authorized to prevent
8    death or serious bodily injury to themselves or another person.

9                                        **Plaintiffs' Claims**

10    Plaintiffs claim that their injuries resulted from excessive force which the County and Sheriff
11    Wittman impliedly authorized or approved.  Plaintiffs fault Deputies Rhyman and Baker's use of deadly
12    force when less severe methods to control the situation were readily apparent, including shooting the
13    truck's tires.  Plaintiffs proceed on their second amended complaint ("SAC") to allege 42 U.S.C. § 1983
14    ("section 1983") excessive force and state tort causes of action addressed below.  Plaintiffs seek
15    compensatory, general and punitive damages and attorney fees.  Defendants contend that plaintiffs lack
16    sufficient evidence to support their claims.

17                                        **DISCUSSION**

18                         **Summary Judgment/Adjudication Standards**

19    F.R.Civ.P. 56(b) permits a party against whom relief is sought to seek "summary judgment on
20    all or part of the claim."  Summary judgment/adjudication is appropriate when there exists no genuine
21    issue as to any material fact and the moving party is entitled to judgment/adjudication as a matter of law.
22    F.R.Civ.P. 56(c); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348,
23    1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).
24    The purpose of summary judgment/adjudication is to "pierce the pleadings and assess the proof in order
25    to see whether there is a genuine need for trial."  *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct.
26    1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).
27    On summary judgment/adjudication, a court must decide whether there is a "genuine issue as to
28    any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56(c);

*Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). The evidence of the party opposing summary judgment/adjudication is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

To carry its burden of production on summary judgment/adjudication, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *See Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make

1  the showing sufficient to establish the existence of an element essential to that party's case, and on

2  which that party will bear the burden of proof at trial.") "But if the nonmoving party produces enough

3  evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan*

4  *Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.  "The amount of evidence

5  necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the

6  parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (quoting

7  *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592 (1968)). "The mere

8  existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*,

9  477 U.S. at 252, 106 S.Ct. 2505.

10  Under F.R.Civ.P. 56(d)(2), a summary judgment/adjudication motion, interlocutory in character,

11  may be rendered on the issue of liability alone.  "In cases that involve . . . multiple causes of action,

12  summary judgment may be proper as to some causes of action but not as to others, or as to some issues

13  but not as to others, or as to some parties, but not as to others." *Barker v. Norman*, 651 F.2d 1107, 1123

14  (5th Cir. 1981); *see also Robi v. Five Platters, Inc.*, 918 F.2d 1439 (9th Cir. 1990); *Cheng v.*

15  *Commissioner Internal Revenue Service*, 878 F.2d 306, 309 (9th Cir. 1989).  A court "may grant

16  summary adjudication as to specific issues if it will narrow the issues for trial." *First Nat'l Ins. Co. v.*

17  *F.D.I.C.*, 977 F.Supp. 1051, 1055 (S.D. Cal. 1977).

18  _____As discussed below, plaintiffs have raised disputed issues of material fact to preclude summary

19  judgment/adjudication on most of plaintiffs' claims.

20  **Section 1983 Excessive Force Cause Of Action Against Deputies Rhyman And Baker**

21  ***Reasonableness Standard***

22  The SAC's (first) section 1983 cause of action alleges that Deputies Rhyman and Baker used

23  deadly excessive force to violate plaintiffs' Fourth Amendment rights.  Deputies Rhyman and Baker

24  argue that under the circumstances, their use of deadly force was reasonable.  Plaintiffs respond that

25  under clear law at the time of the shooting, use of deadly force under the circumstances was

26  unreasonable and unconstitutional and that disputed factual issues bar summary judgment/adjudication

27  for Deputies Rhyman and Baker.

28  In *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865 (1989), the United States Supreme

Court determined that section 1983 excessive force claims are addressed under the Fourth Amendment's

reasonableness standard, not the Fourteenth Amendment's substantive due process standard:

> [A]ll claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach.  Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

In *Graham*, 490 U.S. at 396-397, 109 S.Ct. 1865, the United States Supreme Court provided

guidance on reasonableness of use of force:

> Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. . . .
>
> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight. . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.
>
> As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.  (Citations omitted.)

A section 1983 excessive force plaintiff must establish, as part of his affirmative case, the

unreasonableness of the force used. *Miller v. Taylor,* 877 F.2d 469, 471-472 (6th Cir.1989) ("Plaintiff

here was required to show that [defendant] Officer Taylor's use of force was unjustified in order to state

a constitutional deprivation.").

In *Tennessee v. Garner*, 471 U.S. 1, 11-12, 105 S.Ct. 1694 (1985), the United States Supreme

Court also explained:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force.  Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

To determine whether a plaintiff's Fourth Amendment rights were violated, a court must consider whether the defendant officers had probable cause to believe that the plaintiff posed a significant threat of death or serious physical injury to themselves or others, and used reasonable force to alleviate that threat. *Herrera v. Las Vegas Metropolitan Police Dept.,* 298 F.Supp.2d 1043, 1049-1050 (D.Nev. 2004).

"However, a simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001), *cert. denied*, 536 U.S. 958, 122 S.Ct. 2660 (2002). The Ninth Circuit has admonished that "a court may not simply accept what may be a self-serving account by the police officer. It must also look at the circumstantial evidence that, if believed, would tend to discredit the police officer's story, and consider whether this evidence could convince a rational factfinder that the officer acted reasonably." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994), *cert. denied*, 515 U.S. 1159, 115 S.Ct. 2612 (1995).; *see Ting v. United States*, 927 F.2d 1504, 1510 (9th Cir. 1991) ("We need not decide whether the shooting of [plaintiff] Ting would be objectively reasonable under [officer] Burns' version of the facts because material questions exist regarding the circumstances of the shooting.")

To support the reasonableness of their use of deadly force, Deputies Rhyman and Baker note that plaintiffs:

1. Committed a residential burglary and engaged in a high speed chase through residential streets;

2. Endangered the safety of others to evade officers and drove into oncoming traffic;

3. Led Deputies Rhyman and Baker to a residential cul de sac where Mr. Megargee used the truck to ram Deputy Rhyman and his vehicle;

4. Ignored orders to raise their hands and warnings prior to shooting; and

5. Could have been retrieving a weapon other than the truck.

Deputies Rhyman and Baker note that they justifiably feared for their safety and the safety of each other, warned plaintiffs prior to shooting, acted in self-defense and to prevent plaintiffs' escape, and reasonably believed that Mr. Megargee headed the truck toward Deputies Rhyman and Baker. Deputies Rhyman

10

and Baker contend that whether the truck moved seconds before the shooting is "immaterial." "Even unarmed, [plaintiff] was not harmless; a car can be a deadly weapon." *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir.), *cert. denied*, 504 U.S. 915, 112 S.Ct. 1954 (1992).

To support unreasonableness of Deputies Rhyman and Baker's use of deadly force, plaintiffs point to disputed testimony that:

1. The truck contacted neither Deputy Rhyman nor Deputy Baker;

2. The truck contacted neither patrol car and did not initiate a collision with either patrol car;

3. At least one patrol car struck and disabled the truck;

4. The truck was stuck, disabled and stationary when Deputies Rhyman and Baker fired; and

5. The truck had been stationary for up to 60 seconds prior to when Deputies Rhyman and Baker fired.

At a minimum, plaintiffs have raised genuine issues of material fact whether Deputies Rhyman and Baker's resort to deadly force was reasonable. Viewed in plaintiffs' favor, the evidence suggests that the truck was stationary and perhaps incapable of moving when Deputies Rhyman and Baker fired and that at least one weaponless occupant had exited the truck and surrendered. Despite Deputies Rhyman and Baker's contention, whether the truck was moving or disabled and stationary is material to the issue of reasonableness of force. As such, question remains whether plaintiffs posed a threat to Deputies Rhyman and Baker.

There is no evidence that the truck posed a threat to third-parties in the moments prior to the shooting since eyewitnesses appeared to have viewed the scene in comfortable safety. Plaintiffs have produced evidence that the truck was unable to escape, or at a minimum, could not escape easily. Although Deputies Rhyman and Baker characterize the truck as a weapon, plaintiffs have produced evidence to question whether it was used as such and the degree of injury, if any, to Deputy Rhyman from alleged contact with the truck. The evidence poses questions as to Deputies Rhyman and Baker's objective reasonableness to fire 18 shots into the truck under the circumstances. Deputies Rhyman and Baker are not entitled to summary judgment/adjudication on grounds that they reasonably used deadly

11

1  force.

2  *Qualified Immunity*

3  Deputies Rhyman and Baker contend that they are entitled to qualified immunity in that they

4  reasonably believed their conduct was constitutionally permissible.   Plaintiffs challenge qualified

5  immunity and note that Deputies Rhyman and Baker are entitled to qualified immunity "only if,

6  accepting the version of the evidence most favorable to plaintiffs, the law prohibiting Rhyman and

7  Baker's conduct was not clearly established as of June 6, 2005."

8  Qualified immunity protects section 1983 defendants "from liability for civil damages insofar

9  as their conduct does not violate clearly established statutory or constitutional rights of which a

10  reasonable person would have known." *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 943 (9th Cir.

11  2004).  The "heart of qualified immunity is that it spares the defendant from having to go forward with

12  an inquiry into the merits of the case.  Instead, the threshold inquiry is whether, assuming that what the

13  plaintiff asserts the facts to be is true, any allegedly violated right was clearly established." *Kelley v.*

14  *Borg*, 60 F.3d 664, 666 (9th Cir. 1995).

15  The issue of qualified immunity is "a pure question of law." *Elder v. Holloway*, 510 U.S. 510,

16  514, 114 S.Ct. 1019 (1994); *Romero v. Kitsap County*, 931 F.2d 624, 627-628 (9th Cir. 1991).  The Ninth

17  Circuit has explained:

18  Under *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001),
the first step in the qualified immunity analysis is "to consider the materials submitted
19  in support of, and in opposition to, summary judgment in order to decide **whether a
constitutional right would be violated** if all facts are viewed in favor of the party
20  opposing summary judgment." *Jeffers v. Gomez*, 267 F.3d 895, 909 (9th Cir. 2001).  "If
no constitutional violation is shown, the inquiry ends."   *Cunningham v. City of*
21  *Wenatchee*, 345 F.3d 802, 810 (9th Cir. 2003).  On the other hand, if "the parties'
submissions" create a triable issue of whether a constitutional violation occurred, the
22  second question is "**whether the right was clearly established**." *Saucier*, 533 U.S. at
201, 121 S.Ct. 2151.  A constitutional right is clearly established when "it would be clear
23  to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*
at 202, 121 S.Ct. 2151.

24

25  *Squaw Valley*, 375 F.3d at 943 (bold added).

26  The "contours" of the allegedly violated right "must be sufficiently clear that a reasonable official

27  would understand that what he is doing violates that right. . . . [I]n the light of preexisting law the

28  unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039 (1987).

"The question is what the officer reasonably understood his powers and responsibilities to be, when he acted under clearly established standards." *Saucier v. Katz*, 533 U.S. 194, 208, 121 S.Ct. 2151 (2001). "If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." *Saucier*, 533 U.S. at 205, 121 S.Ct. 2151. "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 599 (2004).

"If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier*, 533 U.S. at 202, 121 S.Ct. at 2156-2157. However, determination of qualified immunity on summary judgment/adjudication is improper if there are disputes "as to the facts and circumstances." *See Acosta v. City and County of San Francisco*, 83 F.3d 1143, 1147, n. 10 (9th Cir.), *cert. denied*, 519 U.S. 1009, 117 S.Ct. 514 (1996).

Turning to an excessive force claim, the first stage of the qualified immunity analysis inquires "whether it would be objectively reasonable for the officer to believe that the amount of force employed was required by the situation he confronted. . . . That is, the first step in the analysis is an inquiry into the objective reasonableness of the officer's belief in the *necessity* of his actions, and there is no Fourth Amendment violation if the officer can satisfy this standard." *Wilkins v. City of Oakland*, 350 F.3d 949, 954 (9th Cir. 2003), *cert. denied*, 125 S.Ct. 43 (2004).

Although "reasonableness traditionally is a question of fact for the jury," a defendant can prevail on summary judgment if the court "concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." *Scott*, 39 F.3d at 915.

Deputies Rhyman and Baker argue the absence of a constitutional violation in that under the totality of circumstances, they reasonably used deadly force to prevent plaintiffs to use the truck to injure Deputies Rhyman and Baker and to escape. Deputies Rhyman and Baker contend that even if they were mistaken as to what the law required, they were "objectively justified in their use of deadly force to prevent PLAINTIFFS from using their stolen truck as a weapon" in that Deputies Rhyman and Baker feared for their safety.

1    As discussed above, plaintiffs have raised triable issues whether Deputies Rhyman and Baker

2    violated plaintiffs' Fourth Amendment rights.  As such, this Court turns its focus to whether such rights

3    were clearly established, that is, whether a reasonable officer would understand that his conduct was

4    unlawful under the circumstances.  In absence of a noted dispute, the parties appear to agree on the

5    clearly established rights on use of deadly force.  The parties disagree on the facts and whether they give

6    rise to use of deadly force.  The bona fide factual disputes outlined above surrounding the shootings bar

7    qualified immunity in that questions remain whether use of deadly force was reasonable.  Plaintiffs

8    present evidence to raise factual questions whether reasonable officers would understand that they could

9    fire 18 rounds into plaintiffs' vehicle when the evidence, resolved in plaintiffs' favor, suggests that the

10   truck could not be used as a weapon or a means to escape. Factual issues arise whether Deputies Rhyman

11   and Baker were mistaken to use deadly force or misapprehended the need for deadly force and if so,

12   whether such mistake or misapprehension was reasonable.  Evaluating the evidence in plaintiffs' favor,

13   this Court is unable to conclude that Deputies Rhyman and Baker's use of deadly force was objectively

14   reasonable under the circumstances to entitle them to qualified immunity.

15             **Section 1983 Excessive Force Cause Of Action Against Sheriff Wittman**

16             The SAC's (first) section 1983 cause of action alleges that Sheriff Wittman: (1) impliedly

17   authorized and/or approved Deputies Rhyman and Baker's excessive force; (2) failed to properly

18   supervise and train Deputies Rhyman and Baker; and (3) failed to prevent harm and abuse from known

19   County Sheriff's Department customs, practices and policies to use unlawful and unreasonable excessive

20   force.

21             Sheriff Wittman contends there is no causal connection between his conduct and plaintiffs'

22   alleged constitutional deprivations.  Sheriff Wittman notes the absence of allegations that he was

23   personally involved to cause plaintiffs' injuries and that he was not present during the pursuit, shooting

24   or medical care of plaintiffs.  Sheriff Wittman argues that in the absence of section 1983 respondeat

25   superior liability, plaintiffs are limited to a claim arising from a causal connection between his wrongful

26   supervisory conduct and the constitutional violation.

27             Liability for a constitutional tort "arises only upon a showing of personal participation by the

28   defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Generally, supervisory personnel are

14

1  not liable under section 1983 for actions of their employees under a respondeat superior theory, and thus,

2  when a named defendant holds a supervisory position, the causal link between him and the claimed

3  constitutional violation must be specifically alleged and proved.  *See Fayle v. Stapley*, 607 F.2d 858, 862

4  (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941, 99

5  S.Ct. 2883 (1979).

6      As an initial premise, Sheriff Wittman argues that he did not engage in wrongful conduct in the

7  absence of Deputies Rhyman and Baker's constitutional violations.  Sheriff Wittman argues that if

8  Deputies Rhyman and Baker did not use unreasonable force, Sheriff Wittman is not liable for failure to

9  train or supervise them.  Sheriff Wittman also points out that he "did not supervise, train or have any

10  personal involvement in the decisions that RHYMAN and BAKER made on the date of the subject

11  incident."

12      Plaintiffs neither oppose nor challenge meaningfully the absence of Sheriff Wittman's liability

13  under the (first) section 1983 cause of action.  As such, Sheriff Wittman is entitled to summary

14  judgment/adjudication on the (first) 1983 cause of action.

15  ### Section 1983 Entity Liability (*Monell)* Cause Of Action Against The County

16      The SAC's (second) section 1983 entity liability cause of action alleges that the County: (1)

17  impliedly authorized and/or approved Deputies Rhyman and Baker's excessive force; and (2) failed to

18  properly supervise and train Deputies Rhyman and Baker in use of force.

19      A local government unit may not be held liable for the acts of its employees under a respondeat

20  superior theory.  *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018

21  (1978); *Davis v. Mason County*, 927 F.2d 1473, 1480 (9th Cir.), *cert. denied*, 502 U.S. 899, 112 S.Ct.

22  275 (1991); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989).  "[A] municipality

23  cannot be held liable *solely* because it employs a tortfeasor."  *Monell*, 436 U.S. at 691, 98 S.Ct. at 2018.

24  The local government unit "itself must cause the constitutional deprivation."  *Gilette v. Delmore*, 979

25  F.2d 1342, 1346 (9th Cir. 1992), *cert. denied*, 510 U.S. 932, 114 S.Ct. 345 (1993).  Because liability of

26  a local governmental unit must rest on its actions, not the actions of its employees, a plaintiff must go

27  beyond the respondeat superior theory and demonstrate that the alleged constitutional violation was the

28  product of a policy or custom of the local governmental unit.  *City of Canton, Ohio v. Harris*, 489 U.S.

378, 385, 109 S.Ct. 1197 (1989); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-480, 106 S.Ct. 1292 (1986).  To maintain a section 1983 claim against a local government, a plaintiff must establish the requisite culpability (a "policy or custom" attributable to municipal policymakers) and the requisite causation (the policy or custom as the "moving force" behind the constitutional deprivation).  *Monell*, 436 U.S. at 691-694, 98 S.Ct. 2018; *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002).

A plaintiff can establish a "policy or custom" by showing: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.  *Gable*, 296 F.3d at 537; *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994).  "[O]fficial policy must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983."  *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445 (1981) (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. 2018)); *see Rizzo v. Goode*, 423 U.S. 362, 370-377, 96 S.Ct. 598 (1976) (general allegation of administrative negligence fails to state a constitutional claim cognizable under section 1983).  "Only if a plaintiff shows that his injury resulted from a 'permanent and well-settled' practice may liability attach for injury resulting from a local government custom."  *Thompson*, 885 F.2d at 1444.  A "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  *Bryan County Commissioners v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382 (1997).  A plaintiff must demonstrate that a defendant's policy was "closely related to the ultimate injury."  *Harris*, 489 U.S. at 391, 109 S.Ct. at 1206.  "At the very least there must be an affirmative link between the policy and particular constitutional violation." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427 (1985).

The County faults an absence of evidence that a policy or custom caused a constitutional violation.  The County argues, and plaintiffs do not dispute, that the County Sheriff's Department manual, in particular its use of force and vehicle pursuit sections, conformed with federal and state law. The County points out that the manual authorizes use of deadly force "[w]hen it reasonably appears necessary for the defense of another" and to "prevent the escape of a serious felon when the deputy has

1    probable cause to believe that the suspect poses a significant threat of death or serious physical injury

2    to the deputy or others."

3           Plaintiffs responds "there is a triable issue of fact as to whether the County of Tulare interprets

4    its policy to permit the use of deadly force when an officer *subjectively* believes that he or she faces an

5    imminent threat of death or great bodily harm." (Italics in original.)  Plaintiffs point to the deposition

6    testimony of Lt. Matthews, who trained County deputies, including Deputies Rhyman and Baker, on use

7    of deadly force:

8    Q.     Did you provide instruction that would help them determine whether or not there was potential

9           for great bodily injury?

10   A.     . . . the officer has to determine whether or not he feels the fear for his life or the life of others

11          and be able to articulate that fear.

12          . . .

13   Q.     But was it your instruction during the segment that the officers could or should use deadly force

14          when they feared that they were in jeopardy of great bodily harm or that a member of the public

15          was in great bodily harm?

16   A.     If they felt that fear, yes.  But what is fearsome for me after 29 years, and what's fearsome for

17          someone with 11 years or 10 years or 9 years, I can't speculate on that.

18   Q.     So your understanding would be that it depends on the person, different people perceive different

19          things?

20   A.     That is correct.

21          Plaintiffs are correct.  Lt. Matthews' testimony creates ambiguity whether the County applied

22   a subjective, rather than objective, standard for use of deadly force.  As such, a factual question arises

23   whether plaintiffs' exposure to excessive deadly force was the product of a policy or widespread practice

24   so well settled to constitute a County custom.  A subjective use of deadly force policy or practice is

25   closely related to plaintiffs' ultimate injuries to preclude the County summary judgment/adjudication

26   on the (second) *Monell* cause of action.

27                    **Section 1983 Official Capacity Cause Of Action Against Sheriff Wittman**

28          The SAC alleges a (second) section 1983 "official liability" cause of action against Sheriff

Wittman and realleges against him the (first) section 1983 cause of action allegations.  Sheriff Wittman

seeks dismissal of the second cause of action as redundant in that it is also against the County.

Official-capacity suits "generally represent only another way of pleading an action against an

entity of which an officer is an agent."  *Monell*, 436 U.S. at 690, n. 55, 98 S.Ct. 2018.  Local government

officials sued in their official capacities are "persons" under section 1983 in cases where a local

government would be suable in its own name.  *Monell*, 436 U.S. at 690, n. 55, 98 S.Ct. 2018.  "For this

reason, when both an officer and the local government entity are named in a lawsuit and the officer is

named in official capacity only, the officer is a redundant defendant and may be dismissed."  *Luke v.*

*Abbott*, 954 F.Supp. 202, 203 (C.D. Cal. 1997) (citing *Vance v. County of Santa Clara*, 928 F.Supp. 993,

996 (N.D. Cal. 1996)).

"[I]t is no longer necessary or proper to name as a defendant a particular local government

officer acting in official capacity."  *Luke*, 954 F.Supp. at 204.  As the district court in *Luke*, 954 F.Supp.

at 204, explained:

> A plaintiff cannot elect which of the defendant formats to use. If both are named, it is
> proper upon request for the Court to dismiss the official-capacity officer, leaving the
> local government entity as the correct defendant. If only the official-capacity officer is
> named, it would be proper for the Court upon request to dismiss the officer and substitute
> instead the local government entity as the correct defendant.

Plaintiffs do not oppose Sheriff Wittman's points as to a redundant defendant.  Plaintiffs argue

that Sheriff Wittman "may be liable for putting Rhyman and Baker on patrol without a proper

understanding of the permissible use of deadly force.  *See Hopkins v. Andaya*, 958 F.2d 881, 888 (9th Cir.

1992)."  The *Andaya* decision relied upon by plaintiffs is dubious given that other courts disagree with

it and recognize it as overruled.  *See Martinez v. County of Los Angeles*, 47 Cal.App.4th 334, 54

Cal.Rptr.2d 772 (1996); *Carter v. County of Orange*, 2005 WL 1871119 (2005).  Plaintiffs fail to

substantiate section 1983 official liability claims against Sheriff Wittman.

**Immunity To State Law Claims**

Defendants contend they are immune to the SAC's following claims based on state law:

1.      (Third) negligent hiring, training, supervision and retention cause of action against the

County and Sheriff Wittman;

2.      (Fourth) negligence cause of action against all defendants;

1    3.    (Fifth) vicarious liability cause of action against the County and Sheriff Wittman;

2    4.    (Sixth) battery cause of action against Deputies Rhyman and Baker; and

3    5.    (Seventh)[4] failure to provide medical care cause of action against all defendants.

4  More specifically, defendants claim that Deputies Rhyman and Baker acted reasonably to entitle them,

5  and in turn, the County and Sheriff Wittman to immunity under California law.

6    Plaintiffs respond that defendants fail to substantiate that California law immunizes defendants

7  from excessive force claims.  Plaintiffs note that under California law, peace officers are liable for

8  unreasonable force even if they believed they acted within the law.

9    "Except as otherwise provided by statute, a public employee is not liable for an injury resulting

10  from his act or omission where the act or omission was the result of the exercise of the discretion vested

11  in him, whether or not such discretion be abused."  Cal. Gov. Code, § 820.2.  A public employee's

12  liability "is subject to any defenses that would be available to the public employee if he were a private

13  person."  Cal. Gov. Code, § 820(b).

14    Generally, "a public entity is not liable for an injury resulting from an act or omission of an

15  employee of the public entity where the employee is immune from liability."  Cal. Gov. Code, §

16  815.2(b).  A public entity "is subject to any immunity of the public entity provided by statute . . . and

17  is subject to any defenses that would be available to the public entity if it were a private person."  Cal.

18  Gov. Code, § 815(b).

19    Defendants argue that California Government Code section 820.2 ('section 820.2") immunity

20  protects policy decisions and planning in the decision making process.  As to section 820.2 immunity,

21  the California Supreme Court has explained:

22       In enacting section 820.2, the Legislature clearly has provided for immunity for injuries
         caused by acts or omissions that are the result of a public employee's exercise of
23       discretion, as that term is used in section 820.2. In determining whether discretionary act
         immunity applies with regard to the acts of a public employee, courts must consider
24       whether the acts or omissions of the particular employee resulted from the exercise of
         discretion within the meaning of section 820.2.
25

26  *Barner v. Leeds*, 24 Cal.4th 676, 684, 102 Cal.Rptr.2d 97 (2000).

27  _____

28    [4]    The SAC mislabels the seventh cause of action as a second sixth cause of action.

1      "[A] discretionary act is one which requires the exercise of judgment or choice.  Discretion has

2 also been defined as meaning equitable decision of what is just and proper under the circumstances."

3 *C.N. v. Wolf*, 410 F.Supp.2d 894, 902 (C.D. Cal. 2005) (quoting *Burgdorf v. Funder*, 246 Cal.App.2d

4 443, 449, 54 Cal.Rptr. 805 (1966)).  Although "an officer has discretionary immunity against a third

5 party's claim for his failure to arrest an offender . . ., he does not have the same immunity against the

6 claim of the person arrested that the officer acted unreasonably in an arrest situation." *Scruggs v.*

7 *Haynes*, 252 Cal.App.2d 256, 266, 60 Cal.Rptr. 355 (1967).  Section 820.2 does not confer immunity

8 on peace officers for discretionary acts involving unreasonable use of force. *Estate v. Torres v. Terhune*,

9 2002 WL 32107949, 13 (E.D. Cal. 2002); *Price v. County of San Diego*, 990 F.Supp. 1230, 1244 (S.D.

10 Cal. 1998); *Scruggs*, 252 Cal.App.2d at 266, 60 Cal.Rptr. 355.  "California denies immunity to police

11 officers who use excessive force in arresting a suspect." *Robinson v. Solano County*, 278 F.3d 1007,

12 1017 (9th Cir. 2002).

13      Moreover, California "has rejected the *Monell* rule and imposes liability on counties under the

14 doctrine of respondeat superior for acts of county employees; it grants immunity to counties only where

15 the public employee would also be immune." *Robinson,* 278 F.3d at 1016.  A "governmental entity can

16 be held vicariously liable when a police officer acting in the course and scope of employment uses

17 excessive force or engages in assaultive conduct." *Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 215,

18 285 Cal.Rptr. 99 (1991).

19      Defendants attempt to sweep plaintiffs' five state law claims under a broad rug of immunity.

20 Defendants broadly argue that Deputies Rhyman and Baker acted reasonably to cloak all defendants with

21 immunity.  As outlined above, when resolved in plaintiffs' favor, factual issues predominate whether

22 Deputies Rhyman and Baker acted reasonably.  Defendants fail to address how state immunities apply

23 to plaintiffs' particular causes of action.  Defendants' failure to apply specifically state immunities to

24 plaintiffs' multiple claims bars summary judgment/adjudication that state immunities preclude plaintiffs'

25 state claims.

26           **Battery Cause Of Action Against Deputies Rhyman And Baker**

27      The SAC's (sixth) battery cause of action alleges that Deputies Rhyman and Baker engaged in

28 excessive force and conduct which "was wrongful, intentional, and done with substantial certainty of

1   causing apprehension by Plaintiffs of immediately harmful bodily contact constituting assault."

2       Deputies Rhyman and Baker contend that plaintiffs' (sixth) battery cause of action fails for the

3   same reasons as plaintiffs' (first) section 1983 excessive force cause of action.  Plaintiffs contend that

4   triable factual issues whether Deputies Rhyman and Baker's use of force was reasonable preclude

5   summary judgment/adjudication on plaintiffs' battery cause of action.

6       The elements of civil battery are: (1) defendant intentionally did an act which resulted in a

7   harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and

8   (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff.  *Piedra v. Dugan*,

9   123 Cal.App.4th 1483, 1495, 21 Cal.Rptr.3d 36 (2004); *Fluharty v. Fluharty*, 59 Cal.App.4th 484, 497,

10  69 Cal.Rptr.2d 244 (1997).  "[T]o prevail on a claim of battery against a police officer, the plaintiff bears

11  the burden of proving the officer used unreasonable force."  *Munoz*, 120 Cal.App.4th at 1102, 16

12  Cal.Rptr.3d 521.  A California peace officer "may use reasonable force to make an arrest, prevent escape

13  or overcome resistance, and need not desist in the face of resistance."  *Munoz*, 120 Cal.App.4th at 1102,

14  16 Cal.Rptr.3d 521 (citing Cal. Penal Code, § 835a).

15      In *Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1274, 74 Cal.Rptr.2d 614 (1998), the

16  California Court of Appeal explained evidentiary parallels between section 1983 excessive force and

17  state battery claims:

18      We share the view of the Missouri courts that " 'the officer in the first instance is the
        judge of the manner and means to be taken in making an arrest. Unless a plaintiff can
19      show that unnecessary force was used, courts will protect the officer.' " (Neal v.
        Helbling, supra, 726 S.W.2d at p. 487.)

20

21          This is the rule in federal civil rights actions under 42 United States Code section
        1983, the federal counterpart of state battery or wrongful death actions. ( Reynolds v.
22      County of San Diego (S.D.Cal. 1994) 858 F.Supp. 1064, 1069, affd. in part and
        remanded in part (9th Cir. 1996) 84 F.3d 1162.)

23

24      Thus, the question is whether a peace officer's actions were objectively reasonable based on the

25  facts and circumstances confronting the peace officer.  *Munoz*, 120 Cal.App.4th at 1103, 16 Cal.Rptr.3d

26  521.  To calculate whether force was excessive, a trier of fact must recognize that peace officers are

27  often forced to make split-second judgments, in tense circumstances, concerning the amount of force

28  needed.  *Edson*, 63 Cal.App.4th at 1273, 74 Cal.Rptr.2d 614.  A state battery claim is a counterpart to

1   federal excessive force claim, and in both, a plaintiff must prove unreasonableness of the peace officer's

2   conduct.  *Munoz*, 120 Cal.App.4th at 1102, n. 6, 16 Cal.Rptr.3d 521.

3          As discussed above in connection with plaintiffs' section 1983 excessive force claim, triable

4   factual issues exist whether Deputies Rhyman and Baker used reasonable force under the circumstances.

5   Such factual issues preclude summary judgment/adjudication for Deputies Rhyman and Baker on

6   plaintiffs' (sixth) battery cause of action.

## Negligence Cause Of Action Against Deputies Rhyman And Baker

8          The SAC's (fourth) negligence cause of action alleges that Deputies Rhyman and Baker were

9   negligent to resort to deadly force and to treat Mr. Megargee as if he had been fatally wounded.

10         The elements of a negligence cause of action are: (1) a legal duty to use due care; (2) a breach

11  of such legal duty; (3) the breach was the proximate or legal cause of the resulting injury; and (4) actual

12  loss or damage resulting from the breach of the duty of care.  *See Ladd v. County of San Mateo*, 12

13  Cal.4th 913, 917, 50 Cal.Rptr.2d 309 (1996); *Hanson v. Grode*, 76 Cal.App.4th 601, 606, 90 Cal.Rptr.2d

14  396 (1999).  Police officers bear a duty "to use reasonable care in deciding to use and in fact using

15  deadly force."  *Munoz*, 120 Cal.App.4th at 1101, 16 Cal.Rptr.3d 521.  An "officer's lack of due care can

16  give rise to negligence liability for the intentional shooting death of a suspect."  *Munoz v. Olin*, 24

17  Cal.3d 629, 634, 156 Cal.Rptr. 727 (1979).  Determination whether an officer breached such duty is

18  "analyzed under the reasonableness standard of the Fourth Amendment to the United States

19  Constitution."  *Munoz*, 120 Cal.App.4th at 1102 and n. 6, 16 Cal.Rptr.3d 521 ("the plaintiff must prove

20  the unreasonableness of the officer's conduct").  A shooting victim plaintiff may pursue inconsistent

21  intentional tort and negligence claims against a police officer.  *See Munoz*, 24 Cal.3d at 635, 156

22  Cal.Rptr. 727.

23         Deputies Rhyman and Baker argue that plaintiffs' (fourth) negligence cause of action is barred

24  given that Deputies Rhyman and Baker acted reasonably under Fourth Amendment standards.  Plaintiffs

25  correctly point to triable factual issues whether Deputies Rhyman and Baker acted reasonably to deny

26  Deputies Rhyman and Baker summary judgment/adjudication on plaintiffs' negligence cause of action.

27  Of note, plaintiffs question Deputy Rhyman's exit of his patrol car with gun drawn if he feared for his

28  life after the truck twice struck Deputy Rhyman's patrol car.  As discussed below, plaintiffs are correct

that the County is subject to vicarious liability for Deputy Rhyman and Baker's alleged negligence. Plaintiffs do not oppose summary judgment/adjudication for Sheriff Wittman on the negligence cause of action, and as such, Sheriff Wittman is entitled to summary judgment/adjudication on plaintiffs' negligence cause of action.

### Vicarious Liability Cause Of Action Against The County And Sheriff Wittman

The (fifth) vicarious liability cause of action alleges that the County and Sheriff Wittman breached their duty to manage the County Sheriff's Department to prevent the alleged wrongs. The (fifth) vicarious liability cause of action further alleges that the County and Sheriff Wittman are responsible for the harm caused by Deputies Rhyman and Baker's wrongful conduct when acting within the scope of their County employment because the County and Sheriff Wittman approved the conduct after it occurred.

The County and Sheriff Wittman "assume" the (fifth) vicarious liability cause of action is based on California Government Code section 815.2(a): "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Pointing to California Government Code section 815.2(b), the County and Sheriff Wittman note that a public entity is not liable for injury resulting form its employee's wrong "where the employee is immune from liability." The County and Sheriff Wittman claim that since Deputies Rhyman and Baker used reasonable force and were not negligent, they are entitled to section 820.2 immunity. As such, the County and Sheriff Wittman argue they are also immune under California Government Code section 815.2.

California Government Code section 815.2 "makes a public entity vicariously liable for its employee's negligent acts or omissions within the scope of employment." *Eastburn v. Regional Fire Protection Authority*, 31 Cal.4th 1175, 1180, 80 P.3d 656 (2003); *Hoff v. Vacaville Unified Sch. Dist.*, 19 Cal.4th 925, 932, 80 Cal.Rptr.2d 811 (1998). However, liability of the employer only attaches if and when it is adjudged that the employee was negligent," and, although "public entities always act through individuals, that does not convert a claim for direct negligence into one based on vicarious liability." *Munoz*, 120 Cal.App.4th at 1113-1114, 16 Cal.Rptr.3d 521, 547; *Sanders*, 2006 WL 1883394 at *9.

1    Focusing on their battery and negligence claims, plaintiffs argue that the County is vicariously

2    liable under the doctrine of respondeat superior because Deputies Rhyman and Baker acted within the

3    scope of their County employment.  Plaintiffs do not oppose summary judgment/adjudication for Sheriff

4    Wittman on the (fifth) vicarious liability cause of action.

5    "Since the enactment of the California Tort Claims Act in 1963 (§ 810 et seq.), a governmental

6    entity can be held vicariously liable when a police officer acting in the course and scope of employment

7    uses excessive force or engages in assaultive conduct." *Mary M. v. City of Los Angeles*, 54 Cal.3d 202,

8    215, 285 Cal.Rptr. 99 (1991).  For the doctrine of respondeat superior to apply, the plaintiff must prove

9    the employee's tortious conduct was committed within the scope of employment." *Mary M.*, 54 Cal.3d

10    at 209, 285 Cal.Rptr. 99.

11    The County fails to negate its vicarious liability arising from Deputies Rhyman and Baker's

12    alleged battery and negligence occurring within the scope of their employment.  Given the factual issues

13    regarding the reasonableness of Deputies Rhyman and Baker's conduct, the County cannot avoid

14    vicarious liability at this summary judgment/adjudication stage.  In the absence of opposition, Sheriff

15    Wittman is entitled to summary judgment/adjudication on plaintiffs' (fifth) vicarious liability cause of

16    action.

17    **Failure To Provide Medical Care Cause Of Action**

18    The SAC's (seventh) failure to provide medical care cause of action alleges that all defendants

19    were deliberately indifferent to provide medical care for plaintiffs' gunshot wounds.  Defendants fault

20    the failure to provide medical care cause of action for an absence of sufficient supporting evidence.

21    Plaintiffs respond that Deputies Rhyman and Baker owed plaintiffs duties to aid plaintiffs after Deputies

22    Rhyman and Baker unjustifiably shot plaintiffs.  Plaintiffs argue that disputed factual issues as to the

23    care of plaintiffs prevent summary judgment/adjudication for Deputies Rhyman and Baker and the

24    County.

25    ***Deputies Rhyman And Baker And The County***

26    Defendants rely on California Health and Safety Code section 1799.106, which provides that

27    police officers "who render[] emergency medical services at the scene of an emergency shall only be

28    liable in civil damages for acts or omissions performed in a grossly negligent manner or acts or

1    omissions not performed in good faith" and that a public agency employing the police officer "shall not

2    be liable for civil damages if the . . . police officer . . . is not liable."  Under this statute, "gross

3    negligence means the failure to provide even scant care or an extreme departure from the ordinary

4    standard of conduct."  *Wright v. City of Los Angeles*, 219 Cal.App.3d 318, 343, 268 Cal.Rptr. 309

5    (1990).

6            Defendants contend that plaintiffs lack evidence of a "departure from the ordinary standard of

7    conduct, much less gross negligence."  Defendants point to Ms. Taylor's deposition testimony:

8            Q.      What did the police officers say after the shooting ended while you were still in

9                    the truck?

10           A.      "He's got a pulse."

11   Defendants argue that such testimony reveals that Mr. Megargee's "vital signs were taken at the first

12   possible opportunity prior to the paramedics arriving."  Defendants also point to Ms. Taylor's testimony

13   that paramedics provided medical care immediately after the shooting.  Defendants note there is no

14   evidence that Deputies Rhyman and Baker failed to provide medical care.  Based on the established

15   evidence, defendants conclude that plaintiffs were provided more than "scant care" to satisfy the gross

16   negligence standard and that the County is not liable under California Health and Safety Code section

17   1799.106 in the absence of Deputies Rhyman and Baker's gross negligence.

18           Plaintiffs respond that their claim is based on common law, not California Health and Safety

19   Code section 1799.106.  Plaintiffs point to this Court's prior comment: "Under California law, police

20   officers owe a duty to members of the public when the police created or increased the peril to members

21   of the public by the police's affirmative acts.  *McCorkle v. City of Los Angeles*, 70 Cal.2d 252 (1969);

22   *M.B. v. City of San Diego*, 233 Cal.App.3d 699, 705 (1991)."  Ms. Taylor points out that she fell to the

23   ground after two officers stopped assisting her exit the truck and that officers dropped Mr. Megargee to

24   the ground.  Plaintiffs point to the contradiction between defendants' claim that paramedics arrived

25   within seconds of the shooting and Ms. Rendon's testimony that 20-30 minutes expired prior to arrival

26   of medical personnel.

27           Although minimal, plaintiffs have produced evidence to raise a factual issue regarding their care

28   / / /

after the shooting and whether Deputies Rhyman and Baker were grossly negligent.[5]  This Court is not in a position to conclude that plaintiffs lack evidence or to weigh it.  Deputies Rhyman and Baker have not provided this Court a clear picture to decide in their favor on plaintiffs' (seventh) failure to provide medical care cause of action.  Plaintiffs have raised sufficient evidence to require a jury to resolve the parties' differing versions.

### *Supervisory Liability*

Turning to Sheriff Wittman, defendants point to the lack of evidence that he was personally involved in the shooting or in a position to render medical care or to supervise provision of medical care. Sheriff Wittman challenges his alleged supervisory liability in that under California Government Code section 820.8, generally "a public employee is not liable for an injury by the act or omission of another person." Sheriff Wittman further notes that even if he approved Deputies Rhyman and Baker's actions after their alleged failure to provide medical care, no damages arise from such after-the-fact approval. Sheriff Wittman concludes that since plaintiffs' claims against him in his individual capacity fail, claims against him in his official capacity are "in fact" against the County and are barred under California Health and Safety Code section 1799.106 in the absence of Deputies Rhyman and Baker's gross negligence.

Plaintiffs do no challenge summary judgment/adjudication in Sheriff Wittman's favor on the (seventh) failure to provide medical care cause of action.  As such, Sheriff Wittman is entitled to summary judgment/adjudication on the claim.

### Negligent Supervision Cause Of Action Against The County And Sheriff Wittman

The SAC's (third) negligent hiring, training supervision and retention cause of action alleges that the County and Sheriff Wittman: (1) failed to properly supervise and train Deputies Rhyman and Baker on proper use of force; (2) impliedly authorized and/or approved Deputies Rhyman and Baker's wrongful conduct and excessive force; and (3) failed to prevent known harm and abuse resulting from excessive force practices.  Plaintiffs do not oppose summary judgment/adjudication as to the (third) negligent hiring, training, supervision and retention cause of action.  As such, the County and Sheriff

---

[5]  Plaintiffs fail to substantiate that Deputies Rhyman and Baker are held to a standard less than gross negligence.

1   Wittman are entitled to summary judgment/adjudication on the claim.

2   **Redundant State Law Claims Against Sheriff Wittman**

3   Sheriff Wittman contends that the (third through seventh) state law causes of action are against

4   the County to render Sheriff Wittman a redundant and unnecessary defendant.  Sheriff Wittman notes

5   that under California Government Code section 820.8 "a public employee is not liable for an injury

6   caused by the act or omission of another person" to eliminate claims arising from actions of Deputies

7   Rhyman and Baker and failure to properly train and supervise Deputies Rhyman and Baker.  Sheriff

8   Wittman argues that the County, a public entity, would be vicariously liable for Deputies Rhyman and

9   Baker's conduct in that California Government Code section 815.2 makes a public entity vicariously

10  liable for its employee's negligent acts or omissions within the scope of employment.  Sheriff Wittman

11  points out that his elected official status "does not convert him into a public entity."  As Sheriff Wittman

12  notes, this Court has determined in a prior order that because Sheriff Wittman "is sued in his capacity

13  as Sheriff, the court finds that for the purposes of immunity on the negligence claims, negligence claims

14  against Wittman are in fact claims against the County."

15  Plaintiffs do not oppose that Sheriff Wittman is a redundant defendant.  Sheriff Wittman

16  demonstrates further grounds to warrant summary judgment/adjudication in his favor on plaintiffs' third

17  through seventh causes of action.

18  **Punitive Damages**

19  Defendants contend that plaintiffs lack evidence to justify punitive damages.

20  ***The County***

21  In section 1983 cases, punitive damages are recoverable "when the defendant's conduct is shown

22  to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the

23  federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625 (1983); *see*

24  *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993).  Section 1983 punitive damages can also be

25  awarded to address "malicious, wanton, or oppressive acts or omissions." *Dang v. Cross*, 422 F.3d 800,

26  807 (9th Cir. 2005).  Conduct is oppressive "if done in a manner which injures or damages or otherwise

27  violates the rights of another person with unnecessary harshness or severity as by misuse or abuse of

28  authority or power or by taking advantage of some weakness or disability or the misfortunes of another

person." *Dang*, 422 F.3d at 809.  California Civil Code section 3294(a) authorizes punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."

The County notes that as a municipality, it is immune from punitive damages under section 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748 (1981).  The County further points to California Government Code section 818 that "a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant."  "California Government Code § 818 bars any award of punitive damages against a public entity." *Westlands Water Dist. v. Amoco Chemical Co.*, 953 F.2d 1109, 1113 (9th Cir. 1992).

Plaintiffs concede that the County is not subject to punitive damages to warrant summary judgment/adjudication that punitive damages may not be awarded against the County.

### Sheriff Wittman

As an initial premise, Sheriff Wittman contends that he is not subject to punitive damages in his official capacity.  "A suit against a governmental officer in his official capacity is equivalent to a suit against the governmental entity itself." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).  As such, punitive damages against public employees "in their official capacities is in reality an assessment against the county, which is immune from such damages." *Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996) (error to award punitive damages against public employees in their official capacities).

Turning to his individual capacity, Sheriff Wittman points to an absence of sufficient evidence that he harmed plaintiffs or contributed to plaintiffs' constitutional deprivations.  Sheriff Wittman notes that he lacked involvement in the vehicle pursuit and shooting, directing Deputies Rhyman and Baker during their alleged wrongs, and training or supervising Deputies Rhyman and Baker.

Plaintiffs do not challenge that Sheriff Wittman is not subject to punitive damages to warrant summary judgment/adjudication that punitive damages may not be awarded against him.

### Deputies Rhyman And Baker

Like Sheriff Wittman, Deputies Rhyman and Baker correctly note they are not subject to punitive

damages in their official capacities.  As to their individual capacities, Deputies Rhyman and Baker argue

there is insufficient evidence to meet elements to impose punitive damages against them.  A section

1983 punitive damages claim is subject to summary adjudication "where plaintiff fails to produce

evidence raising a material question of act regarding aggravating circumstances or the reckless or callous

nature of defendant's actions."  *Kyle v. Patterson*, 196 F.3d 695, 698 (7th Cir. 1999).  To mitigate a

punitive damages award, Deputies Rhyman and Baker note:

    1.    Plaintiffs were interrupted during a residential burglary and engaged in a high speed chase to evade arrest;

    2.    Plaintiffs drove into oncoming traffic;

    3.    Mr. Megargee lunged the stolen truck toward Deputies Rhyman and Baker and struck Deputy Rhyman and his vehicle;

    4.    Plaintiffs ignored commands to stop the truck and surrender;

    5.    Mr. Megargee took no action to suggest he would surrender; and

    6.    Deputies Rhyman and Baker feared for their safety.

As such, Deputies Rhyman and Baker conclude that they "do not deserve to be punished for opening fire

into a moving vehicle."

        Plaintiffs respond that disputed facts preclude summary judgment/adjudication in Deputies

Rhyman and Baker's favor on punitive damages.  Plaintiffs note that:

    1.    Deputies Rhyman and Baker ended the pursuit in the cul de sac;

    2.    Deputies Rhyman and Baker rammed the truck to disable and immobilize it;

    3.    The truck was stuck in a planter;

    4.    A passenger jumped out of the truck and surrendered;

    5.    No fewer than two passengers raised their hands to surrender;

    6.     Deputy Rhyman smashed the driver's window of the truck;

    7.    Plaintiffs and their companions were unarmed;

    8.    The truck remained stationary for 30-60 seconds prior to Deputies Rhyman and Baker shooting; and

    9.    Officers dragged Mr. Megargee's unconscious body out of the truck and dropped him on

1    the pavement.

2        The parties differing versions of events raise factual issues whether Deputies Rhyman and Baker

3    engaged in malicious, wanton, or oppressive conduct.  Plaintiffs have produced evidence to support their

4    punitive damages claims against Deputies Rhyman and Baker to warrant a jury's resolution of factual

5    issues.    As  such,  Deputies  Rhyman  and  Baker  have  failed  to  substantiate  summary

6    judgment/adjudication on the punitive damages claims.

7                            **CONCLUSION AND ORDER**

8        For the reasons discussed above, this Court:

9    1.    DENIES Deputies Rhyman and Baker summary judgment/adjudication and qualified

10           immunity on plaintiffs' (first) section 1983 cause of action;

11   2.    DENIES the County summary judgment/adjudication on plaintiffs' (second) *Monell*

12           cause of action;

13   3.    DENIES defendants summary judgment/adjudication that state immunities preclude

14           plaintiffs' state claims;

15   4.    DENIES Deputies Rhyman and Baker summary judgment/adjudication on plaintiffs'

16           (sixth) battery cause of action;

17   5.    DENIES Deputies Rhyman and Baker and the County summary judgment/adjudication

18           on plaintiffs' (fourth) negligence cause of action;

19   6.    DENIES the County summary judgment/adjudication on plaintiffs' (fifth) vicarious

20           liability cause of action;

21   7.    DENIES Deputies Rhyman and Baker and the County summary judgment/adjudication

22           on plaintiffs' (seventh) failure to provide medical care cause of action;

23   8.    GRANTS the County summary judgment/adjudication on plaintiffs' (third) negligent

24           hiring, training, supervision and retention cause of action;

25   9.    GRANTS the County summary judgment/adjudication on plaintiffs' punitive damages

26           claims;

27   10.   DENIES Deputies Rhyman and Baker summary judgment/adjudication on plaintiffs'

28           punitive damages claims; and

1

11.     GRANTS Sheriff Wittman summary judgment/adjudication on all of plaintiffs' claims

2

against him and DIRECTS the clerk to enter judgment in favor of defendant Bill

3

Wittman and against plaintiffs Stanleigh Gean Megargee and Katie Taylor.[6]

4

IT IS SO ORDERED.

5

**Dated:**     **March 19, 2008**                    **/s/ Lawrence J. O'Neill**
                                                        UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[6]        A defense 42 U.S.C. §1988 or related attorney fees motion will be ill-received by this Court. This Court finds that plaintiffs conceded weaknesses of their (third) negligent hiring, training, supervision and retention cause of action and claims against Sheriff Wittman to require defense counsel's minimal effort to address them. This Court will not penalize plaintiffs for such concession at the summary judgment/adjudication stage.